1   Nasrin Morrowatti(BAR NO. 276407
    426 S. Sepulveda Blvd. Unit 116
2   Los Angeles, CA 90049
    iliveforjustice@gmail.com
3   (310) 739-6906

4                   UNITED STATES DISTRICT COURT

5                  CENTRAL DISTRICT OF CALIFORNIA

6

7                        WESTERN DIVISION

8

9   UNITED STATES OF AMERICA AND THE STATE        Case No.: cv 15-5225(SJWx)
    OF CALIFORNIA; EX REL NASRIN
10  YOUSEFMORROWATTI,

11          Plaintiff,                            FIRST AMENDED COMPLAINT FOR
                                                  VIOLATION FO FEDERAL FALSE
12  vs.DAVITA HEALTH CARE PARTNERS; TOTAL         CLAIMS ACT{ 31 U.S.C. &&3729 ET
                                                  SEQU.}; CALIFORNIA FALSE
13  RENAL CARE; DAVITA RX; ALL DEFENDANTS         CALIMS ACT {CAL.GOVT. CODE
                                                  &&12650 ET SEQU.}; COMMON LAW
14  LISTED AS EMPLOYEE OF DAVITA IN THIS          STATE CLAIMS
15  COMPLIANT, DR. RASTOGI, ANN HOPP, UCLA

16  TRANSPLANT    TEAM,    DR.    DANOWITCH,

17  PRISEPHORNE CAMARA, JOE DOE, MONICA DO,

18  MITCHEL BOLLOCI, DARSHNI, NETWORK 18 AND

19  ITS   EMPLOYEES;  SAINT  JHON'S  HOSPITAL;

20  SHERLY SINGELTON; ERIC STONE; ANTHONY

21  CHAPMAN AS INDIVIDUAL DEFENDANTS AND AS

22  COLLECTIVELY, JOINTLY AND SEVERALY

23  [DEFENDANT'S NAME],

24          DefendantS

25

26

27

28  FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729
    ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQU.}; COMMON LAW
    STATE CLAIMS - 1

JURY TRIAL DEMANDED

First Amended Complaint

This is the First Amended Complaint and it relates back to June 10, 15, the original pleading Fed. Rule of Civ. Pro 15(C). Plaintiff-Relator Nasrin Yousefmorrowatti("Relator"), through her attorney Nasrin Morrowatti, on behalf of the United States of America, the States of California, and any other interested State in the United States (collectively "the Plaintiff States") for her Complaint against Defendants DaVita, Inc. , aka Health Care Partners, Total Renal Care, Inc., Davita RX a subsidiary of Davita, Davitas's coconspirators, joint ventures, employees, staff, executives, directors, Davita's Medical Director, Dr. Anjay Rastogi , Davita's nurse Persephone Camari aka Prissy, Ann Hopp(Davita's Social Worker), Joe Doe(Davita's nurse), Defendants Does 1-100, Monica (Davita's dietician), Darshni(Davita's FA upper manager), Mitchel Bollock(Davita's manager) Anthony Chapman (Davita's administrator), Noridian MACS,  Network 18 and their employees, UCLA transplant team(i.e., Dr. Danovitch, Dr. Rastogi) Saint John's Hospital (collectively referred to as "Davita", unless a specific example requires to state the name of the individual Defendant)

This Complaint is filed under the False Claims Statute("FCA") , common law, equity

Defendant Network 18 and its employees collectively and individualy

organization (located in Providence Saint John's Health Center, 2121 Santa Monica blvd Santa Monica, CA 90404).

This FCA is also filed against Shirley Singleton, and Eric Stone at the Los Angeles, Dept. of Public Health responsible for licensing and survey of Davita, its staff, and Compliance as individuals and in their official capacity.

This Complaint is also filed based on 18U.S.C &101; &3571; ;&3571(d );.1128(B)(a)(1) of the Social Security Act); 18 U.S.C. 1035; 18 U.S.C. 1347;  31 U.S.C. 3729 The False Claims Act; Section 1128A(a)(1) of the Social Security Act imposes civil liability; and "Common Law Fraud", Mistake, and unjust enrichment action (See Exhibit  2  Form 855B, section 14); and "Certification Statement" Section 15; 15(A)(3); and 15(A)(6); a

Defendants mentioned herein, and all Defendants are collectively, individually, jointly and severally are liable to Plaintiff.

Relator or Plaintiff are referred to in this Complaint interchangeably.

Medicare, Medical and government are referred to in this Complaint interchangeably.

At all times Davita's corporate office and executives were aware of the false claims, facts and exhibits stated herein this Complaint, and directed Davita's staff, and Davita's joint ventures to  conduct in the manner stated in this Complaint.

It is also stated that the government did not have knowledge of such false claims.

Introduction Of Facts

On Jan. 7, 2014, Realtor had surgery for preparation of dialysis and placement of tubing in her abdomen (per Dr. Rastogi's inducement of Relator and his forced referral to UCLA surgent, Dr. Galebert).

Relator received after surgery support wound care from Davita in Jan. 10, 2014.

Relator received some training from Davita's nurse, Defendant Persephone Camera(herein after Pressy) in Feb. 2014, and March 2014.

Relator began her  home dialysis treatment from the TRC location doing business in Century City Dialysis, 10630 Santa Monica Blvd, Los Angeles, California., in March 31, 2014, and as of Sept. 25, 2014, no services were rendered to Relator by TRC or Davita.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 4

Davita RX is a subsidiary of Davita, and located in Texas, doing business in all states.

Baxter corporation is the supplier of dialysis machine CCPD cycler and the related dialysis solutions and supplies.

The acts of the all the other defendants who are added to this amended Complaint arise from the same nucleus operative facts, and relates back to Relator's initial Complaint filed in June 2015, per Federal Rule of Civil Procedure 15©(1) (A-C).

Under 31 U.S.C. §3730(e), and under the comparable provisions of the Plaintiff State statutes, there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. Moreover, whether or not such a disclosure had occurred, Relator would qualify under the relevant sections as an "original source" of the information in this Complaint even had such a public disclosure occurred.

PARTIES

Plaintiff/Relator Nasrin Yousefmorrowatti("Relator") is a citizen of California, and patient of Dr. Anjay Rastogi and Davita/Total Renal Care(here on "Davita) On or about Sept. 2013, Relator was Dr. Rastogi's (Medical Director of Davita placed at UCLA for the purpose of recruiting and referring patients to

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 5

Davita for dialysis) patient, and as a result of the induced referral became Davita's

patient as well. Plaintiff/Relator has personal knowledge of Defendants' false

claims(Davit's , Dr. Rastogi, their coconspirators and all of the Defendants stated

herein this Complaint through witnessing the false claims as they occurred,

interaction, her records, interview and investigation with other patients. Relator

knowledge is independent of the public disclosure.

Furthermore, Relator voluntarily notified the Medicare claims

department administered by Noridian, Network 18, the Los Angles Dept. of Public

Health, and latter Dept. of justice) government before she filed this Complaint(i.e,

Notifications from April 2014 through present)

Defendants DaVita, Inc. is a Delaware corporation with its corporate

headquarters located at 1551 Wewatta St., Denver, CO 80202 and/or located at

2000 16th Street, Denver, Colorado. Prior to 2009, DaVita's home offices were

located at 601 Hawaii Street, El Segundo, California 90245.

According to its most recent annual report, DaVita is a leading

provider of dialysis services in the United States for patients suffering from

chronic kidney failure, also known as end stage renal disease, or ESRD.

As of December 31, 2010, DaVita operated or provided administrative

services to 1,612+ outpatient dialysis centers located in 42 states and the District of

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729
ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW
STATE CLAIMS - 6

Columbia, serving approximately 125,000 patients. This number grew and Davita's population of patients was 173,000 in 2014, per Davita's 10k(Exhibit Davita's 10K).

DaVita also provides acute inpatient dialysis services in approximately 750+ hospitals and related laboratory services.

Its dialysis and related lab services business accounts for approximately 94% of its consolidated revenues.

Total Renal Care, Inc. ("TRC") is a California corporation and a wholly-owned subsidiary of DaVita, Inc. DaVita uses TRC and other subsidiaries to buy, sell and hold interests in various dialysis centers and dialysis-related joint ventures.

Davita RX(pharmacy) is a subsidiary of Davita, located in Texas.

Hereinafter, all Exhibits regulations referenced in this Complaint are incorporated herein and those laws, Statutes, regulations referred to and may judicially be noticed.

Davita uses the name "Total Renal Care Inc." to submit its bills to Medicare.

Davita is aka Health Care Partners, Davita dialysis, Century dialysis Center.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 7

==JURISDICTION AND VENUE==

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. &1332(a)(1), 28 U.S.SC. &1332 (c) (1) section 1441, 28 U.S.C. §1367, and 31 U.S.C. §3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

In addition, 31 U.S.C. §3732(b) specifically confers jurisdiction on this Court over the State-law claims, and has subject matter jurisdiction on diversity of citizenship with the amount in controversy and the minimum contact requirement also are met.

Relator's first amended Complaint  as a matter of course per rule of civil procedure 15(1)(B).

Under 31 U.S.C. §3730(e), and under the comparable provisions of the Plaintiff State statutes, there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. Moreover, whether such a disclosure had occurred, Relator would qualify under the relevant sections as an "original source" of the information in this Complaint even had such a public disclosure occurred. Relator has direct and independent knowledge of the information on which the allegations are based, such knowledge materially adds to

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 8

any publicly disclosed allegations or transactions, and Relator voluntarily provided the information and Davita's fraud to the government, on or about June 2014.

This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a), which authorizes nationwide service of process and because the Defendants have minimum contacts with the United States, and can be found in and/or transact business in this District. 18. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and 1395(a) and 31 U.S.C. §3732(a) because Defendants can be found in and/or transact business in this District. At all times relevant to this Complaint, Defendants regularly conducted substantial business within this District, maintained employees in this District, and/or made significant sales within this District. Defendant maintains its corporate headquarters in this District. In addition, statutory violations, as alleged herein, occurred in this District.

## IV. FEDERAL AND STATE-FUNDED HEALTH CARE PROGRAM

### A. Medicare

Medicare is a federally-funded health insurance program primarily benefitting the elderly. Medicare was created in 1965 when Title XVIII of the Social Security Act was adopted (Medicare, Medical, CMS, government, HHS, is interchangeable in this Complaint).

The Medicare program has four parts: Part A, Part B, other government Program("C"), to help those with very low income and their prescription, and Part D.

## Dialysis (kidney) services & supplies

**How often is it covered?**

- **Inpatient dialysis treatments:** Medicare Part A (Hospital Insurance) covers dialysis if you're in a Medicare-approved hospital.

- **Outpatient maintenance dialysis treatments:** Medicare Part B (Medical Insurance) covers a variety of services if you get routine maintenance dialysis from a Medicare-certified dialysis facility.

- **Training for self-dialysis:** Part B covers training if the beneficiary is a candidate for self-dialysis, as well as training conducted during the course of your regular treatments for you and the person helping you with your self-dialysis treatments. The training must be conducted by a dialysis facility that has been certified by Medicare to provide self-dialysis training. A beneficiary may qualify for training if she think she would benefit from self-dialysis training for at-home treatments, and her physician approves.

Training sessions will occur at the same time the beneficiary get dialysis treatment and are subject to a maximum number of sessions.

- **Self-dialysis support services:** Part B covers self-dialysis support services provided by her dialysis facility. This may include visits by trained hospital or dialysis facility workers to check on the beneficiary self-dialysis, to help in emergencies when needed, and to check your dialysis equipment and water supply.

- **Self-dialysis equipment and supplies:** Part B covers all kidney dialysis equipment and supplies, including alcohol, wipes, dialysis machines, sterile drapes, rubber gloves, and scissors for as long as the beneficiary needs dialysis at home.

- **Certain drugs for self-dialysis:** Part B covers heparin, the antidote for heparin (when medically necessary), and topical anesthetics. Part B also covers erythropoiesis-stimulating agents (ESAs) (like epoetin alfa or darbepoetin alfa) to treat anemia related to your renal disease.

- Outpatient doctors' services.

- Other services and supplies that are a part of dialysis (like laboratory tests).

Medicare **doesn't** cover the following services or supplies:

Paid dialysis aides to help you with self-dialysis.

- Any lost pay to you or the person who may be helping you during self-dialysis training.

- A place to stay during your treatment.

- Blood or packed red blood cells for self-dialysis unless part of a doctors' service.

Medicare Part A ("Part A"), the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care(i.e., support after surgery).

Medicare Part B, the Voluntary Supplemental Insurance Plan, covers the cost of services performed by physicians and certain other health care providers, both inpatient and outpatient, **if the services are medically necessary and directly and personally provided by the provider**.

Other government help, section "C", covers certain prescription drug coverage for special needs patient based on financial inability to pay for the portion not covered by Medicare Part D., and

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 12

Medicare Part D provides subsidized prescription drug coverage for Medicare beneficiaries.

Medicare provides benefits for patients with End Stage Renal Disease ("ESRD"), the last stages of the kidneys' function,  under Parts A, B, C, and D. **<u>Individuals otherwise ineligible for Medicare, become eligible when they develop ESRD.</u>**

Medical Necessity

Medicare pays providers only for services that it considers **"reasonable and necessary for the diagnosis or treatment of illness or injury."** Social Security Act§1862(a)(1)(A).

Providers who wish to participate in the Medicare program must ensure that their services are provided <u>"economically and only when, and to the extent, medically necessary</u>." 42 U.S.C. §1320c-5(a).

Providers who wish to participate in the treatment of dialysis patients specially the treatment of ESRD, agree to adhere to certain standards of care set by CMS, Providers also agree to be compliant to those standards set by CMS, and further understand that those conditions are prerequisite to payment and continued enrolment in Medicare. CFR 42 part 494, and terms addressed in form 855B Medicare Provider's Enrollment Registration and Agreement.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 13

## B. Medicaid

Medicaid was also created in 1965 under Title XIX of the Social Security Act.

Funding for Medicaid is shared between the federal Government and those states participating in the program. Thus, under Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq., federal money is distributed to the states, which in turn provide certain medical services to the poor.

Federal Medicaid regulations require each state to designate a single state agency responsible for the Medicaid program. The agency must create and implement a "plan for medical assistance" that is consistent with Title XIX and with the regulations of the Secretary of HHS ("the Secretary"). After the Secretary approves the plan submitted by the state, the state is entitled each quarter to be reimbursed for a percentage of its expenditures made in providing specific types of "medical assistance" under the plan. 42 U.S.C. §1396b(a)(1).7.

The state agency delegates its duty of implementation of Federal and State laws, Compliances to the regulations set by CMS (i.e., CFR 42 part 494 standard of care, and other regulations herein stated in this Complaint) dialysis providers survey and licensing,  employees (i.e., nurses, technicians and other staff).

Certification, survey and licensing in Relator's State(California) is conducted by the Los Angeles County Dept. Of Public Health, licensing Dept. with supervision of Defendants Erick Stone and Sherly Singleton as employees of the Los Angeles Dept. Of Public Health.

Defendants UCLA aka UC Regent, is located in Westwood, CA.

There may be other Defendants and co-conspirators, that their identity is not known to Relator at this time, the Complaint will be amended to include their names when their identity is clearly known to Relator.

**C. Other Federal and State-Funded Health Care Programs**

The federal Government administers other health care programs including, but not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 15

The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.

The Medicare program covers **employees with ESRD** whose insurance ends due to their Medical condition, <u>or after 33 months their private primary business insurance like Blue Cross.</u>

The Plaintiff States provide health care benefits to certain individuals, based

either on the person's financial need, employment status or other factors. To the extent those programs are covered by that State's False Claims Act, those programs are referred to in this Complaint as "state-funded health care programs."

<mark>BACKGROUND On Chronic Kidney Disease:</mark>

Chronic kidney disease is a progressive disease, which ultimately destroys the kidney's ability to process and clean blood. The loss of kidney function is normally irreversible. End Stage Renal Disease ("ESRD") is the stage of advanced kidney impairment that requires continued dialysis treatments or a kidney transplant to sustain life. Dialysis is the removal of toxins, fluids and salt from the blood of ESRD patients by artificial means.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 16

Patients suffering from ESRD(End Stage Renal Disease) generally require dialysis at least three times per week for the rest of their lives. There are more than 400,000+ ESRD dialysis patients in the United States and the numbers are rapidly growing.

Since 1972, the federal government has provided **universal payment coverage for** dialysis treatments under the Medicare ESRD (End Stage Renal Disease) program regardless of age or financial circumstances. <u>**Under this system, Congress establishes Medicare rates (i.e., base rate) for dialysis treatments, that includes**</u> related supplies, lab tests, medication and all necessary items and services (discussed infra) to treat the ESRD condition.

Other Government-funded health care programs and private insurance plans also routinely provide coverage for dialysis, either separately or in combination with a patient's Medicare coverage.

As of December 31, 2010, DaVita owns, operates and/or provides administrative services to 1,612 + outpatient dialysis centers located in 42 states and the District of Columbia, serving approximately 173,000 patients. Exhibit Davita's 10K., calendar year 2014.

Approximately 87% of DaVita's total patients are covered by Government-funded health care programs.  Davtia, in its 10K for 2010 through

2014, acknowledges that the majority of its dialysis patients are Medicare and government insured beneficiaries(Exhibit Davita's 10K )

Providers of dialysis are paid through Medicare administered by Noridian MAC and/or other MACS (Medicare Administrator Contractors), **by uniformed Codes** throughout the United States. **The dialysis clinics providers are assigned certain specific codes to use in filing claims related to the diagnosis of the beneficiary's condition, including specific and assigned codes(discussed infra) for items and services they render to the beneficiaries.**

Providers of dialysis are paid through Medicare administered by Noridian MAC and/or other MACS (Medicare Administrator Contractors), by uniformed Codes throughout the United States. The dialysis clinics providers are assigned certain codes to use in diagnosing patient's condition, and services performed.

Providers of dialysis who perform a procedure, must use condition codes , occurrence code ,value codes, revenue codes, there are other codes that are assigned to these providers by CMS. The purpose of the codes are for the computer system and the MACS to accurately process and pay the claims, these codes each represent a condition or disease and the accurate use and reporting of the codes flags the system and the MAC and the computer must reject/deny the claim.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 18

For example: Code 72(x =occurrence)represents that the claim is ESRD related, as such the MAC must treat this claim and pay it according to a bundled based rate (will be discussed infra) and must reject the claim, if the item is already accounted for and bundled by the government, otherwise, it will be duplicate billing.

There are also value codes that are assigned to the providers. All these codes are to distinguish who is filing a claim, a physician, outpatient dialysis clinic or a hospital.  **The distinction, prevents fraud, waste and abuse.**

**4. Applicable Law,**

This claim arises from the Federal False Claims ACT("FCA"), and State's False Claims Act or equivalent Statute, and other laws and regulations

The False Claims Act (FCA), 31 U.S.C. §§ 3729 - 3733 was enacted in 1863 by a Congress concerned that suppliers of goods to the Union Army during the Civil War were defrauding the Army.  The FCA provided that any person who knowingly submitted false claims to the government was liable for double the government's damages plus a penalty of $2,000 for each false claim.  Since then, the FCA has been amended several times.  In 1986, there were significant changes to the FCA, including increasing damages from double damages to treble damages

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 19

and raising the penalties from $2,000 to a range of $5,000 to $10,000.  The FCA

has been amended three times since 1986.  Over the life of the statute it has been

interpreted on hundreds of occasions by federal courts (which sometimes issue

conflicting interpretations of the statute).  The purpose of this primer is not to

explain how the FCA evolved over the decades or to discuss judicial

interpretations of its provisions.  Rather, in this primer we simply explain the most

significant elements of the FCA to give one new to the statute an introductory

understanding of the FCA and how it works.  The complete text of the False

Claims Act is provided at the end of this primer.


                    Liability


            The statute begins, in § 3729(a), by explaining the conduct that

creates FCA liability.  In very general terms, §§ 3729(a)(1)(A) and (B) set forth

FCA liability for any person who knowingly submits a false claim to the

government or causes another to submit a false claim to the government or

knowingly makes a false record or statement to get a false claim paid by the

government.  Section 3729(a)(1)(G) is known as the reverse false claims section; it

provides liability where one acts improperly – not to get money from the

government, but to avoid having to pay money to the government.  Section 3729(a)(1)(C) creates liability for those who conspire to violate the FCA. Sections 3729(a)(1)(D), (E), and (F) are rarely invoked.

Damages and penalties

After listing the seven types of conduct that result in FCA liability, the statute provides that one who is liable must pay a civil penalty of between $5,000 and $10,000 for each false claim (those amounts are adjusted from time to time; the current amounts are $5,500 to $11,000) and treble the amount of the government's damages.  Where a person who has violated the FCA reports the violation to the government under certain conditions, the FCA provides that the person shall be liable for not less than double damages.

The knowledge requirement

There is no specific intent required to satisfy the knowledge requirement.  Knowledge may be plead generally. to violate the FCA a person must have submitted, or caused the submission of, the false claim (or made a false

statement or record) with knowledge of the falsity.  In § 3729(b)(1), knowledge of

false information is defined as being (1) actual knowledge, (2) deliberate ignorance

of the truth or falsity of the information, or (3) reckless disregard of the truth or

falsity of the information.

Definition of a claim The FCA also defines what a claim is and says

that it is a demand for money or property made directly to the Federal Government

or to a contractor, grantee, or other recipient if the money is to spent on the

government's behalf and if the Federal Government provides any of the money

demanded or if the Federal Government will reimburse the contractor or grantee.

Plaintiff alleges, based upon personal knowledge, relevant documents,

and information and belief, as follows:

5. Allegations

Relator Nasrin Yousefmorrowatti ("Relator") alleges that in June

2013 she

was falsely diagnosed with End Stage Renal Disease ("ESRD").

last stage of chronic kidney disease. A patient diagnosed with ESRD

requires renal dialysis or a kidney transplant.

Relator alleges that for a brief period, from approximately March 31, 2014 to September 25, 2014, she received homebased peritoneal dialysis services from DaVita's Century City Dialysis located in 10660 Santa Monica, Los Angles, CA 90025

Relator'Complaint alleges theories of liability under the FCA:

1. Upcoding: Relator contends that Defendants DaVita Healthcare Partners

Inc. and Total Renal Care, Inc. ("DaVita"), Davita RX and all other Defendants stated herein this Complaint (unless specific act requires a Defendant be mentioned by their name, referred to all Defendants as Davita and their coconspirators as Davita) improperly billed or caused false claims to be billed for home peritoneal dialysis services by seeking reimbursement on claims that either was never rendered, and/or medically not necessary to treat the condition, unbundled in violation of the regulation and ESRD PPS, various procedure codes, CPT codes, condition codes, ICD codes, occurrence codes,  improper forms and diagnosis, claims improperly and artificially highly inflated, services rendered failed to be compliant with standard of care set by CMS per 42 CFR a precondition to payment or approval of services, certification of false claims.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 23

Relator contends that by designating the services provided to her using CPT Code 90945, 90966, 90993, and generally using and reporting codes and documentations and data that could not and would not accurately report, the charges, the data, the services, their location, their quality, their compliances to regulations stated herein this Complaint

Relator further alleges that numerous claims that were filed and submitted by Davita were false under the FCA because Davita never rendered such services and items to Relator and/or failed to keep adequate supporting and accurate documentation and failed to comply with laws, regulations set by CMS(i.e. 42 CFR part 494)  in delivery of the services rendered if it did render them, that would preclude Davita from the entitlement of receiving any reimbursement.

Relator further alleges that Davita improperly claimed that it had provided inpatient (i.e., hospital-based) dialysis with a doctor present, and obtained a higher Medicare payment than it would have if the services had been correctly designated as home CCPD  peritoneal dialysis, instead of  inaccurately reporting "Dialysis Procedure CPT code 90945 including one evaluation, inaccurate reporting  CAPD, revenue code 0841 instead of the correct reporting of CCPD

revenue code 0851, and inaccurately reporting the old Composite rate payment pre Jan. 1, 2011 instead of the correct reporting of the ESRD PPS as of Jan. 1, 2011.

Relator also  alleges that Davita improperly claimed that it had provided inpatient (i.e., hospital-based laboratory work using and reporting revenue code for laboratory services of "0361" that represents the Relator was treated as an inpatient when such a fact was not true.

Relator further alleges that Davita improperly claimed that it had provided inpatient (i.e., hospital-based laboratory services, when such services were not rendered to Relator at all.

Relator further alleges that Davita improperly claimed that it had provided laboratory work up and filed and submitted claims to Medicare an its charges, filing multiple and duplicate laboratory services, when this fact was not true either).

Relator further alleges that Davita improperly used cpt code 90945, and represented and claimed that the Relator was seen in the Hospital as an inpatient, and evaluated by a physician, when in fact such evaluation as reported by Davita never took place.

Unbundling: Relator alleges that Davita in violation of the Medicare regulation (i.e., ESRD PPS, as stated herein) unbundled many items and services

that are treated in a bundle and could not be unbundled and claimed for separate payments because the government accounts for them and makes adjustments to the base rate per dialysis treatment basis.

Relator alleges that by unbundling items and services and submitting claims to Medicare for payment or approval, Davita engaged in prohibited conduct under the FCA and other laws as stated herein.

Relator further alleges that  DaVita sought reimbursement for each separate component of the dialysis services that were provided, and received improperly "unbundled" payments for separate components of the services that should all have been "bundled" into the same claim.

NATURE OF THIS ACTION

This is an action is to recover damages and civil penalties on behalf of the United States of America and the Plaintiff States arising from false and/or fraudulent submission, statements, records, certification and claims that are material made and caused to be made by defendants and/or their agents, employees and co-conspirators in violation of the federal False Claims Act, 31 U.S.C. §§3729(A-C)-373 et seq. (the "Act" or "FCA"), and the false claims acts of the Plaintiff States(California) and other laws and statutes stated herein this Complaint.

In so doing, Defendants have caused each such false claims they submitted/presented ( the law was amended, a simple request for payment or approval constitutes false claims as of Calendar year 2015 under authority of Office Of Inspector's General and the amended FCA") to the government for payment or approval to be materially false and substantially inflated, resulting in significant damages to the United States.

Davita ,its coconspirators and joint ventures have engaged in a nationwide scheme by illegally presenting false claims, records, certifications, artificially raising their loss in treating ESRD dialysis patients, and have produced false

cost report and outlier, a sham compliance to the regulation(as stated herein this Complaint), to increase its revenue receive payment from the government for payments or approvals it is not entitled to and to continue and maintain government enrollment and participation

Davita and its coconspirators have engaged in a nationwide scheme by illegally influencing the dialysis industry, directly and indirectly influencing change law and policy, to artificially increase the need for more funds for treatment of ESRD patients as to their dialysis, and dialysis related supplies, equipment, support, training, research, drugs and biologicals, in oral and or

injectable forms and their equivalence, and grants for research and/or procurement of kidney transplantation.

Davita and its coconspirators have materially and substantiality misrepresented facts using variety of manipulations (i.e., the misuse of codes, false certification and records, with the standards and quality of care in treating patients with kidney condition, specifically ESRD, to falsely certify compliance with the CMS regulation, a precondition to payment and Medicare enrollment and participation.

Davita with its manipulation and technics has created a monopoly, and in concert with its coconspirators, competitors and those with financial incentives, control the market for dialysis, influencing the procurement of the kidneys, artificially favorable research for the use and marketing of products either not medically necessary(as defined herein this Complaint) and/or in excess causing harm and abuse to the dialysis patients, and cost , waste and abuse to government's trust funds.

One example is in it 10k filing to SEC, Davita in order to get around the violation of the Anti Kick back, reported false information to its shareholders claiming that it is required by Medicare for Davita or dialysis providers to have a

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 28

Medical Director(this fact is true), Davita continues by stating that these Medical Directors refer patients to Davita, and Davita heavily relies on their referrals(this part is a violation under the Anti-kick backs statute.

Although it is true that Medicare requires Davita has a Medical Director, Medicare also prohibits the referral by the Medical Director.

Further, Medicare requires that dialysis providers such as Davita in addition to having a Medical Director also have a treating nephrologist who is unbiased, and can perform his duties in the best interest of the patients and without his judgment being clouded by the financial incentives Davita offers.

Another words, Davita engages in illegal referrals in violation of the Anti Kick back statue, yet it misrepresents facts to the government and its shareholders by using the half truth(i.e., Medicare requirement for a Medical Director), and ties it in to the referral and makes it sound legal when it is not.

Not only this is a violation under the Anti- Kick back statue giving rise to FCA liability, also it is a very serious compliance issue per 42 CFR Part 494 as Davita is not in compliance for creating the conflict of the interest, a violation of such regulation and the terms of the Davita's enrolment and registration with Medicare , form 588B, exhibit 2.

Davita placed its Medical Director, Dr. Anjay Rastogi in UCLA for the purpose of referring patients to Davita, and in fact Dr. Rastogi due to his position, at UCLA was referring patients to Davita(also a conduct that is illegal per Anti-Kick back Statute and per regulation and the terms of the Davita's enrolment and registration with Medicare , form 588B, exhibit 2.

In fact,  for the purpose of such referral, Dr. Rastogi  did misdiagnose the Relator as having an ESRD, when the Relator was not at that level yet.

However, Dr. Rastogi's due to his financial interest being a strong motivating factor, forced dialysis on Relator against her will, and in violation of Medicare guidelines and regulation (Compliance per 42 CFR Part 494) and at a great expense to the government, in addition to abuse and harm to the Relator.

This is a true fact because before Relator contacted Medicare to report Davita's false claims and fraud, Davita was milking the government for over $65,000 per month and was receiving such payment as it can be evidence by some of the exhibits(i.e.,exhibit 10 the recorded conversation with Medicare employee for the month of January 2014 and February 2014).

Under no circumstance, Davita by being required by Medicare to have a Medical Director is shield and protected under the "safe harbor", as Davita may imply.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 30

Being required to have a Medical Director does not translate into being allowed to have the Medical Director make illegal referrals to Davita.

However, Davita does manage to manipulate its audience the government and the Davita's patients such as Relator.

Relator alleges that the misuse and reporting of the improper and inaccurate various codes and procedures on incorrect forms, whether in hard copy format and/or electronic format, the data, statements and the records are just a vehicle in furtherance of Davita's scheme and its coconspirators.

Another words it is possible that a code that Davita uses pays the same amount of money or even less in a situation, however, the misuse of one data, a procedure code or form, creates a great financial incentive for Davita in another situation, depending on what facts  Davita wishes  to misrepresent facts to the government and pretend that it is loosing money, is order to receive more money latter on

Therefore, it is Relator's position that Davita's pattern and manipulations stated herein this Complaint is an example of Davita's liability under FCA and other laws stated herein.

Relator alleges that the certification of the records, data, and misuse and reporting of the improper and inaccurate various codes and procedures on

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 31

incorrect forms on such records, whether in hard copy format and/or electronic format, the data, statements and the records are just a vehicle in furtherance of Davita's scheme and its coconspirators.

Relator alleges that Davita has been long enough in business to protect its interests and learn about the regulations that effects its business, however, Davita misuses the regulations to effect its business interest and raise its revenue.

Even though, Davita has knowledge of such regulation, Davita disregards the truth of such knowledge and requirement and submits false claims by either  false claims, statements and/or falsely certifying such statements are true and/or certifying such records are true when they are not.

For example, Before, CMS implements any Statute, law, and regulation, the dialysis providers such as Davita and their representatives are given adequate notice about the proposed regulations, comments are heard, Davita as big as of a corporation has its lobbyists and representatives attend these rule making meetings, Davita is allowed to address its issues with the proposed laws, if the government favors to have those laws implemented, dialysis providers are given adequate notices to train their staff, get acquainted with the new regulation, update their computers, etc.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 32

CMS through different means(i.e, publications, federal registries, Transmittals, quarterly updates, guidelines, CMS Web site, Chapter 8, and 11, Medicare manual for payment and processing of ESRD claims for hospitals and independent dialysis facilities such as Davita, the Medicare Claim Administrators are available to answer questions, another words the government affords Davita with Due Process Of the Law when it makes changes to its regulations.

After all the years being in business and after all the effort CMS and the government put into advising dialysis providers to report their claims accurately, using codes that correspond with true nature of the procedures performed.

The issue arises as to why Davita routinely create the following scenario:

a. using false codes and filing false claims making statements that patients such as Relator was in a hospital setting when she was not, b. use of inpatient lab code to represent the Relator was treated as an inpatient when she was not, c. state the start date of dialysis as Jan. 10, 2014, when the Relator did not start dialysis until March 31, 2014, d. use revenue codes that falsely represent that the dialysis modality the Relator was using was "CAPD" when she was not, e. to state the start date of Epogen therapy as Jan. 15, 2014, when Relator did not receive

such treatment on such date or any other date, f. to exaggerate the quantity and quality of treatment, items and services rendered, g., to render services, items and treatment not medically necessary(as stated herein), h. not provide services, items and treatment that are medically necessary, i. manipulate certain factors such as blood pressure, weight of the patient, water and fluid retention, mineral and blood quantity these measurements are factored into government assessment of quality of care, and to falsely prevent the government from reducing a 2% in Davita's payments for failing to provide the quality and standard of care that CMS requires per CFR 42 part 494, and further falsifying a sham compliance to such standard of care in order to satisfy a precondition to payment and receive payment from the governemnt.

The relator alleges that Davita's financial motive is the cause of such scheme and manipulations.

Definitions Relating to ESRD

End Stage Renal Disease (here on "ESRD") occurs from the destruction of normal kidney tissues over a long period of time. Often there are no symptoms until the kidney has lost more than half its function. The loss of kidney function in ESRD is usually irreversible and permanent.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 34

Dialysis services furnished to hospital in-patients are covered under Medicare Part A and paid in accordance with applicable payment rules.

Medicare Part B covers the services related to treatment of ESRD condition, under the ESRD PPS as of Jan. 1, 2011(discussed infra, unless otherwise noted).

Medicare Part D pays for prescription drugs that are not categorized as bundled under the ESRD PPS (stated infra). Those drugs and biologicals that are not categorized as bundled are referred to as **separately payable items and services** and by definition, are those **items and services that are not used to treat the ESRD condition of a beneficiary.**

The separately item(i.e., drugs and biologicals characterized as separate) and services(i.e**., not related to the treatment of ESRD**) that are qualified to be claimed with Medicare part D and entitled to receive a payment that are reasonable and at a very low cost as it relates to National Drug Coverage(NDC) and Medicare's program "pricer" index(contains the lowest amount of drug prices that has a ceiling of such prices for such items and services.

Other government program is part "C" of Medicare section 8, Part "C", aka other government organization "C", is a program for those beneficiaries wholes income is below a certain level(i.e.. indigence).   This program

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 35

supplements the Medicare Part D and pays for co-pays and subsidizes Medicare Part D and covers the remainder balance from Medicare Part D for prescription drugs.

**Many beneficiaries with ESRD due to finical need are also eligible to receive help from Medicare section 8, Part C to assist with co-pays and any amount that is not covered by Medicare Part D for prescription drugs.**

Eligibility of Medicare Participation and Enrollment; Maintaining and Condition of Payment For Dialysis Providers(i.e., Davita) As An Independent Dialysis Facility

In order to participate and receive payments for services rendered, ESRD facilities(i.e., Davita) **must be certified by Medicare** and submit Form 855B for the purpose of registration Enrollment Agreement that expressly binds the dialysis providers through authorities: 18U.S.C &101; &3571; ;&3571(d );.1128(B)(a)(1) of the Social Security Act); 18 U.S.C. 1035; 18 U.S.C. 1347; 31 U.S.C. 3729 The False Claims Act; Section 1128A(a)(1) of the Social Security Act imposes civil liability; and "Common Law Fraud", Mistake, and unjust enrichment action (See Exhibit    Form 855B, section 14); and "Certification Statement" Section 15; 15(A)(3); and 15(A)(6); and are required to comply with the Conditions for Coverage and payment (a prerequisite to have right to payment for the rendered services) set forth in 42 CFR Part 494(discussed infra).

ESRD Facility

An ESRD facility is an entity that provides <u>outpatient maintenance dialysis services, or home dialysis training and support services, or both</u>. ESRD facilities are classified in Section 1881 of the Act and codified in 42 CFR 413.174 as being either hospital-based or independent facilities. **<u>After Jan. 1, 2009,</u> <u>There is no distinction between the two facility types for the purposes of payment under the ESRD Prospective Payment System ({PPS} will discuss infra), although it used to be and hospitals received more money for treating ESRD patients.</u>**

As defined in 42 CFR 413.65(a) hospital-based or independent ESRD facilities are not considered part of the hospital and do not qualify as provider-based departments of a hospital. **<u>hospital-based ESRD facilities have separate provider numbers under which they bill Medicare and are subject to unique Conditions for Coverage that differ from hospital Conditions of Participation.</u>**

<mark>Type of Services Covered Under Medicare Part "B" as relevant to this Complaint:</mark>

A. Dialysis

Dialysis is the process of removing waste products from the body by diffusion from one fluid compartment to another across a semi-permeable

membrane. <u>There are two types of renal dialysis procedures in common clinical usage: hemodialysis and peritoneal dialysis.</u> Both hemodialysis and peritoneal dialysis are acceptable modes of treatment for ESRD under Medicare.

1. Hemodialysis - Blood passes through an artificial kidney machine and the waste products diffuse across a manmade membrane into a bath solution known as dialysate after which the cleansed blood is returned to the patient's body. Hemodialysis is accomplished usually in 3 to 5 hour sessions, **3 times a week.** See §50.A.1 of this chapter for payment information.

2. Peritoneal - Waste products pass from the patient's body through the peritoneal membrane into the peritoneal (abdominal) cavity where the bath solution (dialysate) is introduced and removed periodically. See §50.A.4 of this chapter for payment information.

There are three type of Peritoneal dialysis methodology used by beneficiaries:

a. Continuous Ambulatory Peritoneal Dialysis (CAPD) - In CAPD, the patient's peritoneal membrane is used as a dialyzer. The patient connects a 2-liter plastic bag of dialysate to a surgically implanted in dwelling catheter that allows the dialysate to pour into the beneficiary's peritoneal cavity. Every 4 to 6 hours the patient drains the fluid out into the same bag and replaces the empty bag with a

new bag of fresh dialysate. This is done several times a day. Revenue code to use and report on form 1450/UB-02 is revenue code "0841", and no other revenue code.

                 b. Continuous Cycling Peritoneal Dialysis (CCPD) - CCPD is a treatment modality that combines the advantages of the long dwell, continuous steady state dialysis of CAPD, with the advantages of automation inherent in intermittent peritoneal dialysis. The major difference between CCPD and CAPD is that the solution exchanges, which are performed manually during the day by the patient on CAPD, are moved to nighttime with CCPD and are performed automatically with a peritoneal dialysis cycler. Generally, there are three nocturnal exchanges occurring at intervals of 2 1/2 to 3 hours. Upon awakening, the patient disconnects from the cycler and leaves the last 2-liter fill inside the peritoneum to continue the daytime long dwell dialysis. Revenue code "0851" must be reported on a claim(form 1450/UB-02), and no other Revenue code.

c.  IPD ("(Intermittent Peritoneal Dialysis) suited for individual who have many disabilities and are unable to perform the self-dialysis and require the assistance of an assistant or a care taker. **Due to the nature of the beneficiaries disabling conditions and inability to perform the dialysis**

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 39

**task, Medicare pays the dialysis providers for training the beneficiary's assistant or care taker for up to 15 sessions.**

c. Intermittent Peritoneal Dialysis (IPD) - Waste products pass from the patient's body through the peritoneal membrane into the peritoneal cavity where the dialysate is introduced and removed periodically by machine. Peritoneal dialysis generally is required for approximately 30 hours a week, either as three to 10-hour sessions or less frequent, but longer, sessions. a patient who performs self-dialysis, at the outpatient clinic(i.e., Davita), Patient's home, or hospital must not be categorized as IPD, because in an IPD dialysis modality, the patients' condition so ill, that he/she may not perform the dialysis herself and requires an assistance or care giver; per regulation, for dialysis clinic/Davita to be Complaint per 42 CFR Section 494, it is required that the care taker/assistant also be trained successfully and to be issued a satisfactory training certificate and a copy must be kept in the patient's record, and if the revenue code and/or any documentation relates to the treatment of the patient as "IPD", modality, then the document also must be sent to Medicare, and must be certified that the IPD method of dialysis is performed and the training charges associated with the cost of training the care taker/assistant, otherwise, if the documentation is missing, and/or not supplied it constitutes presenting, causing, statement, record, certification for approval and payment by

the government under the FCA and Davita and/its coconspirators, and all the Defendants are liable under the FCA.

14. Renal Dialysis Services

Renal dialysis services are all items and services used to furnish outpatient maintenance dialysis in the ESRD facility or in a patient's home.

Renal dialysis services include but are not limited to:

• All items and services included under the composite rate as of December 31, 2010 (see §20.2.E, §20.3.F, and §70.B of this chapter 8and 11, Medicare claim Processing Manual for ESRD Prospective SYSTEM(PPS);

ESRD-related Epogen, aka erythropoiesis stimulating agents (ESAs) and their oral or other forms of administration (see §20.3.A of this chapter for more information);

• ESRD-related injectable drugs and biologicals and their oral or other forms of administration (see §20.3.B, §20.3.C and §20.3.D of this chapter for more information);

• ESRD-related oral or other forms of non-injectable drugs and biologicals (see §20.3 of this chapter for more information);

• ESRD-related diagnostic laboratory tests (see §20.2 of this chapter for more information);

• Home and self-dialysis training (see §30.2 of this chapter for more information); and

• All supplies, equipment, and support services necessary for the effective performance of a patient's dialysis furnished in the ESRD facility or in a patient's home (see §20.4 of this chapter for more information).

See §20 of this chapter for more information regarding renal dialysis items and services.

Services Provided Under an Arrangement A Medicare certified ESRD facility may enter into written arrangements with a second ESRD facility to provide certain covered outpatient dialysis items or services to patients. When services are provided under an arrangement, the first ESRD facility retains professional and financial responsibility for those services and also for obtaining reimbursement for them.

==D. Types of Dialysis==

1. a. In-facility Dialysis - Dialysis furnished on an outpatient basis in a Medicare certified ESRD facility.

b. Home Dialysis - Dialysis performed at home, including a nursing home, by an ESRD patient or caregiver who has completed an appropriate course of training as specified at 42 CFR §494.100(a).

c. Staff-Assisted Dialysis - Dialysis performed by the staff of the ESRD facility in the ESRD facility.

d. Self-Dialysis - Dialysis performed by an ESRD patient in-facility with the expectation that the patient performs their dialysis treatment with little or no professional assistance. The patient must have completed an appropriate course of training in standards with CFR 42 Part 494.

E. Home Dialysis - Supplies, Equipment, and Support Services

**ESRD facilities are responsible for furnishing supplies, equipment, and support services for home dialysis. ESRD facilities are financially responsible and may not bill Medicare or the patient for separate payment.** If an ESRD facility arranges for a supplier to furnish ESRD-related supplies and equipment, the supplier may seek payment only from the ESRD facility and may not bill Medicare or the patient for separate payment.

The ESRD facility or home dialysis supplier may not bill the beneficiary directly for ESRD related supplies, services, or equipment. For further discussion on Method I payment refer to §20.1 of this chapter.

necessary equipment ordered by the attending physician, including (but not limited to) artificial kidneys, automated peritoneal dialysis machines, and support equipment.

**Note:** As of Jan. 1, 2011, Method I (beneficiaries directly deal with dialysis supply companies), is no longer available, and Medicare only pays for all items, supplies and services to the dialysis facility(i.e., Davita) a single payment that convers all related dialysis items, services and supplies.

Maintenance - Maintenance includes (but is not limited to) travel to the patient's home, transportation of the equipment to a repair site.

Supplies - Supplies include all durable and disposable items and medical supplies necessary for the effective performance of a patient's dialysis. Supplies include (but are not limited to): dialyzers, forceps, sphygmomanometer with cuff and stethoscope, scales, scissors, syringes, alcohol wipes, sterile drapes, needles, topical anesthetics, and gloves, necessary equipment ordered by the attending physician, including (but not limited to) artificial kidneys, automated peritoneal dialysis machines, and support equipment.

Types of Dialysis

• Types of Outpatient Maintenance Dialysis - **Outpatient maintenance dialysis is furnished on an outpatient basis by a Medicare certified ESRD facility and is paid under the ESRD PPS.** Outpatient maintenance dialysis is not acute dialysis. **Medicare defines acute dialysis services as dialysis that is not covered and paid under the ESRD benefit in 42 CFR 413.174.** Due to the

temporary nature of the acute condition of the dialysis patient, Medicare may pay a higher and different rate than the  maintenance aka ESRD. AS such dialysis providers must not use on any form 1450/UB-04 and/or physicians must not use any form 1500 and report acute condition to take advantage of a higher pay in reporting claims and documenting for payment For treating ESRD patients. For billing and payment instructions of acute dialysis services furnished in the hospital see( Exhibit and Pub. 100-04, chapter 4, §200.2 and Pub. 100-02, chapter 1, section 10.

A dialysis clinic is hospital based per definition of CFR 42, &498, if its bylaws is the same as the hospital, a mere contract with a hospital does not render the dialsis clinciic such as Davita as hospital based.3be an independent

prior to January 1, 2011, payment for drugs and biological furnished by independent ESRD facilities is based on the methodology specified in § 414.904 of this chapter.

(5) Effective January 1, 2011, except as provided below, payment to an ESRD facility for renal dialysis service drugs and biologicals as defined in § 413.171, furnished to ESRD patients on or after January 1, 2011 is

incorporated within the prospective <u>payment</u> system rates established by <u>CMS</u> in § 413.230 and separate <u>payment</u> will no longer be provided.

(6) Effective January 1, 2025, <u>payment</u> to an <u>ESRD facility</u> for renal dialysis service drugs and biologicals with only an oral form furnished to <u>ESRD patients</u> is incorporated within the prospective <u>payment</u> system rates established by <u>CMS</u> in § 413.230 and separate <u>payment</u> will no longer be provided.

[<u>62 FR 43668</u>, Aug. 15, 1997, as amended at <u>70 FR 70330</u>, Nov. 21, 2005; <u>73 FR 69935</u>, Nov. 19, 2008; <u>75 FR 49198</u>, Aug. 12, 2010; <u>78 FR 72252</u>, Dec. 2, 2013; <u>79 FR 66262</u>, Nov. 6, 2014; <u>80 FR 69076</u>, Nov. 6, 2015]

a. In-facility Dialysis - Dialysis furnished on an outpatient basis in a Medicare certified ESRD facility.

b. Home Dialysis - Dialysis performed at home, including a nursing home, by an ESRD patient or caregiver **who has completed an appropriate course of training as specified at 42 CFR §494.100(a).**

c. Staff-Assisted Dialysis - Dialysis performed by the staff of the ESRD facility in the ESRD facility.

d. Self-Dialysis - Dialysis performed by an ESRD patient in-facility with the expectation that the patient performs their dialysis treatment with little or no professional assistance. <u>The patient must have completed an appropriate course of training as specified at 42 CFR §494.100(a).</u> .

**Medicare payment for all modalities of home dialysis is made to the ESRD facility under the ESRD PPS.** Renal dialysis items and services may be furnished directly by the facility or under arrangement with a supplier(As of Jan. 2014, there is no longer a method can be selected for delivery of dialysis supplies. The dialysis providers such as Davita is required to manage, arrange directly with the supplier and deliver to the patient.

Centers for Medicare & Medicaid Services

The Centers for Medicare and Medicaid Services, originally designated the Health Care Finance Administration (HCFA), was established as a sub agency under the Department of Health and Human Services by the Reorganization Order of march 9, 1977.

The Centers for Medicare and Medicaid Services (CMS) was created to administer oversight of the Medicare Program and the federal portion of the Medicaid Program. It also ensures that program beneficiaries are aware of

the services for which they are eligible and that those services are accessible and of high quality and develops health and safety standards for providers of health care services authorized by Medicare and Medicaid legislation. CMS is also responsible for administering the State Children's Health Insurance Program (SCHIP), the Health Insurance Portability and Accountability Act (HIPAA), and several other health-related programs.

Notice of the law and regulation to the dialysis providers

The Medicare program is administered through the Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS").

The benefit Policy, and applicable regulations and laws applicable to ESRD are published in Medicare Benefit Policy Manual, Chapter 11 - End Stage Renal Disease (ESRD), Publication 100-02 CMS Manual System Department of Health & Human Services (DHHS), Medicare Benefit Policy Centers for Medicare & Medicate and Chapter 8, of the Medicare Manual Policy of Payment for hospitals and independent dialysis facilities such as Davita , and these regulations are updated and revised through quarterly updates, CMS Web, Federal Registry the final rule is published every year, Transmittals, Learning education for providers,

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 48

and before, CMS implements and/or makes a revision or law as applicable to dialysis providers (i.e., Davita), it will adequately give notice for such regulations and statue, and binds the dialysis providers such as Davita to such regulations and guidelines.

In addition, every document that Medicare requires the dialysis providers(i.e., Davita) and their representative to sign on their behalf binds the dialysis provider to the regulations, Statutes, and the laws of CMS( will discuss infra).

When the law or regulation is changed, updated, the changes to the regulation for a given Calendar years takes place for the revision of laws and amendments that are related and relevant to ESRD, and its implementation thereof, provider of dialysis and their representatives are given notice, education, and either the providers and/or their representatives have an opportunity to comment on the proposed change in regulation, ask questions, provide recommendation and share their concerns before the proposed change in regulation becomes law. Therefore providers of dialysis are informed according to the due process of the law.

Furthermore, the providers are afforded transitional time to adapt, train their staff, change and update their computer system to transmit and receive

data compatible with the new changes, receive education and assistance in learning the changes and the revised and new regulation.

CMS notifies and educates the providers regarding ESRD, regulations, payment methods as applicable to claims submission and/or requests through various methods by Transmittals, Federal Registry, CMS Website, LAN educational system specially designed to educate the providers about ESRD Policy, regulations, and any amendment or proposed changes to the regulation.

For example for the year 2014, the Transmittal 171 revised the regulation in Chapter 11, CMS ESRD Policy Manual, Pub 100-2, thus, the areas where the regulation was revised, supersedes Chapter, 11 CMS ESRD Policy Manual, Pub. 100-2.

At times the proposed transmittals and the revisions may be amended by a final rule, and the final rule becomes law and is published in the Federal Registry for the particular year in question.

Rulings

"Centers for Medicare & Medicaid Services (CMS) Rulings are decisions of the Administrator that serve as precedent final opinions and orders and statements of policy and interpretation. They provide clarification and interpretation of complex or ambiguous provisions of the law or regulations

relating to Medicare, Medicaid, Utilization and Quality Control Peer Review, private health insurance, and related matters.

CMS Rulings are binding on all CMS components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, and Administrative Law Judges (ALJs) of the Social Security Administration (SSA) who hear Medicare appeals. **These Rulings promote consistency in interpretation of policy and adjudication of disputes**."

**Medical Review and Education Consistent with Sections 1833(e), 1842(a)(2)(B), and 1862(a)(1) of the Social Security Act, the Centers for Medicare & Medicaid Services (CMS) is required to protect the Medicare Trust Fund against inappropriate payments that pose the greatest risk to the Trust Fund and take corrective actions.**

To meet this requirement CMS contracts with Part A and Part B Medicare Administrative Contractors (A/B MACs), Durable Medical Equipment Medicare Administrative Contractors (DME MACs), fiscal intermediaries (FIs), carriers and others to perform analysis of fee-for-service (FFS) claim data to identify atypical billing patterns and perform claims review. These entities are referred to as Medicare Contractors.

==Medical review== is the collection of information and clinical review of medical records by Medicare Contractors to ensure that payment is made only for services that meet all Medicare coverage, coding, and medical necessity requirements. Medical review activities are directed toward areas where data analysis goal of the Medical Review Program .  The goal of the medical review program is to reduce payment error by identifying and addressing billing errors concerning coverage and coding made by providers. To achieve the goal of the medical review program, Medicare Contractors:

• Proactively identify patterns of potential billing errors concerning Medicare coverage and coding made by providers through data analysis and evaluation of other information (e.g. complaints);

• Review CERT data, RAC vulnerabilities and OIG/GAO reports;

• Take action to prevent and/or address the identified error;

• Publish local medical review policy (called Local Coverage Determination-(LCD)) to provide guidance to the public and medical community about when items and services will be eligible for payment under the Medicare statute; and

• Publish MLN (Medicare Learning Network) educational articles as they relate to the medical review process.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 52

Progressive Corrective Action (PCA)

PCA is an operational principle upon which all medical review activities are based. PCA involves data analysis, error detection, validation of errors, provider education, determination of review type, sampling claims and payment recovery. It serves as an approach to performing medical review and assists contractors in deciding how to deploy medical review resources and tools appropriately.

**The Medicare Contractor may use any relevant information they deem necessary to make a prepayment or post payment claim review determination. This includes reviewing any documentation submitted with the claim as well as soliciting documentation from the provider or other entity when the contractor deems it necessary and in accordance with CMS manuals, through a process known as" <u>additional documentation request (ADR)"</u>.**

Contractor Oversight

One distinct role of the CMS Medical Review personnel is to provide contractor oversight such as:

Providing broad direction on medical review policy

• Review and approve Medicare Contractors' annual medical review strategies

• Facilitate Medicare Contractors' implementation of recently enacted Medicare legislation

• Facilitate compliance with current regulations

• Ensure Medicare Contractors' performance of CMS operating instructions

• Conduct continuous monitoring and evaluation of Medicare Contractors' performance in accord with CMS program instructions as well as contractors' strategies and goals

• Provide ongoing feedback and consultation to contractors regarding Medicare program and medical review issues.

National and Local Coverage Determinations (NCD and LCD)

**Medicare Contractors are required to follow CMS policy instructions**. In addition to the instructions found in our manuals, CMS and their contractors issue the following types of instructions:

• <u>National Coverage Determination (NCD):</u> Medicare coverage is limited to items and services that are reasonable and necessary for the diagnosis or treatment of an illness or injury (and within the scope of a Medicare benefit

category). The NCDs are developed by CMS to describe the circumstances for which Medicare will cover specific services, procedures, or technologies on a national basis. Medicare Contractors are required to follow NCDs. If an NCD does not specifically exclude/limit an indication or circumstance, or if the item or service is not mentioned at all in an NCD or in a Medicare manual, it is up to the Medicare contractor to make the coverage decision.

• <u>Local Coverage Determinations (LCD)</u>: In the absence of a national coverage policy, an item or service may be covered at the discretion of the Medicare Contractors based on a local coverage determination (LCD).

<u>Section 522</u> of the Benefits Improvement and Protection Act (BIPA) defines an LCD as a decision by a FI or carrier whether to cover a particular service on an intermediary-wide or carrier-wide basis in accordance with Section 1862(a)(1)(A) of the Social Security Act (e.g., a determination as to whether the service or item is reasonable and necessary).

FIs, carriers, and MACs are Medicare Contractors that develop and/or adopt LCDs. Medicare Contractors develop LCDs when there is no NCD or when there is a need to further define an NCD. The <u>guidelines for LCD development are provided in Chapter 13 of the Medicare Program Integrity Manual.</u>

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 55

All NCDs, LCDs, local policy articles, and proposed NCD decisions are found in the Medicare Coverage Database.

Manuals

"The CMS Online Manual System is used by CMS program components, partners, contractors, and State Survey Agencies to administer CMS programs. It offers day-to-day operating instructions, policies, and procedures based on statutes and regulations, guidelines, models, and directives. In 2003, the CMS Program was transformed and from Manuals into a web user-friendly presentation and renamed it the CMS Online Manual System". 22

Quarterly Provider Updates

CMS in its website as notice to Davita, physicians and other Defendants states in pertinent parts:

By publishing this Update, we intend to make it easier for providers, suppliers, and the general public to understand the changes CMS are proposing or making in the programs we administer (for example, Medicare, Medicaid, and the Children's Health Insurance Program (CHIP).

CMS publishes this Update at the beginning of each quarter to inform the public about the following:

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 56

• Regulations and major policies currently under development during this quarter.

• Regulations and major policies completed or cancelled.

• New/Revised manual instructions

CMS regulations establish or modify the way CMS administers its programs. CMS' regulations may impact providers or suppliers of services or the individuals enrolled or entitled to benefits under CMS programs.

Quarterly News Update

On December 8, 2003, President Bush signed into law the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L.108-173). CMS acted quickly to publish the documents that implement provisions of the Medicare Modernization Act. Those documents are listed on the Medicare Modernization Update Page.

Based on our review of the new legislation, we may publish additional regulations that are not identified in this quarter's update. Subscribers to this Update will be notified if we publish additional regulations. In addition, we will release a number of program notices and memorandum that will clarify certain provisions of Pub. L. 108-173.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 57

For rules with comment periods published beginning January 30, 2004, CMS began accepting electronic comments. Commenters may submit electronic comments via the erulemaking Page before the close of the comment period for a published document.

Publication Schedule

CMS generally limits the number of days it publishes regulations and notices in the "Federal Register" to the fourth Friday of each month. By limiting the number of days that it publishes regulations and notices, CMS hopes to add an element of predictability to its communications with the public and reduce the time it takes for the public to research changes. Some of our regulatory work, however, is mandated by specific statutory publication dates, and CMS will continue to comply with the statutory requirements.

Further, CMS intends to publish the Update on the first business day of each quarter (January, April, July, and October) on the CMS web site.

CMS-QPU Listserv

You can receive changes to this Update, as CMS makes them, by subscribing to the CMS-QPU Listserv.

Proposed Regulations

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 58

CMS publishes its regulations in the daily national "Federal Register". The "Federal Register" is available at many public libraries and colleges. To view regulations and notices published this quarter, refer to the Listing of Quarterly Provider Updates.

A "proposed rule" or proposed regulation announces CMS' intent to issue a new regulation or modify an existing regulation. A proposed regulation also solicits public comments during a comment period. It sets forth proposed amendments to the Code of Federal Regulations (CFR), but does not amend the CFR.

By law, anyone can participate in the rulemaking process by commenting in writing on the regulations CMS proposes. CMS encourages public input and carefully considers these comments before it develops a final regulation. CMS generally receives public comments on its proposed regulations.

The "comment period" specifies how long CMS will accept public comments. Usually, the record – or docket – stays open for comments at least 30 days for Medicaid regulations and 60 days for Medicare regulations, though some comment periods may differ. (Weekends and holidays are counted in determining the closing date of a comment period.)

To submit an electronic comment on a regulation for which CMS is accepting electronic comments, please visit the eRulemaking Page.

Alternatively, you may submit your written comments by mailing or delivering your comment(s) to the location cited in the regulation. CMS can process comments more effectively if they are presented – either written legibly or typed – on 8-1/2-inch by 11-inch paper.

Here are some other suggestions for ensuring your comment(s) have the greatest possible impact:

• Refer to the regulation title and the CMS number, listed at the beginning of the regulation (for example, Revisions to Payment Policies under the Physician Fee Schedule for Calendar Year 2004, CMS-1476-P).

• Clearly indicate if you are for, or against, the proposed regulation or some part of it and why. CMS regulatory decisions are based largely on law, clinical and scientific evidence, and program experience. CMS reviewers look for reasoning, logic, and good science in the comments they evaluate.

• Include a copy of articles or other references that support your comments. Only relevant material should be submitted.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 60

• If an article or reference is in a foreign language, it must be accompanied by an English translation verified to be accurate. A copy of the original publication should accompany translations.

• To protect privacy when submitting medical information, delete names or other information that would identify patients.

The Role of Saint John's Hospital

For instance, Relator was told by Saint John's hospital's claims' processor in Texas " we use procedure code 90945 and we bill Medicare $8,000-$10,000 per dialysis treatment and Medicare pays us $6,000 for each dialysis treatment".

This is type of fraudulent over payment is despite the fact as of Calendar 2009, dialysis clinics and hospitals are reimbursed the same rate, treating patients with ESRD.

For instance, if the base rate for 2014, was $239.02 per dialysis treatment, accordingly, Davita should have received per dialysis treatment $239.02 provided if rendered the services in compliance of section 494 of the CFR 42, and since Hospitals should receive the same amount then Saint John's should have received close to the $239.02 and not bill for 8 to 10 thousands of dollars and receive $6,000 per treatment.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 61

Relator alleges that the Defendants individually and collectively artificially set and manipulate the rate for dialysis instead of adhering to what Congress has set as a base rate for dialysis treatment of ESRD patients.

Relator also alleges in trying to protect the US from all these fraudulent charges and in order to protect herself, by blowing the whistle, she is retaliated by all these Defenats and is not rendered services for her care in violation of the regulations (i.e., CFR 42 part 494-495).

For example, when the Relator was taken to the Saint John's emergency room, she was mistreated and was told "why do you come here", another time, Relator was admitted to the same hospital's emergency room for high potassium, and when the Relator requested to be fed because she was very hungry, the nurse brought Relator a banana a very high potassium content food, that ESRD patients are advised to stay away from, this conduct demonstrates lack of compliance, patients are admted to the ER to get better and not worse, the government pays high prices for ER services, and does not pay these hospital to make beneficiaries to be more at risk of harm than when they initially were brought into the ER.

Relator alleges that dialysis patients with ESRD are used as a vehicle for the Defendants to milk the government.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 62

Relator, alleges that the Noridian MACs, Network 18, Los Angeles County of Dept. of Public Health, whose responsibility is to be loyal to the government in providing the services to the government and the beneficiaries are causing false claims to be presented to the government for payment or approval. And liable under FCA(False Claims Act) is to make sure  sent a letter,

that is easy 28 U.S. Code § 1332 - Diversity of citizenship; amount in controForms, claims received by Noridan and the MACS

The Relator alleges that Noridain, was not in compliance and

The Defendants Network 18, is a contractor through HHS, and its responsibilities are to oversee, compliance, patient grievances, accuracy of data dialysis clinics provide, for a fee of 50 cents per dialysis treatment per patient totaling 50 cents x 12 dialysis session per month= $6 in dues per patient per month the Network is legally entitled to if the Network complies with its duties and report accurately for survey of the dialysis clinics it monitors, handles patients grievances, and transfers data accurately to Medicare. Any excess money received beyond the $6 per month in dues, constitutes a windfall, illegal and a false claims under the statute.

==Directives to the Medicare Administrator Claim(MAC)==

The HHS directs the Contractor MAC that administers the claim processing and ESRD related issues, through Memos, and directs these Contractors through its mandate, to update their data processing system, claims, of the new and revised regulations, assist providers in educating the providers thorough various publication on CMS Website, and send notices.

==The Medicare Administrator Claim's(MSC) Responsibilities==

The Contractor MAC is responsible for processing the accuracy of Data and processing of claims and is instructed to deny, reject claims submitted/requested by providers to insure those submissions by providers, adhere to changes in regulation, and to monitor  provides of dialysis such as Davita and make sure that they are in compliance with the regulation which is a prerequisite to the right to receive payment and participation in the enrollment of Medicare(i.e., CFR 42 part 494) and Medicate.

The rational for the proposed regulation, revision, and mandates to Contractor MACs is to prevent submission, request for payment of False Claims, False records, and false  Certification.

The Defendants Noridian is a for profit company, a subsidiary of ****handles the administration and processing of claims, data, for Medicare

through a Contract with the HHS(Human Health Services), and is responsible for updating processing and accuracy of data and payments.

The government heavily relies on the MACS to accurately process the data, claims, supporting documents for such claims submitted by dialysis providers such as Davita and other Defendants( stated herein) for payment and approval of the services rendered to the beneficiary.

Further, the government heavily relies on the MACS review of these claims and services and to promptly and accurately report to CMS.

In addition, the government directs and mandates that the Noridain and the MACS to adhere strictly to the regulations, statue that are in effect and are the law at the time of the review, approval, payment and processing of these claims.

As such  MACS are charged with the responsibility to process and pay these claims accurately and make sure the claims department under the supervision of Noridan and/or the MACS are adequately trained, only approve and pay for the claims that are medically necessary(as stated herein) and those claims, accurately reflect with  corresponding   codes assigned or approved by CMS(Center For Medicare and Medicaid), to the particular provider(i.e., form 1500 is assigned to physicians and not dialysis providers such as Davita, or Hospitals such as UCLA

or Saint John's), CPT codes procedure codes(i.e, dialysis procedure including one evaluation, represents evaluation by a physician and not a dialysis provider such as Davita; cpt code 90945 represent patient received the evaluation that corresponds to cpt code 90945 in the hospital as an inpatient; cpt code 90966 represents services rendered by a physician for evaluation of a patient who is over the age of 18, for home dialysis, and code 90966 by its use the physician attests that he/she manage and evaluated the care of a home dialysis patient for the entire month(i.e., Dec. 1-Dec. 31 and not a partial month{partial months require the use and reporting of a code that represents a lesser amount and lesser pay}; cpt code 90993 dialysis training corresponds with and assign to a training performed by a physician and not a dialysis provider such as Davita or Hospital{i.e., UCLA or Saint John's; cpt code 90993 per regulation must not be processed  and paid unless and until a. the training  is completed; b. a satisfactory documentation of completion of training issued a copy kept in the Patient's medical record and supporting documentation received by the MACS processing such claims; c; the patient is in her home environment and performing her dialysis; d. the patient informs the dialysis provider that she/he is comfortable and knows how to perform her dialysis at  home and it is documented, then at that point the MACS are allowed to process such claims for payment and pay the services rendered but only

if such item {i.e. training is allowed to be payed as a separate item; and if it is bundled the MACS have a responsibility to not process and pay claims that are bundled{i.e. training}; the MAC are responsible to update their computer system frequently and at least quarterly to reflect current law and the regulations at the time of processing those claims and payments; the MACS are charged with a responsibility to update their computer system and process providers claims such as Davita and all the Defendants(as stated herein) and have those claims go through the Medicare's "pricer", in order to pay those claims submitted according the amount is set by the government and not an amount Davita or other Defendants set as a price;  The MACS are charged with a responsibility to inform the providers of guidelines and the current regulations and laws in effect at the time they are, the MACS must not just give notice to the providers such as all Defendants, the MACS also have the responsibility to act and process those claims according to the current law that it was in effect when the MACS process those claims for approval or payment; the MACS are required to follow the direction of CMS and not providers such as Davita when the MACS process the claims for payment; the MACS are charged with a responsibility to not process, approve, or pay provider's claims such as Davita and other Defendants(stated herein) who submit claims with old and outdated payment system methodology{i.e. composite rate that was in

effect prior to Jan. 1, 2010 which was replaced with the new ESRD PPS/bundled as of Jan. 1, 2011); the MACS are charged with the responsibility to prevent fraud, to give access to information to the beneficiaries in alerting them what constitutes fraud and abuse, that is one reason the MACS are required to provide the beneficiaries with Medicare Summary Notices(MSN); the "MSN" has to be easy to understand for the beneficiaries and not be complicated so the beneficiaries can detect fraud and report it, in addition for the beneficiaries to protect themselves from over charges and/or complain about services that were paid for by the government but never rendered; the MACS are charged with actually sending these MSNs and not make excuses for not sending them{i.e., "we do not send the MSNS any more", that is what the relator was told when she was not receiving her MSN's at to Davita/Total Renal Care; The MACS have a responsibility to receive complaints of fraud and overcharges when a beneficiary contacts them and they must not discourage and/or refuse to take the beneficiaries Complaint{i.e.: when the Relator contacted the claims department of the MAC's on or about June 20014, the Relator was faced with constant bias on behalf of Davita, refused to take Relator's Complaint of Davita's overcharges, and told Relator "it is only a few dollars", ad Relator responded by saying "it is not a few dollars it is over $2000 at a time", "besides it is not your money, it is not coming our of your pocket that you

are saying it is only a few dollars", it is the hard earned tax payers money" even then the MAC's claims department was refusing to take the beneficiaries complaint, her supervisor was showing bias in favor of Davita and discouraging Relator from filing a claim and said to Relator "if you file a claim against Total Renal Care/Davita, they will retaliated and will not provide you with a services. The supervisor for the MACS was responsible to take the Relator's Complaint and have it investigate it but was refusing.

After the Relator was given a run around, she wrote to the Noridian MAC, inquiring about the MSN and the fact she was not receiving them, who gave her another run around and directed Relator to call 1800 Medicare, and the Noridan MAC's letter was not signed and said it was from "D Miller", not disclosing her full identity.

To stall the Relator, the MAC sent the Relator 60 pages of MSN covers that was not useful and Relator had to keep on requesting them

Relator alleges that this is during the time, both Davita and the MACS were desperate and trying to further conceal the over payment of the frivolous Davita's claims.

Relator contacted an investigator for the MACS who also did not comply with her responsibilities, when Realtor told the investigator she was going

to have others look into this, Relator was told by the investigator with an angry tone, that Relator could not do that it was the investigator who was deciding things, and when Relator noticed bias by the investigator in favor of the Davita and when the Relator noticed the investigator's conduct was not reasonable and neutral, Relator requested to speak to the investigator's supervisor, but she was refused, and shortly after, the investigator sent the Relator a letter that she closed the Relator's case and Compalaint.

Relator who wanted to prevent Davita's fraud and as a citizen protect the US government and its tax payers from waste and abuse and to protect herself and other dialysis patients who get abused and used in the processing of dialysis providers such as Davita milking the government also contacted the Network 18, who is charged with similar responsibilities as the Noridain MACS in transferring and accuracy of data submitted by Davita, monitoring Davita's Compliances per 42 CFR part 494-495, and other regulations and directions mandated to them by CMS and according to their contract terms, addressing patients' grievances, also refused to take Relator's Complaint and showed extreme bias in favor of Davita, Relator was told by employee of the Network 18, that she had to side with Davita otherwise she would lose her job, the director of the Network 18, whose one of responsibilities are to make sure Davita was complaint per 42 CFR 494 and treated

patients such as Relator with respect and dignity, the director herself tried to

intimidate the Relator and failed compliance when she treated the Relator with

disrespect and in an in dignifying  manner, and showing extreme bias towards

Davita closed the Relator's Complaint and refused to address Relator's gradiences

against Davita.

What is the Network 18's Function and Responsibilities

Furthermore, when the Relator reported Davita's fraud and non-

compliances to the Network employee MSN(i.e. Ilene), the employee said

"Medicare pays what Medicare pays" and basically ignored the Relator's reporting

of the fraud, non-compliances, when she had a duty to document, prevent, and

report to CMS.  Only when the Relator in a follow up conversation told Ilene about

reporting the fraud and the behavior of the Medicare administrators claims is when

the Network employee(Ilene) said "oh" "my god", if you have contacted the

OIG(Office of Inspector's General), I need to let Medicare know".

Defendants Saint John's hospital and UCLA hospital and their

employees as individual Defendants engaged in similar conduct(as incorporated

and stated herein this Complaint).

Davita is in joint venture with UCLA and Saint John's hospital and many other hospitals, and contracts with these hospitals to provide the dialysis services when patients are admitted  to these hospitals.

This is favorable to Davita since these hospitals that are no profit and tax exempt(i.e. money received by them not traceable to Davita), they bill for their services and out of the proceeds they reimburse Davita.  Therefore, Davita does not have to bill Medicare directly.  This helps Davita with its scheme, because when Davita bills Medicare for its services, he receives money, and at the same time, these hospitals bill for same or similar services and then they reimburse Davita, so Davita is double dipping, and since it is the hospitals that get paid and they are exemt from reporting and filing taxes, Davita gets shield and this is a vehicle for Davita to continue with the double billing, over charging the government.

It is the contention of the Relator that FCA is not applicable to IRS, and references to taxes are made in regards to the government over charges related and prosecuted under FCA.

END STAGE RENAL Disease(ESRD) Processing Payment System(PPS)

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 72

Section 153(b) of the Medicare Improvements for Patients and Providers Act (MIPPA) of 2008 amended section 1881(b) of the Social Security Act requiring the implementation of the ESRD PPS effective January 1, 2011.

**The ESRD PPS replaced the basic case-mix adjusted composite payment system** and the methodologies for the reimbursement of separately billable outpatient ESRD related items and services. The ESRD PPS provides a **single payment** to ESRD facilities, that is, hospital-based and independent facilities, that covers all the resources used in providing an outpatient dialysis treatment, including supplies and equipment used to administer dialysis in the ESRD facility or at a patient's home, drugs, biologicals, laboratory tests, training, and support services.

Coverage of services under the ESRD PPS:

THE ESRD PAYMENT SYSTEM GENERALLY:

• Effective January 1, 2011, CMS implemented the ESRD PPS(End Stage Prospective Payment System/bundled/consolidated), methodology for payment and processing ESRD claims.

• Section 153(a) Public Law 110-275, of the Medicare Improvements for Patients and Providers Act (MIPPA) of 2008 (14)(A)(i) subject to subparagraph (E), for services furnished on or after Jan. 1, 2011, the Secretary shall implement a

payment system under which a single payment is made under this title to a provider of services or a renal dialysis facility for renal dialysis services (as defined in subparagraph(B) in lieu of any other payment(including a payment adjustment under paragraph (12)(B)(ii) and for such services and items furnished to paragraph (4).

for Calendar year 2014, setting the base rate for $239.02 after all the adjustments and calculations are made and required by law, and this amount represents a single payment per treatment of an ESRD patient, and the base rate is a single payment that bundles and includes all of the related ESRD, including training, support, supplies, equipment, laboratory services, drugs, biologicals, Epogen. Iron, etc. As such no dialysis services may deviate from that, refer patients to another place, setting, hospital, pharmacy, laboratory, treatment that is related to ESRD. It is solely the responsibility of the dialysis provider to provide those services to the beneficiary for a particular year. The regulation is mandatory unless an exception is noted by regulation:

Exception: #1: Outlier

On limited occasions, depending on certain characteristics of a patient, treating of an ESRD patient may cost the dialysis providers more than usual and more services(i.e.: more Epogen is required than the threshold allows), in

that limited situation dialysis providers, may qualify for a payment of an Outlier(a reserved fund withheld from the base rate of 1% to apply to those situations that the dialysis provider incurs more costs, those items and services are medically necessary and beyond the threshold that the government has accounted for in the base rate as a compensation to these providers for treatment of an ESRD patient per treatment), in such a case the dialysis providers must report(but not indicate a priced, charge) on the line item, the item is used and its quantity(lowest amount, and smallest unit) and use appropriate codes to indicate the item or services provided to the patient is related to the treatment of ESRD.(See Exhibit for the list of what may be covered and compensated for under outlier)

Note: If an item is not related to the treatment of ESRD, and is separately entitled to be paid, then it must not be reported for an Outlier, because it does not qualify. To do so constitutes an expectation of approval and payment and false under false claims under FCA.

Exception #2:

Those items and services that are non-related to the treatment of ESRD, and by category are considered as separate items, meaning, they were not a part of the composite rate when the composite rate was in effect in 2010, and were not considered bundled/consolidated as of Jan. 1, 2011 to present.  Furthermore, it

was not accounted for in the base rate or adjusted case mix part of the base rate, will receive payment outside the ESRD PPS methodology base and bundle rate. They are permitted to be reported on the line item, with a reasonable price. As such, there must be on the claim/form use of code "Y" a modifier reported, flagging Medicare's computer system and the MACS, that this item is entitled to payment and is considered a non-related ESRD, and a separate items or services. The reporting of the "Y" modifier is an attestation that the item is not bundled. Otherwise, the use and reporting of the "Y" modifier when the item is ESRD related, is a false claims under the FCA.

Exception #3:

        Those items and services that are related to ESRD and in excess of allotted by Medicare for the treatment of ESRD, that require a medical justification, specific revenue code, diagnosis, occurrence, and value codes, signed and ordered by the physician, with attestation that such services and items were medically necessary and justified. Supporting documentations must be sent to Medicare, and a copy must be kept in the patient's file. Otherwise, it constitutes a false claim under FCA.

Exception #4:

        Exclusion of Oral Drugs Only effective as of Nov. 2015.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 76

• This Exception is not applicable to Jan. 2014 through at least Dec. 2014. To submit a claim for these Oral Drugs Only(phosphorus binders {Renvela, Velphoro, Stem) and Sensipar, in addition to any other drugs, and biologicals, labs, training, support, supplies, constitutes a false claims.

• This exception that will be discussed below, favors the dialysis providers, however, its applicability is only from 2015-2024 or prior to Jan. 2014.

• As stated here in this Complaint, all dialysis related supplies, drugs, Related to ESRD PPS were bundled, accounted for in the case mix adjusted of the base rate. However, as to certain specific drugs relating to the treatment of the ESRD, per MIPPA 2014, as of Nov. 2015, 15, no adjustment was made to the case mix adjusted payment part of the base rate and these certain oral drugs that include only (phosphors

binders{i.e., Renvela, Velphoro, Steve} and Sensipar were excluded and they may be billed under Medicare Part "D" ONLY IF: A. THE SUBMITTION OF THE CALIM IS FOR DRUGS PRESCRIBED AND RENDERED IN 20015;B.NO PRICE IS STATED ON THE CLAIM,MEDICARE HAS ITS OWN NATIONAL PRICER INDEX FOR DRUGS; C. IT NO LONGER IS QUALIFIED UNDER THE OUTLIER PAYMENT EVEN IF IT IS USED FOR HE TREATMENT OF THE ESRD AND EVEN IF IT IS USED IN EXCESS OF

THE TRESHHOLD. **THE RATIONAL** IS THAT SINCE, THERE WAS NO ADJUSTMENT MADE FOR 2015 AND THERE AND THESE 4 DRUGS DISCUSSED, WILL NOT BE INCLUDED IN THE BASE RATE AND ARE NOW AS OF 2015, ARE CHARACTERIZED AS SEPARATELY PAYABLE ITEMS, AND AS DISCUSSED ABOVE, SEPARATELY PAYABLE ITEMS DO NOT QUALIFY UNDER OUTLIER PAYMENT, BECAUSE TO DO SO WOULD CONSTITUTE DOUBLE PAYMENT AND A FALSE CLAIM UNDER THE FCA.

Exception #5:

Acute dialysis not ESRD or ESRD related services:

• **Acute dialysis** is not chronic and is temporary in nature, until the patient's condition recovers to normal function. The method of payment, for acute dialysis is different and may be higher. As such payments under acute dialysis and conditions in treating the acute condition, is not processed under ESRD PPS, instead it is processed under OPS(Outpatient Prospective System and must not be confused with the ESRD PPS bundle base rate. Furthermore, dialysis providers must not in order to get compensated for a higher rate, use inappropriate codes, forms, modifiers, to indicate and/or give an impression that the condition of the

ESRD patient being treated is acute. Otherwise, to do so constitutes a false claims under the FCA.

• The Acute Dialysis could be for those patients whose kidneys fail temporary, due to sudden poisoning, or diabetes that after a few some dialysis patients recover and their kidneys will function normal and/or may be monitored and controlled with medication. Unlike, ESRD, maintenance dialysis that is chronic and is permanent that requires permanent dialysis or kidney transplantation to sustain life.

• **Rational as to cost:** Under the OPS the rates in treating an acute patient's dialysis related may be higher, but in a long run, the government saves money, because it is temporary, and certain costs may be associated with preserving the kidneys function. On the other hand, under the ESRD PPS, the treatment is costly to the government due to its longevity of the treatments, as such the government under the ESRD PPS has a whole sale approach to the treatment of the ESRD patients, and the base rate is calculated considering all the costs associated with the treatment of the ESRD patient.

Per Treatment Basis:

• Under the ESRD PPS payment is made on a per treatment basis. The ESRD PPS base rate is the per treatment unit of payment that applies to both adult

and pediatric patients. ESRD facilities furnishing dialysis treatments in-facility and in a patient's home, regardless of modality, are paid for up to 3 treatments per week, unless there is medical justification for more than 3 weekly treatments. Meaning, ESRD facilities furnishing dialysis in-facility or in a patient's home, regardless of modality, are paid for a maximum of 13 treatments during a 30 day month and 14 treatments during a 31 day month unless there is medical justification for additional treatments.

Calculation of the base rate under the bundle/consolidated/ESRD PPS:

The base rate as updated and adjusted every Calendar year consist of:

i. Market Basket Update

CMS updates on an annual basis, the ESRD PPS base rate by the ESRD bundled market basket percentage increase factor minus a productivity adjustment factor.

ii. ESRD PPS Case-Mix Adjustments

The ESRD PPS includes patient-level adjustments (also known as the case-mix adjustments), facility-level adjustments, and training adjustments, as well as an outlier payment. Under the ESRD PPS, the beneficiary co-insurance amount is 20 percent of the total ESRD PPS payment, after the deductible.

iii. Patient-level case-mix adjustments

The ESRD PPS base rate is adjusted for characteristics of both adult and pediatric patients to account for case-mix variability. The adult case-mix adjusters include variables (age, body surface area (BSA), and low body mass index (BMI)) that have been part of the basic case-mix adjusted composite rate payment system. In addition, the ESRD PPS includes adult case-mix adjustments for six co-morbidity categories (three acute and three chronic) as well as the onset of renal dialysis. Pediatric patient-level adjusters consist of combinations of two age categories and two dialysis modalities.

iv. Onset of Dialysis

An ESRD facility may only receive the onset of dialysis adjustment for adult Medicare ESRD beneficiaries. The onset period is defined as the initial 120 days of outpatient maintenance dialysis, which is designated by the first date regular chronic dialysis began as reported on the CMS Form 2728. The onset of dialysis adjustment factor is a multiplier used in the calculation of the ESRD PPS per treatment payment amount for dialysis furnished in either an ESRD facility or home setting.

v. Facility-level adjustments

There are two facility-level adjustments in the ESRD PPS. The first adjustment accounts for ESRD facilities furnishing a low-volume of dialysis treatments. The second adjustment reflects urban and rural differences in area wage levels using an area wage index developed from Core Based Statistical Areas (CBSAs).

Outlier Policy (discussed here in the Complaint):

o For items and services entitled to be reported on a claim for an outlier compensation beyond the threshold see Exhibit injectable drugs and equivalents

Exhibit supplies, DMEs, Equipment qualified for In addition, The ESRD PPS provides additional payment for high cost outliers due to unusual variations in the type or amount of medically necessary care when applicable. Outlier payments are based on a comparison of the predicted Medicare allowable payment (MAP) per treatment to actual incurred expenditure per treatment for services which were or would have been considered separately billable prior to the implementation of the ESRD PPS. ESRD outlier services include(See Exhibit for items and services entitled for an outlier if qualified or an Outlier.

**Note:** if the dialysis provider does not qualify for an outlier, it must not report the outlier item or services on the claim presented to Medicare, to do so

constitutes expectation of payment or approval and is a false claims under the FCA for its submission and/or causing, records, statements, certification, to be presented. Furthermore, it the item or services listed on the Exhibits stated above and on the lists, it must not be supplied with a price, submitting a price constitutes a false claim under the FCA.

Training Add-on:

   • As stated herein the Complaint, under the ESRD PPS, the training of dialysis for (home Hemodialysis, home peritoneal dialysis {CAPD, CCPD, IPD}, and self-dialysis in outpatient dialysis or hospital for an ESRD treatment of dialysis is already included in the base rate and is bundled, with the following considerations:

   • The training add-on payment is computed by using the national average hourly wage for nurses from the Bureau of Labor Statistics. The payment accounts for nursing time for each training treatment that is furnished and is adjusted by the geographic area wage index. The training add-on payment applies to both peritoneal dialysis and hemodialysis training treatments. This amount will be added to the ESRD PPS payment, each time a training treatment is provided by the Medicare certified training ESRD facility, Only if the dialysis treatment is actually being provided to the ESRD patient.

• The rate for training included in the consolidated payment from 2011-Jan. 2014(if the dialysis provider by 2010 announced that it was only implementing the ESRD PPS partially) was $20 per treatment session. Any amount in excess of $20 per session constitutes a false claim under the FCA, pre 2014.

• In 2014, per Fed. Registry Final Rule, vol. 78, the amount for training under the ESRD PPS was increased by approximately, $31.00 to account for the nurse's time. Under the upgrade, the $31.00 was added to the base rate only if: a. Training was necessary; b. there was full Compliance with 42 CFR, section 494, and a satisfactory training certificate issued, placed in the patient's file, and supporting documentation with attestation of physician's order, signature, method of training, and the accurate quantity of the training; c. and the training was up to the allotted amount set by CMS. For home or self-dialysis, Peritoneal dialysis (CAPD,CCPD, IPD) up to 15 training sessions.

For home Hemodialysis training up to 25 training sessions. Rational: It is more complex, may require more time.

**Note:** each methodology of dialysis training is assigned its revenue code. When reporting a training modality, dialysis providers must not use a revenue code that is specified to be used for CCPD, for CAPD,

==Compliance== related to providing services to the treatment of ESRD patients: Compliance, is a Medicare precondition to payment and continued enrolment in Medicare as a provider of ESRD.

In order, for a dialysis provider to have a right to receive payment and/or submit/present a claim to the government for payment, processing, enrollment, there must be full compliance as stated in 42 CFR, part 494. If any noncompliance in providing services to an ESRD patients, dialysis providers must not submit, present/ file a claim and/or report. To do so constitutes a false claim under the FCA (as of 2015, per authority of Office of Inspector's General, a simple request for approval or payment, when there should not be an expectation of payment or approval, constitutes a false claim under the FCA).

Dialysis providers in rendering services to ESRD patients must adhere to protocols set by CMS, in administration of the services they provide.

In addition, the dialysis providers must have their own protocols that are in harmony with Medicare's protocols, must adhere to those protocols, and a copy of the protocols must be included in the patients' records, to give direction, to the nurses, and other staff treating the ESRD patient.

The use of the protocols, are especially important for administration of Epogen therapy, and Iron Injection therapy(See Exhibit for Medicare's protocols for administration of Epogen and Iron therapy.

Due to Davita's massive Epogen, false claim and waste, the regulation for administration of Epogen and Iron injection was revised and as of 2015, dialysis providers must have patients written consent for the administration of Epogen

The dialysis providers whether outpatient clinics , inpatient(hospital), and physicians, must strictly adhere to the following regulations:

i. Dialysis providers and Hospitals, must use HCPCS (Health Care Common Procedure Codes as assigned to them by Medicare; The HCPCS must be used in conjunction and reported on form 1450/UB-04(title).(See Exhibit for form 1450/UB-04, and instruction on how to report

procedures:

codes and claims on these forms.(See Exhibit 2 , for form 1450/UB-04 and its instructions thereof.

ii. Physician Nephrologists must use HPCSP Level I, CPT codes (Current  Procedural Terminology[ CPT] was developed by the American Medical

Association (AMA) in 1966, and is approved by CMS") for procedures provided to ESRD Medicare patients, by physicians).

Example: a physician Nephrologists provides a procedure to an ESRD patient. The dialysis outpatient clinic must not use form 1500(assigned to physicians only), and must not use procedure codes (i.e., 90945, "dialysis procedure including one evaluation"), to do so constitutes a false claim, statement, certification under the FCA. See Exhibit 2 for form 1500 and instruction thereof.

iii. These forms and/or codes are assigned specifically to physicians and must not be used in an inappropriate manner(i.e., Davita could not use the cpt code level I, to bill and file their claims 90945, 90993, 90966 for providing services to its patients).

iv. On these forms the condition of the disease causing kidney failure must be specified by a coding called ICD-9 CM(International Classification of Disease, Clinical Modification A standardized classification of disease, injuries {i.e., kidney failure/ESRD, or causes of death} that had to be used on claims prior to Oct. 2015, for submission to Medicare and in order to identify the specific disease causing the ESRD condition), and as of Oct. 2015 as an ICD-10 (See Exhibit for a list of ICD-9 diseases).

Rational for the use of ICD on claims: The government spends billions of dollars of disease control, prevention, research, and grants.

In order to allocate the funds for such diseases, research and grants, the government requires the data for processing and allocating the funds and in reliance of the submitted data by dialysis providers (i.e., Davita) the government makes rule, policy.  Therefore, the compliance for use and report of the accurate ICD codes in submission of its claims by a dialysis provider(i.e., is imperative).

Another example as to why the government requires for dialysis providers such as Davita to accurately use specific codes to describe the services they provide, in the manner they provide and who(i.e., the type of beneficiary they provide it to) is:

if an ESRD patient's kidneys failed due to polycystic kidneys, adult type (dominant), then the dialysis provider(i.e., Davita) must report ICD-9-CM 753.12 on its claim.

On the other hand if the condition of the kidney failure is due to autosomal recessive polycystic kidney disease, the ICD 9 CM that must be reported by a dialysis provider(i.e, Davita) on its claims for submission to Medicare is "753.1" and not "753.12".

Through reliance to this data the government assesses how much fund it needs to allocate to the autosomal recessive polycystic kidney disease.

CMS had directed MACS(Medicare Administrator Claims{Noridian}) to update Medicare's  Computer System  to reject any item contain ICD-9 after Oct. 2015.

Another reason the ICD CM codes are important is to prevent fraud is:

For the payment and processing claims submitted to Medicare, for acute kidney conditions, they are processed and paid on a different system and the rates are not the same as ESRD and may be higher.

This is due to the fact acute condition are generally require hospital care, and there may be higher costs associated to provide care for the temporary kidney condition.  they are temporary as stated herein the Complaint), an acute kidney condition is treated differently.

For example: if the condition of the kidney is kidney failure and the beneficiary has to be categorized as an ESRD beneficiary and requires maintenance dialysis for life support, when the dialysis provider(i.e., Davita) submits its claims to Medicare for payment and processing and uses a code that corresponds with acute condition vs. ESRD chronic condition, the Medicare's computer system can detect it and instead of processing and paying for the claim

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 89

on acute condition, it will trigger the ESRD condition and will pay according to the base rate set for ESRD condition under the ESRD PPS.

This detection by Medicare's computer system is imperative, to prevent overcharges and fraud.

Compliance:

Supporting Records and Certification:

The other required component for submission, processing and payment of claims, is strict standards set by CMS in delivery of services to ESRD beneficiaries and its compliance is required for payment or approval of claims and processing of claims.  Such compliances are governed by Section 494 CFR 42, and all other laws and regulations sated in this Complaint including to exhibits. Furthermore, the dialysis providers are required to certify that the supporting documents are adequate and indicate the dialysis providers adhered to standards, statutes, laws and regulations set by CMS in the delivery of their services to the ESRD beneficiaries.

The Importance of The Forms:

Page 4 of form 2728 is also important as it directs the dialysis providers that the form must not be used to report "acute" kidney conditions. Now, on one hand if the dialysis provider is trying to qualify a beneficiary to

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 90

receive Medicare for kidney condition, the dialysis provider must show the condition is ESRD.  Another words, the dialysis provider(i.e., Davita) must not use 2728 to receive Medicare for an ESRD condition, yet file its claims reporting acute conditions(generally taken care of in hospital settings, acute means all of the sudden and emergency, and emergency is generally taken care of in the hospital setting) and the dialysis provider(i.e., Davita) must not use an acute condition and report it as ESRD to take advantage of the Medicare qualification and coverage under ESRD premises.

One of the functions of form 2728, to detect and prevent fraud and overpayment, another method CMS uses to prevent fraud, over payment and to make sure the dialysis providers such as Davita are compliant with the regulations according to standards set by CMS, is through monitoring services performed by Network 18 and Los Angeles County of Dept. of Health.

Primary Dialysis Setting Home Dialysis Facility/Center SNF/Long Term Care Facility

Primary Type of Dialysis Hemodialysis (Sessions per week_____/hours per session_____) CAPD CCPD Other 24. Date Regular Chronic Dialysis Began (mm/dd/yyyy) 25. Date Patient Started Chronic Dialysis at Current Facility (mm/dd/yyyy).

Has patient been informed of kidney transplant options? Yes No  If patient NOT informed of transplant options, please check all that apply: Medically unfit Patient declines information Unsuitable due to age Patient has not been assessed Psychologically unfit Other

Because the information reported by the dialysis provider on form 2728, must be supported by documentation and must contain the attestation and signature of the physician, if the dialysis provider(i.e., Davita) gets creative and invents co-morbid conditions in order to take advantage of a higher pay and adjustment for co-morbid conditions, then the Medicare's computer system and the MACS should get alerted that the co-morbid conditions on the claims should be denied as fraudulent.

Fields, are of great importance. Any deviation, constitutes a false claim under the FCA.

Other Entities Responsibilities to the Government:

The Network 18, is charged with the transmittal of accuracy of data, Dialysis providers supply(i.e., Davita) and monitoring of compliance that are specifically set by CMS through 42 CFR part 494-495.  The Los Angeles County Dept. of Health, is charged with the responsibility to conduct Surveys and

certificates and licensing of dialysis providers such as Davita and is required to submit frequent reports to CMS.

37. Authority

The County of Los Angeles Department of Public Health, Health Facilities Inspection Division has the authority and responsibility for the licensing and certification of health facilities and ancillary health services, including:

- Acute care hospitals
- Dialysis clinics

There is a total of 1,964 health facilities in the Los Angeles County area. The fulfillment of this responsibility requires inspections of health care facilities and providers in order to evaluate compliance. It also requires written reports, which document the division's findings and may serve as the basis for further legal action. The Division also responds to citizen complaints regarding health facilities or providers. How L.A. County Health Facilities Inspection Division Helps You

These employees are called "surveyors" or "evaluators." They conduct routine inspections or "surveys" and investigate complaints. They also make follow-up visits to assure that problems which have been identified are corrected.

Surveyors use many methods to evaluate the quality of care patients/residents are receiving.

Specific complaints are investigated in all health facilities within the Department's jurisdiction.

"The mission of Health Facilities Inspection Division is to promote the highest quality of care provided to patients in health facilities and other settings throughout the County of Los Angeles."

Applicable law to ESRD Dialysis Related Services:

A. ESRD PPS Bundled Program:

Under the new system effective, Jan. 1, 2014, the new system called ESRD PPS, and under this method of reimbursement and approval for services dialysis providers such as Defendants provide, all items and services related to the treatment of an ESRD is bundled as a single payment called base rate that is set by congress(as stated herein), and these items and services must not be unbundled and claimed and/or reported separately, unless a rare exception such as outlier exists, and the Defendants qualified, and only if they qualified then can claim it on the bill, otherwise, to unbundle and claim it or submit it constitutes a violation of the regulation.

§413.230 Determining the per treatment payment amount. The per-treatment payment amount is the sum of: (a) The per treatment base rate established in §413.220, adjusted for wages as described in §413.231, and adjusted for facility-level and patient-level characteristics described in §§413.232 and 413.235 of this part; (b) Any outlier payment under §413.237; and (c) Any training adjustment add-on under §414.335(b). [75 FR 49200, Aug. 12, 2010]; 42 CFR Ch. IV (10–1–14 Edition).

B. Physician's Fee Schedule:

Physicians are paid a fee for evaluation and management of their ESRD patients.  The fee is called Capitation fee and the physician must provide all the services necessary to evaluate and manage the care of the ESRD beneficiary.

In addition, the physician is required per regulation, to use form 1500(hard copy) to submit his claims or when required use the computerized equivalence form 837P to submit its claims.

**Either way, the physician is bound to use data and codes that truly reflect the items, services, procedures performed.**

In delivery of such services the physician is also bound to be compliant to certain standards set by CMS.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 95

Physicians/nephrologist treating ESRD patients such as Relator are paid a fee that corresponds with codes that are assigned to them(product of American Association) and approved by Medicare, and the use of these codes on form 1500 that specifically is assigned to the physicians communicate the kind and duration of services they provided to the patient/Relator. As such a set fee is assigned to these physicians depending on the CPT code they are required to use per regulation in filing their claims for payment, processing or approval. The fee the physicians are paid are called Monthly Capitation Payment(MCP), and it is a payment amount the physician per agreement and attestation has agreed to accept. Another words, the specific CPT code represents a set amount and communicates a specific treatment or procedure performed by the physician.

required monthly capitation payment (MCP) physicians or practitioners furnish at least one face-to-face patient visit per month for the home dialysis MCP service as described by CPT codes 90963, 90964, 90965, and 90966. (1) CPT Code 90966:

Represents the monthly capitation payment(MCP)management and evaluation of the patient for the full and entire calendar month for a Home dialysis patient as Relator was.

The use of this code also requires at least one-face-to face patient visit per month for the home dialysis services.

Must be reported by physician on form 1500 or electronic equivalence (as stated herein)assigned to physicians by regulation.

(2) CPT Code 90945(Dialysis Procedure including one physician evaluation):

(i) Physicians' Services - Criteria for Procedure Codes.—

The procedure code covers the full range of physicians' renal-related services furnished during an **inpatient** dialysis treatment.

In order to be paid based on a procedure code, the physician must have been physically present with the patient at some time during the course of the dialysis, and the medical record (e.g., the physician's progress note or the nurse's notes in the patient's hospital medical record) must document this.

If the physician visits the dialysis inpatient on a dialysis day, but not during the dialysis treatment, do not pay the physician on the basis

of a procedure code.

The use of CPT Code 900945(dialysis procedure including one evaluation)Must be reported on form 1500 assigned to physicians by regulation.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 97

(ii) Billing Codes.--Except when the MCP applies, (see §15062.1B) claims for physicians' inpatient dialysis services furnished to ESRD or acute dialysis patients are processed using inpatient dialysis services procedure codes 90935, 90937, **90945,** and 90947 according to the rules in §15062.1C.

(iii) **15068. CORRECT CODING POLICY**

(iv) Section 4501 provides the basis for the Healthcare Common Procedure Coding System (HCPCS) that physicians and others must use to report the services they provide to Medicare beneficiaries. The HCPCS system contains three levels of codes. Level I contains the American Medical Association's Current Procedural Terminology (CPT) numeric codes. Level II contains alphanumeric codes primarily for items and services not included in CPT. Level III contains carrier specific codes that are not included in either Level I or Level II.

(v) The CPT (Level I) is a listing of descriptive terms and identifying codes for reporting medical services and procedures performed by physicians. The codes are updated annually by the CPT Editorial Panel based on input from the AMA Advisory Committee which serves as a channel for requests from various providers and specialty societies. The purpose of the coding system and annual update is to communicate specific services rendered by physicians, usually for the purpose of claim submission to third party (insurance) carriers.; CMS as well as

many third party payers have adopted the CPT coding system for use by physicians and others to describe services rendered

Rational: to accurately reflect what service a physician performs and to process claims and payment that accurately reflect the services performed and/or medically necessary.

(vi) 15350. DIALYSIS SERVICES (CODES 90935-90999 when applicable)

(vii) A. ESRD Monthly Capitation Payments

For their adult patients, physicians may bill either the monthly code for Capitation Payment(i.e.: CPT 90966 for adult home dialysis) or the daily code(i.e., CPT Code 90945{if the evaluation of the patient is done in the hospital as an inpatient} dialysis procedure including one evaluation) with units that represent the number of days in a single month, but may not bill both.

To bill for less than a month of service, providers bill the appropriate daily code) and units that represent the number of days. Providers may bill either the monthly code or the daily code, but not both. Since billing is done at the conclusion of the month, the patient's age at the end of month is the age of the patient for billing purposes.

B. Inpatient and Outpatient Dialysis Services On Same Date As An

Evaluation and Management Service.--

CPT codes 90945 and 90947 are used to report all non-hemodialysis procedures. All of these codes include payment for any evaluation and management services related to the patients renal disease that are provided on the same date as the dialysis service. Therefore, payment for all evaluation and management services is bundled into the payment for 90935, 90937, **90945,** and 90947.

Medicare Department of Health & Human Services (DHHS) Carriers Manual Centers for Medicare & Medicaid Services (CMS) Part 3 - Claims Process ,Transmittal 1810

Background and Overview:

C. Processing Claims for Physician's Payment and Services:

• In Jan. 2011, The Centers for Medicare & Medicaid Services (CMS) issued a final rule that changed how physicians are paid for furnishing dialysis services for patients with end stage renal disease (ESRD) from partial bundled composite rates to a new partial payment system (PPS).

• The rule also establishes a quality incentive program (QIP, discussed infra)) linking a physician/nephrologist payments to performance standard (per

requirement by MIPPA 2008. Required by the Medicare Improvements for Patients

and Providers Act}).

      • Defendant, Doctor Anjay Rastogi, a nephrologist, who was a treating

physician for  Realtor and her dialysis and many other patients at Davita(Relator

witnessed), who was placed by Davita(illegally), at UCLA hospital, for the

purpose of referring patients to Davita(illegal referral, Anti-Kick Back Statute, will

be discussed infra).

      • At the same time Dr. Rastogi was the treating nephrologist for the

Relator, he also( in violation of 42 CFR, Part 494, and Anti-Kick Back Statute, and

Stark Law violation/physician's self referral), was the Medical Director of Davita.

      • In addition, Dr. Rastogi in violation of the Medicare regulations was

the Director of the Kidney donors at UCLA Transplant.

      • In addition, Dr. Rastogi in violation of the Medicare regulation was

the Relator's treating and evaluation donor.

      • In addition, Dr. Rastogi in violation of Medicare regulation was the

member of transplant evaluation team having a vote as to whether Relator, and

other government insured beneficiaries, will be candidates to receive

transplantation.

• In addition, Dr. Rastogi in violation of the Medicare regulation, was UCLA's researcher.

• In addition, Dr. Rastogi, in violation of the regulation promoted and marketed pharmaceutical companies products, who paid Dr. Rastogi thousands of dollars, whether directly in his name, and/or Davita/ and/or UCLA, and/or other hospitals he was placed in for the purpose of recruiting patients(i.e.: children's Methyl hospital) and/or pushing, marketing, prescribing medications, he directly or indirectly received financial incentives.

The Medical Director must not be the same as the treating physician for the beneficiaries, they must have distinct qualifications, and duties, in order to prevent conflict of interests, and in order for the physician, to deliver his/her services in the best interest of the patient and what is medically necessary.

QIP(Quality Improvement Performance):

Regulation effective as of Calendar year 2008; Reduction based on poor performance to take place in Calendar year 2012:

Background and Overview

• Medicare Improvements for Patients and Providers Act of 2008 (MIPPA). The law requires the ESRD PPS to pay dialysis facilities a single bundled rate for renal dialysis services and home dialysis.

• The rule also establishes a quality incentive program (QIP) linking a dialysis providers and facilities such as Davita, payments to performance standard(per requirement by MIPPA 2008 { required by the Medicare Improvements for Patients and Providers Act}).

• This is the first time a QIP is part of a PPS.

• While the proposed QIP promotes quality of service furnished by these facilities by creating payment incentives for them to take steps towards improving patient outcomes.

• Facilities failing to meet or exceed specified total performance scores will receive reduced reimbursement for dialysis services furnished on or after Jan. 1, 2012.

• Both the new prospective payment system and the proposed QIP were required by the

Medicare Improvements for Patients and Providers Act of 2008 (MIPPA).

Training Home Dialysis(Hemodialysis or Peritoneal Dialysis{CAPD, CCPD, IPD} And the NEW PPS(Prospective Payment System):

Training Bundled And Included in the Single Payment For Dialysis Treatment:

• The final rule(published in Federal Registry), establishing the new PPS provides for a payment adjustment for home dialysis training when clinically appropriate.

• This adjustment, which CMS adopted in response to public comments on the ESRD PPS proposed rule that strongly supported home dialysis, will help ensure ESRD patients learn the skills and techniques they need to properly receive their dialysis treatment at home.

• Medicare in 2010 pays for certain dialysis services under a partial bundled rate, referred to as the composite rate.

• Payments for these composite rate services represent about 60 percent of total Medicare payments to ESRD facilities.

• The remainder of Medicare spending for dialysis services(about 40 percent) is for separately billable items such as drugs, supplies and non-routine laboratory testing.

• In 2007, there were about 600 hospital-based and 4,330 freestanding ESRD facilities furnishing outpatient maintenance dialysis services to nearly 330,000 Medicare patients. Total Medicare payments for these services were $9.2 billion including the dialysis treatments and other ESRD-related items such as drugs.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 104

Case-Mix Adjustments And Its Relationship to Co-Morbidity:

• Case-Mix is a variety of ESRD patients with different characteristics of their condition. ESRD dialysis patients vary in age, condition that caused their kidney failure(i.e. diabetes, vs. genetical kidney defects, etc.). Some patients also have other conditions that Medicare considers in calculating the amount dialysis providers such as Davita would get an adjustment on the standard rate.

• **There are 3 conditions that Medicare considers as Acute Co-Morbidity** and there are 3 conditions that Medicare considers as Chronic Co-Morbidity.

• Accordingly, Medicare, by making adjustments makes a concession, to make up for those conditions that require more resources, drugs, and labor.

Another concession is for the three Co-Morbidity conditions that are Acute.

Another concession is for the three Co-Morbidity conditions that are chronic.

Another concession is training home patients on dialysis for home Hemodialysis or Home Peritoneal (CAPD, CCPD, IPD).

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 105

Note: When the new regulation supersedes an old one, for example is there is per regulation, an increase in payment for training, the increase will be added to the bundle rate, while the patient receives dialysis treatment.

Medicare provides the Case-Mix adjustment, for dialysis providers such as Davita, to have a fair distribution of ESRD patients with different and other ailments.

The rational: is to prevent burden on one dialysis facility, specially, those that are small in size

These adjustments are made through various method by Medicare.

• Adjustment in the bundle rate

• Add on as an outlier when qualified

Payment, Or Approval and Processing Dialysis Providers claims, And Activities Under The ESRD PPS

Effective Jan. 2011, Mandatory Jan. 2014:

Methods of Payment:

• In addition to finalizing the ESRD PPS payment policies and rates for 2011, CMS issued a proposed rule that would establish performance standards and a scoring methodology for the QIP required by MIPPA to ensure ESRD patient care quality(stated herein)

• In the ESRD PPS final rule, CMS adopted three quality measures that will be used in the initial implementation of the QIP.

• Two of these measures reflect whether patients are receiving appropriate treatment for anemia—that is, whether the amount of iron in the blood is neither too low, nor too high.

• The third measure captures patients' urea reduction ratio (URR), which indicates how well dialysis treatments are removing wastes from patients' bodies.

• The law requires CMS to reduce the payment rates to a dialysis facility by up to 2.0 percent if that facility fails to meet or exceed the established performance scores with regard to performance standards established for each quality measure.

• Quality Measures July 2010 Updates Change Request (CR) 6782 - Dialysis Adequacy, Infection and Vascular Access Reporting Effective Date: July 1, 2010 Implementation Date: July 6, 2010

Quality Measures:

CMS requires collection of data to analyze dialysis providers(i.e., Davita) quality of performance, through collection of selection of data that are

assigned specific codes that dialysis providers such as Davita must use in reporting their data, compliance, activities, claims.

      • Each claim must have a value code, occurance code, condition code, and other specific codes some of which as follows: o Hemoglobin or hematocrit values Measure of anemia management

      • Anemia management quality measure uses the most recent hemoglobin or hematocrit lab value.

      • Collected using Value codes 48 or 49 on bill type 72x.

      • Providers required to continue reporting these values per current CMS requirements

PRICER Software

      • PRICER is a software module in the Medicare claims processing system used to price claims

      • The Medicare Administrators(MACS) or The Fiscal Intermediary Standard System (FISS) aka Fiscal Intermediaries(FI), must pass the following claim data to the ESRD PRICER in order to process the claim for payment and or quality of performance compliance

      Through Date(i.e., from x date to Y date) ;

Condition Codes; Value Codes Amount; Occurrence codes;  Occurrence spans; Line Revenue Code; type of dialysis facility(i.e, hospital or independent facility such as Davita); Hemoglobin reading; Democrat reading; place of dialysis(i.e., self care, home dialysis); type of dialysis represented by codes(i.e, peritoneal, hemodialysis); Weight of Patient; Hight of patient; blood pressure of patient.

• Effective with calendar year 2005, the payment limits for Medicare Part B drugs changed:

Line Item Billing Requirement for End Stage Renal Disease (ESRD) Claims, Effective As Of April 1, 2007:

Background:

• The Centers for Medicare and Medicaid Services (CMS) in compliance with the Health Insurance Portability and Accountability Act (HIPAA) Implementation Guide, requires that all outpatient claims contain a line item date of service for each revenue code billed on the claim. Department of Health & Human Services (DHHS) Pub 100-04 Medicare Claims Processing Centers for Medicare & Medicaid Services (CMS) ,Transmittal 1084 Date: OCTOBER 27, 2006 Change Request 5039.

Argument:• Effective 2007, CMS/Regulation through transmittal 1084,requires dialysis providers such as Davita, when they bill and submit their

claims to Medicare for their services, report those bills, claims according to the new and revised regulation, and on the line item.

**Rational** for line item billing:

• Benefits of line item billing include:

More accurate and timely claim payments to providers.

• Less staff time needed to research dates of services performed by other providers.

• Clinical data will no longer need to be rolled up to accommodate the claims processing systems and therefore, will more closely match the claim record.

• More detailed claim data could be used to assist the CMS in future refinements to improve the accuracy and equity of ESRD payments.

• Ensures that both the CMS and its providers are HIPAA compliant for submitting the appropriate line item date of service.

§ 413.174 Prospective rates for hospital-based and independent ESRD facilities.

(a) Establishment of rates. CMS establishes prospective payment rates for ESRD facilities using a methodology that -

(1) Differentiates between hospital-based providers of services and independent ESRD facilities for items and services furnished prior to January 1, 2009;

(2) Does not differentiate between hospital-based providers of services and independent ESRD facilities for items and services furnished on or after January 1, 2009;

The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery. The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

As set forth below, Defendants' actions alleged in this Complaint also violate the California False Claims Act, Cal. Govt. Code §§12650 et seq.; and any other State in the United State or its territory, who may have an interest in this action.

As set forth below, Defendants' actions alleged in this Complaint also violate Plaintiff/Relator's Torts,  and Contracts claims.

Based on these provisions, qui tam plaintiff and relator Nasrin Yousefmorrowatti seeks to recover all available damages, civil penalties, and other relief for federal and state-law violations alleged herein and any administrative adjudication under the law and penalties attached thereof.

Relator has direct and independent knowledge of the information on which the allegations are based, such knowledge that materially adds to any publicly disclosed allegations or transactions, and Relator voluntarily provided the information to the government before filing this action, and caused Medicare to cancel and deny some  of Davita's false claims.

Relator reported Davita's fraud as early as April 2014 to the Medicarfe, specifically in June and July of 2014, Relator contacted Medicare claims Dept. and insisted that the outrageous inflated charges were fraudulent.

Relator also informed Defendants Network 18, but they decided to ignore the truth and not be complaint  with their duty under the  Contract to protect the government's interst and Relator further alleges that Network 18, its director and Social worker(i.e: Ilien) caused a false claim, false record, false compliance, false certification, false data be presented to the government for payment and approval.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 112

Relator also informed the Dept. of Public Health Defendant Shirley singleton, and her manager Eric Stone, responsible for survey, certification and licensing of Defendant Davita and its employees.

The federal government provides funds to the Los Angeles County Health Dept. to conduct surveys, certification and licensing

As such the Los Angles County Dept. of Public Health are charged with a duty to monitor Davita and dialysis providers and enforce Medicare regulation, Compliance and federal rules. of dialysis providers such as Davita.

However, these Defendants(i.e, Eric Stone, Sherly Singelton, and those who work under their supervison) in their public capacity ignored their duty to the Federal government, and refused to address Relator's concern with Davita's filing, presenting of false records and their non-compliance, in fact, they refused to initially take Relator's Complaint when by regulation they were mandated to do so

Relator was challenged with bias and favoritism  by Defendant Eric Stone and Sherly Singleton in favor of Davita.

When Relator contacted Defenat Sherly Singleton to report Davita's noncompliance's and possible fraud, Sherly Singletone told Relator "we do not call the public back", refused to take Relator's Complaint against Davita, when in fact

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 113

she has a responsibility and is charged to do so, and hung up on the Realtor and refused to connect Relator to her supervisor when Relator asked.

Despite Relator's knowledge of unhappy patients (at Davita and other dialysis centers) who have made remarks that their rights were violated and they were going to report to the Los Angles County Dept. Of Health, necessary action is not taken to enforce CMS regulations, instead Ms. Singelton showers Davita and other dialysis clinics with recommendations and awards, this is contrary to how patients have expressed their unsatisfactory remarks about Davita's and other dialysis services, quality performance and treatment of patents with ESRD.

The Los Angeles County Dept of Health is also charged by CMS with the responsibility to provide access to dialysis patients for dialysis clinics' ratings and review, however, Relator on number of occasions tried to have access to such a site through, Dept. of Public Health, but unsuccessful, and such access was denied.

The same is true with Mr. Eric Stone, Ms. Singelton's supervisor.

When Relator, located Mr. Stone and tried to address her issues, Mr. Stone promised to call Relator back but this never happened, in fact several phone messages of Relator was not returned by Mr. Stone either.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 114

Although, Mr. Stone receives Federal funds to enforce Medicare's regulation, and he has no rule making authority, Mr. Stone, shows great amount of favoritism towards Davita, refuses to address the grievances he has a responsibility, and he discouraged Relator from filing a Complaint against Davita.

Although, under supervision of Mr. Stone, his staff surveyed Davita in March 2015, his constant refusal and showing remarkable bias towards Davita, created challenges for the Relator in addressing her concerns, only when Relator informed Mr. Stone that she was going to report Mr. Stone to Office Of Inspector's General is when he became willing to take his responsibilities seriously and even then, he still manged to bend the rules in favor of Davita, although, made it look like he was citing Davita for violations.  Mr. Stone, caused furtherance of Davita's non compliance in continuity of care for the Relator.

Mr. Stone, instead of being a neutral fact finder constantly defended Davita.

Even when Relator informed Mr. Stone, of Davita's filing of false claims and non compliances in violation of Medicare regulation(i.e. 42 CFR Part 494) and justified Davita's conduct.

Relator alleges that Ms. Singleton, and Mr. Stone, promote Davita's interests instead of the government's.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 115

This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C.§3732(a), which authorizes nationwide service of process and because the Defendants have minimum contacts with the United States, and can be found in and/or transact business in this District.

Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and 1395(a) and 31 U.S.C. §3732(a) because Defendants can be found in and/or transact business in this District. At all times relevant to this Complaint, Defendants regularly conducted substantial business within this District, maintained employees in this District, and/or made significant sales within this District. Defendant maintains its corporate headquarters in this District. In addition, statutory violations, as alleged herein, occurred in this District.

Example of Medicare's Quarterly Updates and illegal use of CPT Code 90945

A. REPORTING PROCEDURE CODE 90945 (dialysis procedure including one evaluation) by nephrologists on form 1500, for payment and processing of an ESRD claim:

i. Physicians, must use CPT Code 90945 on form 1500, if and only if the patient is an inpatient and is receiving dialysis and is face-to face at the time of the visit with the nephrologist (See Exhibit 11, Transmittal Section ).

Ii "MACS make payment on the basis of END-STAGE RENAL DISEASE(ESRD) CPT Procedure codes **90945,** 90935, 90937, or 90947, only if the place of service on the claim is inpatient hospital". The Medicare Claims Processing Manual" Chapter 8, Sec. 170(See Exhibit Unbundling; Medicare quarterly provider compliance newsletter-volume 4, Issue 2-January 2014).)

iii. Rational: "This is because all physician's outpatient renal-related services are included in payment under the monthly ESRD capitation payment ( it is an amount that is assigned to the services of a nephrologist for an ESRD patient for the entire calendar month and the management and evaluation and treatment of), The Medicare Claims Processing Manual" Chapter 8, Sec. 170(See Exhibit "U",

iv. Intentional unbundling is fraudulent billing. The Medicare Claims Processing Manual" Chapter 8, Sec. 170; (See Exhibit "U", Unbundling; Medicare quarterly provider compliance newsletter-volume 4, Issue 2-January 2014).

v. Example of prohibited conduct unbundling:

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 117

A physician billed initial hospital care at the highest billing level and a hemodialysis procedure with a single evaluation by a (physician or other qualified health care professional) for the same beneficiary for the same date of service. The medical records showed that the beneficiary was evaluated for shortness of breath related to fluid overload from ESRD. The beneficiary had dialysis treatment and was discharged on the same day the physician only provided an E&M(Evaluation and management) service related to the beneficiary's ESRD, so the E&M service is bundled into the HCPCS code 90935. It is not separately payable. Medicare quarterly provider compliance newsletter-volume 4, Issue 2-January 2014).

vi. Inpatient and Outpatient Dialysis Services On Same Date As An Evaluation and Management Service.

CPT codes 90935 and 90937 are used to report inpatient ESRD hemodialysis and outpatient hemodialysis performed on non-ESRD patients (e.g., patients in acute renal failure requiring a brief period of dialysis prior to recovery). CPT codes **90945** and 90947 are used to report all non-hemodialysis procedures. All four of these codes include payment for any evaluation and management services related to the patients renal disease that are provided on the same date as the dialysis service. Therefore, payment for all evaluation and management services is bundled into the payment for 90935, 90937, 90945, and 90947, except

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 118

for the following evaluation and management services which may be reported on the same date as a dialysis service with the use of the --25 modifier and they are significant and separately identifiable and met any medical necessity requirements.(Exhibit

Fee Schedule For Physician's services, sub heading 15350.Medicare Carrier Manual Part 3, transmittal 1810.

B. Authentication by a physician

For medical review purposes, Medicare requires that services provided/ordered be authenticated by the author(physician). The method used should be a handwritten or electronic signature. Stamped signatures are not acceptable. Medicare Quarterly Provider Compliance Newsletter-Volume 4, Issue 2-January 2014.

C. The "Program Integrity Manual lists requirement for signature attestation statements. In order to be considered valid for medical review purposes, an attestation statement must be signed and dated by the author of the medical record and must contain sufficient information to identify the beneficiary. Without a signature attestation, the clam is an overpayment for insufficient documentation.

Medicare Quarterly Provider Compliance Newsletter-vol. 4, issue 2, Jan. 20114.

D. CORRECT CODING POLICY

Section 4501 provides the basis for the Healthcare Common Procedure Coding System (HCPCS) that physicians must use to report the services they provide to Medicare beneficiaries. The HCPCS system contains three levels of codes. Level I contains the American Medical Association's Current Procedural Terminology (CPT) numeric codes(approved by CMS). Level II contains alphanumeric codes primarily for items and services not included in CPT. Level III contains carrier specific codes that are not included in either Level I or Level II.

The CPT (Level I) is a listing of descriptive terms and identifying codes for reporting medical services and procedures performed by physicians. The codes are updated annually by the CPT Editorial Panel based on input from the AMA Advisory Committee which serves as a channel for requests from various providers and specialty societies. . Medicare Carriers Manual Part 3- Claims Process, Header Section Number 15068(A), Fee Schedule For Physician's Services. (See Exhibit "F", Fee Schedule For Physician's Services).

E. Coding Based On Standards Of Medical/Surgical Practice.

All services integral to accomplishing a procedure are considered bundled into that procedure and, therefore, are considered a component part of the

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 120

comprehensive code. Many of these generic activities are common to virtually all procedures. Medicare Carriers Manual Part 3- Claims Process, Header Section Number 15068(A), Fee Schedule For Physician's Services. (See Exhibit "F", Fee Schedule For Physician's Services).

F. Calculating Payment For Intermittent Peritoneal Dialysis(IPD), Home Peritoneal dialysis (CAPD, CCPD), Hemodialysis (Home or Outpatient).

Effective 2007, Regardless of the particular regimen used, under the composite rate(2007-2001) and (2001 partially composite, partially ESRD PPS), After Jan. 1, 2014(payment under ESRD PPS bundle base rate) the composite rate IPD is paid based on a weekly equivalence of three (Hemodialysis treatment) composite rate per week. Sec. 80.3, 80.4 Medicare Claims Processing Manual Chapter 8 - Outpatient ESRD Hospital, Independent Facility, and Physician/Supplier Claims, as amended (See Exhibit , Calculating payment)

Davita's Prohibited Conducts

Despite its Official Prohibition by CMS, Davita instructed its staff to the conduct described below an Relator believes that these instructions may have been reduced to writing:

    a. Prescribe items, drugs and services medically not necessary;

    b. Exaggerate the quantity of drugs, dialysis treatment and services;

c.  Unbundle drugs, items and services, and file claims for separate payment in violation of the ESRD PPS effective Jan. 1, 2011;

d.  Over utilize durgs and cause waste and abuse;

e.  File claims and bills for services not rendered in violation of CMS regulations;

f.  **Neglect the quality of patient's care and** fail to provide medically necessary, support, drugs, treatment, items and services;

g.  Falsify, documents, records and certify them as truth in violation of the CMS regulations.

Examples of Davita billing for services not rendered:

Davita summited claims to Medicare for dialysis treatment and stated on its record(Exhibit 6,  Relator's records) that Relator started maintenance dialysis on Jan. 10, 2014, this resulted in Davita's submission of false claims to Medicare for the period of Jan. 10, 2014 through March 30, 2014.(See Exhibit 8), as Exhibit 8, will indicate Davita filed and  submitted  claims Davita knew was not entitled to be reimbursed.

<u>For example #1,</u>

<u>Supporting Facts:</u>

Relator started her maintenance dialysis on March 31, 2014 when the Davita nurses, brought the Baxter CCPD dialysis equipment to Relator's place of residence.  This information also stated in Relator/patient's records(Exhibit).  However, Davita falsified its documentation and supporting documents and filed a claim that was submitted to Medicare for payment or approval for periods starting from Jan 10, 2014(indicating the start date of maintenance dialysis) through March 30, 2014, stating the start date of dialysis treatment as of "Jan. 10, 2014".

<u>Argument:</u>

    a. Davita's false claims as exhibit 8 will indicate are January 24 through January 31, "dialysis training, patient helper, course nojt completed cpt code (90993), for the amount of $4,391.00 Davita filed a claim and submitted to Medicare for payment and received over $13,000 of false claims money Davita was not entitled to be reimbursed(See Exhibit 10).

b. Davita's false claims as exhibit 8 will indicate also consists of false claims submitted to Medicare for payment, for the month of February and through March 30, 2014, for "Dialysis Procedure Including One Evaluation CPT code (90945), since Davita knew it never provided such a dialysis services to the Relator. The use of cpt code 90945 will be discussed herein this Complaint.

c. In violation of regulation (as stated herein this Complaint), while under the care of Davita, Relator was referred ou(see exhibit 8 for Laboratory Medicine Consultant's bill) to seek blood test at a different laboratory other than Davita.

By doing so, Davita caused a false claims, because it was Davita's responsibility to take Relator's blood and was not supposed to refer the Relator out to another laboratory causing the government duplicate payment.

Davita's knowledge that such dialysis services were not rendered on Jan. 10, 2014(i.e., start of dialysis as of Jan. 10, 2014), is evident though Relator's record, interaction with Relator, and statements made and records provided to Los Angeles Department of Public Health(Exhibit 4 ), the Dept. responsible for Survey and Certificate licensing of Davita and its staff knew that:

Because Davita knew it did not provide maintenance dialysis treatment from Jan. 10 through March 30, Davita knew that it could not expect any payment for such services it did not render and it knew it was not entitled to receive a payment form Medicare, however, to raise its revenue, Davita misrepresented a material fact to naturally induce payment from Medicare and filed a claim and summited it to Medicare claiming start of dialysis as of Jan. 10, 2014.  Davita knew such statements(i.e, start of maintenance dialysis as of Jan. 10, 2014) was a false representation, it also knew through from 855B(Exhibit 2 Forms) and/or electronic equivalence enrollment agreement signed with CMS, that per regulation, the government only pays for services that are actually rendered, and since Davita did not render the dialysis treatment in Jan 10, 2014 through March 30, 2014, any claims filed by Davita was also a false claims.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 125

Davita knew through its own acknowledgment (Exhibit 1 ) that the government only pays a certain amount for the "Home Dialysis Peritoneal Training"(i.e. $33 for 2014 included in the base rate), yet filed a claim at a very high and inflated price of $4, 391.00 per training session that received over $13,000.00 for January 2014, and over $28,000.00 for February 2014(See exhibit 10) that Davita knew was not entitled to and could not expect a payment for , but filed it for the purpose of receiving such funds and by doing so Davita submitted a false claims under FCA.

Furthermore, per Section 1128A(a)(1) of the Social Security Act(Medicare pays for services that are actually rendered), that Davita attested, signed and agreed to( Exhibit 2 Form 855B and/or electronic equivalence) Davita knew that because it was not entitled to receive any payment or reimbursement for the period stated above, it must not have filed a claim with Medicare, and Davita knew or showed reckless disregard for the truth of the information, and its conduct resulted in filing a false claim under FCA.

Example #2,

==$22.10 for pharmacy from June 1, 2014 through Dec. 31, 2014, was not renderd to the Relator==

Supporting Facts:

As exhibit 8   will indicate Davita filed and submitted claims to Medicare for the amount of +19 for pharmacy.  Relato does not recognize such service were rendered to her.  However, Relator was advised by Davita's nurse Defendant Prissy to apply an antibiotic ointment to her "exit site"(the place for catheter connection to Relator's abdominal for purpose of dialysis), to prevent an infection on Relator's "exit site".  Relator was then instructed to go to her own pharmacy, and Davita's nurse advised Relator that "we will contact your pharmacy and order the antibiotic prescription".  Relator followed the Davita's nurse instruction accordingly.

Effective January 1, 2011, section 153b of the MIPPA requires that all ESRD-related drugs and biologicals be billed by the renal dialysis facility; **All drugs reported on the renal dialysis facility claim are considered included in the ESRD PPS. The list of drugs and biologicals for consolidated billing are designated as always ESRD-related and therefore not allowing separate payment to be made to ESRD facilities(See exhibit).;** If the renal dialysis facility needs to report a drug that was **furnished to an ESRD beneficiary that was not**

**related to the treatment of ESRD, they** must include the modifier AY to indicate the item or service is not for the treatment of ESRD. Chapter 8, section 50.2.5.

<u>Argument</u>

Here, Davita's conduct of filing and submission of a claim for pharmacy for 19+ gives liability of different theories of liability under FCA.

**First**, per regulation, the government only pays for services that are actually rendered( Section 1128A(a)(1) of the Social Security Act):

Because, Relator does not recognize justifiable charges for such pharmacy, and because such pharmacy was not rendered to Relator, Davita's filing of such claim is false.

Davita, knew or showed reckless disregard for the truth of the information(i.e., it did not render the drug for over 19+ and knew it was not entitled to right of reimbursement by the government, under section 1128(A(a)(1) of the Social Security Act for services it did not render and Davita knew it could not expect to receive a payment), however, Davita filed a claim for an item it did not provide, and this conduct by Davita was material, and Davita conducted itself in such manner to naturally induce the government to pay for a service, Davita did not render(without the government's knowledge), giving rise to FCA liability.

**Second**, assuming the service of such pharmacy for $19 was rendered, Davita by filing its claim and submission to Medicare, caused a fraudulent and false claim, because an antibiotic ointment to be used on Relator's exit site to prevent an infection, is considered an ESRD related condition to Relator's ESRD, and under ESRD PPS as of Jan. 1, 2011, is bundled in the base rate as one single payment, and Davita, knew through its own acknowledgment of its article exhibit 1, which states that all related items to dialysis are bundled. However, Davita showed reckless disregard that it could not unbundle such drug and expect to be reimbursed by the government.

Davita's filing a claim and its submission was material and was to naturally induce the government to pay for such item (without government's knowledge), giving rise to FCA liability.

**Third**, per regulation, Davita is responsible to provide all necessary drugs, items and services to the ESRD patient if related to the treatment of ESRD, and Davita must not refer its responsivity out to another pharmacy, Davita does not have an arrangement with and accepts financial responsibility.

**Rational**: **is to prevent duplicate billing and payment by Medicare(once to Davita in the base rate, and another time to pharmacy or**

**other entities Davita illegally refers patients to and  to avoid its responsibility and to maximize its profit,**

However, Relator was instructed, manipulated into believing that she had to apply the antibiotic ointment on at least a daily basis, and further instructed the Relator  to go to her own pharmacy and pick up the prescription called in by Davita(i.e., an antibiotic ointment ), this conduct by Davita results in Davita causing a false claims, because the government, accounts for items related to the treatment of ESRD condition such as the antibiotic ointment, and since the government pays for that in the base rate, and bundles it as of Jan. 1, 2011 under ESRD PPS, to pay another pharmacy, is duplicate payment by the government(one to pay Davita, another time to pay another pharmacy for the same medication, the government has already accounted for).

Although, $22.10  per month may not be much but its aggregate cost to government is millions of dollars considering the volume of Davita's patients of at least 173,000.

$22.10 x 173,000 Davita's patients in 2014 x 12 calendar month=$45,87600.00 of damages that the government has to pay to Davita for an unbundled false claims and another $45,87600.00 per year to other pharmacies that

Davita in violation of the regulation(as stated herein this Complaint)directs its patients to receive such a drug(antibiotic ointment) from.

Davita unbundled bundled items and filed claims for payment it was not entitled to

ESRD Prospective Payment System (ESRD PPS) – Section 153(b) of Pub. L. 110-275, the Medicare Improvements for Patients and Providers Act of 2008 (MIPPA) amended section 1881(b) of the Social Security Act to require the implementation of an ESRD bundled payment system effective January 1, 2011**. Under MIPPA, the ESRD PPS replaced the previous basic case-mix adjusted composite payment system and the methodologies for the reimbursement of separately billable outpatient ESRD-related items and services**. The ESRD PPS provides a case-mix adjusted single payment to ESRD facilities for renal dialysis services provided in an ESRD facility or in a beneficiary's home.

Renal dialysis services are all items and services used to furnish outpatient maintenance dialysis in the ESRD facility or in a patient's home.

Renal dialysis services include but are not limited to: All items and services included under the composite rate as of December 31, 2010;

Epogen, Erythropoiesis stimulating agents (ESAs) and their oral or other forms of administration that are for renal dialysis services; Injectable drugs and biologicals and their oral or other forms of administration that are for renal dialysis services; Oral or other forms of non-injectable drugs and biologicals that are renal dialysis services; Diagnostic laboratory tests that are renal dialysis services; Home and self-dialysis training; and All supplies, equipment, and support services necessary for the effective performance of a patient's dialysis furnished in the ESRD facility or in a patient's home.

Effective January 1, 2011, section 153b of the MIPPA requires that all ESRD-related drugs and biologicals be billed by the renal dialysis facility; **All drugs reported on the renal dialysis facility claim are considered included in the ESRD PPS. The list of drugs and biologicals for consolidated billing are designated as always ESRD-related and therefore not allowing separate payment to be made to ESRD facilities(See exhibit).**

Davita routinely and in a scheme in violation of the regulation, ESRD PPS, unbundled bundled drugs, biologicals, training, support, supplies, that were related to the treatment of Relator's ESRD to increase its revenue.

In addition, the Relator contacted Medicare as early as June 2014 or earlier and reported Davita's fraudulent billing for Iron Sucrose injections and possible other claims.  As a result of Relator's report, the charges and claims for the Iron were canceled and payment were denied and had to be returned to the government.  Davita could not assert a claim for voluntary disclosure and mistake for over payment, because Davita's act was not voluntary and was not within the 60 days of filing its claim, had Relator not reported Davita's fraudulent billing to Medicare, Davita would have received thousands of dollars for Iron injection and unbundled items and services in false claims funds. The following examples are some of Davita's routine illegal unbundling, filing and submission of false claims to the government:

Unbundled "Iron" Injection and Filed a Claim for Increase in Revenue

Iron Sucrose injection is used to treat Iron deficiencies anemia in people with kidney disease.

As Exhibit indicates Davita filed a claim for Iron Sucrose injection for the amount of over $3000 and submitted it to Medicare for approval and payment.

The filing and submission of Iron injection was false because Iron injection is a bundled item/drug under ESRD PPS, effective Jan. 1, 2011, and is considered as a drug related to the treatment of ESRD.

Per regulation stated above, the bundled items, drugs, services and treatments are included in the base rate and the government accounts for it.

Davita knew it was not entitled to receive reimbursement for such bundled item, and Davita knew since it could not expect a payment filing and submitting such a claim would be false, if filed and submitted to the government for payment or approval.

Davita's knowledge is evident by its article, Exhibit "1" which states in pertinent parts: "On July 26, 2010, CMS released the final rules for the prospective payment of dialysis (the "bundle"), which will take effect on January 1, 2011. These rules are final and not subject to judicial or other review", "It is important to note that there are areas where the rules are 'black and white' and precisely define the implementation of the bundle", "How much is the bundled payment and what's included in it? CMS used

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 134

Medicare payments made in 2007 to establish the bundled payment amount", **"Iron sucrose $4.68".**

Despite such knowledge, Davita exercised reckless disregard for such information, and submitted and filed several claims with Medicare for payment ranging from over $2,000 to over $3,000 an Iron injection shot. Davita's conduct was to increase its revenue and to naturally induce the government to pay or approve such bundled injectable drugs.

Although, Relator contacted Medicare and insisted that Davita's charges for the Iron were fraudulent, and as a result of Relator's protest of Iron charges, Davita's claims for Iron was canceled and denied, because Davita filed and submitted its claims for Iron injection, also altered and exaggerated the quantity of the Iron used, its submission of such claims still gives rise under FCA.

==Unbundled drugs such as "Calcitriol" and Filed a Claim for Increase in Revenue==

Calcitriol, is a prescription drug and may be used to prevent and to treat low level calcium in the blood of patients whose kidney and parathyroid does not function well.

ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 135

Calcitriol, is one of the many drugs that is included in the ESRD PPS as a bundle drug in the base rate per dialysis treatment, per regulation under ESRD PPS, effective Jan. 1, 2011.(See Exhibit).

Although, Davita and Davita RX had knowledge that such Calcitriol was bundled under the ESRD PPS as of Jan. 1, 2011, and Davita could not unbundle the Calcitriol and file a claim and submit it to Medicare Part D for payment or approval, however, Davita did in fact exercised reckless disregard for such knowledge and filed several claims(from March 2014 through April 2014, See Exhibit  ) for Calcitriol with Medicare Part D and other government organization "C".

Davita's knowledge is evident by its article, Exhibit "1"  which states in pertinent parts: "On July 26, 2010, CMS released the final rules for the prospective payment of dialysis (the "bundle"), which will take effect on January 1, 2011.  These rules are final and not subject to judicial or other review", "It is important to note that there are areas where the rules are 'black and white' and precisely define the implementation of the bundle", "How much is the bundled payment and what's included in it? CMS used

Medicare payments made in 2007 to establish the bundled payment amount**"," Part D , Oral Calcitriol $0.12"**

The submission of such claims for a bundled item were material and naturally induced the government to pay for an item otherwise would not have paid for.

      This conduct by Davita gave rise to liability under FCA, for filing and submitting a false claim, for a drug already accounted for by the government as a bundled item in the base rate, Davita knew that it was not entitled to receive a reimbursement for such bundled drug, and knew it could not expect any payment for such bundled drug, yet, Davita exercised such reckless disregard for its knowledge and submitted claims to Medicare for payment, for several false claims.

Unbundled drugs such as "Vancomycin" and Filed a Claim for Increase in Revenue

<u>Supporting Fact:</u>

Relator on or about March 22, 14, while practicing her dialysis training at her residence, accidently touched the tip of her catheter and called Davita

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 137

and Relator was instructed by Davita's nurses, to rush to the clinic for

administration of antibiotic.

Vancomycin injection is an antibiotic to treat intestinal bacteria.

Argument:

Vancomycin, is one of the many drugs that is included in the ESRD PPS as

a bundle drug in the base rate per dialysis treatment, per regulation under

ESRD PPS, effective Jan. 1, 2011.(See Exhibit).

Although, Davita and Davita RX had knowledge that such

Calcitriol was bundled under the ESRD PPS as of Jan. 1, 2011, and Davita

could not unbundle the Vancomycin as a separate item and file a claim and

submit it to Medicare for payment and approval however, Davita, Davita RX

and Dr. Rastogi, Davita's staff  did in fact exercised reckless disregard for

such knowledge and filed several claims for Vancomycin injections for over

inflated prices of $300.

Davita's knowledge is evident by its article, Exhibit "1"  which states in

pertinent parts: "On July 26, 2010, CMS released the final rules for the

prospective payment of dialysis (the "bundle"), which will take effect on

January 1, 2011.  These rules are final and not subject to judicial or other

review", "It is important to note that there are areas where the rules are 'black and white' and precisely define the implementation of the bundle", "How much is the bundled payment and what's included in it? CMS used Medicare payments made in 2007 to establish the bundled payment amount**," Vancomycin $0.09"**.

The submission of such claims for a bundled item were material and naturally induced the government to pay for an item otherwise would not have paid for.

This conduct by Davita gave rise to liability under FCA, for filing and submitting a false claim, for a drug already accounted for by the government as a bundled item in the base rate, Davita knew that it was not entitled to receive a reimbursement for such bundled drug, and knew it could not expect any payment for such bundled drug, yet, Davita exercised such reckless disregard for its knowledge and submitted claims to Medicare for payment, for several false claims.

Unbundled "Laboratory Services" and Filed a Claim for Increase in Revenue

Supporting Facts:

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 139

As exhibits 8 indicates, Davita filed and submitted claims for bundled laboratory services included in the bundled ESRD PPS as of Jan. 1, 2011. Davita billed for such bundled laboratory services and/or caused in violation of the regulation (as stated herein this Complaint) to go to another laboratory for services Davita was responsible to provide, from February 2014 through October 2014 (see exhibit 8) such as (but not limited to) Ferritin code 82728, iron level code 83540, iron binding capacity 83550, parathormone (parathyroid hormone) level 83970, Magnesium level 83735, bacterial culture 87070, body fluid cell count 89051, vitamin D, at a very high and inflated prices (See exhibit 8 and compare with outside laboratory {i.e., Laboratory Medicine Consultant}).

Argument:

  a. Davita knew it could not unbundle the laboratory services and file claims and submit them to Medicare for payment or approval.

  b. Davita knew it could not artificially and highly inflate the prices and file claims and submit them to Medicare for payment or approval.

c. Davita knew it did not qualify under any exception(i.e. an outlier as discussed herein this Complaint) and it knew, it could not report such laboratory items to receive and outlier adjustment.

d. Davita knew per regulation(as discussed herein this Complaint), it could not direct the relator to seek out laboratory results with other laboratories, because, Davita knew the Relator was under Davita's care and therefore, Davita's responsibility to provide laboratory services for Relator's routine and related ESRD laboratory work and results.

e. Davita knew per regulation(as discussed herein this Complaint) it could not cause the government to pay for duplicate laboratory work, once to Davita under the bundle and once to UCLA or other laboratory Davita directed the Relator to go to.

Davita's knowledge is evident by its article, Exhibit "1" which states in pertinent parts: "On July 26, 2010, CMS released the final rules for the prospective payment of dialysis (the "bundle"), which will take effect on January 1, 2011. These rules are final and not subject to judicial or other review", "It is important to note that there are areas where the rules are

'black and white' and precisely define the implementation of the bundle",

"How much is the bundled payment and what's included in it? CMS used

Medicare payments made in 2007 to establish the bundled payment

amount**"," Laboratory tests $8.46"**.

Davita in its article further states and acknowledges that

"Laboratory Tests Included in the Bundle Serum albumin Erythropoietin

Transferrin Hep b core antibody, Igm Aluminum Ferritin Urea nitrogen Hep

b surface antibody Calcium Blood folic acid serum Urine/urea-n Blood

culture for bacteria Calcium, Ionized Iron Urea-N clearance Culture,

bacteria, other Blood carbon dioxide Iron binding Hematocrit Culture

bacteria aerobic, other Carnitine Magnesium Hemoglobin Culture bacteria

anaerobic Blood chloride Parathyroid hormone Automated CBC w and w/o

diff WBC Culture bacteria, except blood Creatinine Alkaline phosphatase

Automated rbc count Culture anaerobe ident, each Urine creatinine

Phosphorus Manual reticulocyte count Culture aerobic identify Creatinine

clearance Serum potassium Automated reticulocyte count Culture screen

only Vitamin B-12 Prealbumin Reticyte/hgb concentrate Hepatitis b surface

ag, eia Vitamin d, 25 hydroxy Protein, serum Automated leukocyte count

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 142

CBC/diff wbc w/o platelet Vit d 1, 25-dihydroxy Serum sodium Hep b core antibody, total CBC without platelet".

By unbundling and filing claims and submitting them to Medicare for payment, Davita filed false claims.

Davita filed claims and unbundled those laboratory services (whether rendered or not), to raise its revenue while Davita knew it could not receive a payment form the government and was not entitled to a right to reimbursement per regulation.

Furthermore, Davita knew through its own acknowledgment (Exhibit 1  ) that the government only pays a certain amount for the drug "Routine Laboratory Services Related to The Treatment of ESRD", yet filed a claim at a very high and inflated price, that Davita knew was not entitled to and could not expect a payment  for , but filed it for the purpose of receiving such funds and by doing so Davita submitted a false claims under FCA.

Davita also gained its knowledge of regulation, through, signing form 855 B enrolment agreement to adhere to laws and regulations of CMS.

However, Davita disregarded such knowledge and through its conduct (falsifying statements and records) that were material to naturally

induce government to make such payment or approval, Davita caused a false claims to be filed and submitted.

Davita's conduct gave rise to liability under FCA and other laws as stated herein this complaint.

Unbundled Drugs such as Phospate binders Renvela and Velphoro for Increase in Revenue

Supporting Facts:

Davita through Davita RX supplied Relator with phosphate binders such as Renvela and Velphoro, for the period from March 2014 through February 2014.  In addition, due to the inability of beneficiaries with kidney disease to monitor and lower Parathyroid hormone and excess phosphate that can cause risk of harm to patients, per regulation, the government considers such drugs as medically necessary in treating and a drug related to the treatment of ESRD.

Certain drugs such as Sensipar, Renvella and other forms of oral drugs only per regulation were **an exception to the bundled program under ESRD PPS, however, in Calendar year 2010, the government gave notice that such drugs would be bundled as of Jan. 1, 2014.**

Argument:

Davita, Davita Rx, Dr. Rastogi, and Davita's staff filed false several false claims under the follwoig theories:

2. **Sensipar** is indicated **for** the treatment of secondary hyperparathyroidism (HPT) in adult patients with chronic kidney disease (CKD) on dialysis.

   a. Although, as of Jan. 1, 2014, the government included the drug Sensipar in the bundled base rate under ESRD PPS, and accounted for such drug in the base rate, however, this important and medically necessary drug, was not provided to Relator and caused harm and risk to the Relator(i.e. elevated Hyperparathyroidism).

   b. When the government assigns a bundled base rate factors in all the medications necessary related in treatment of the beneficiary such as the Relator and the government expects that such services actually are provided to the beneficiary for claims filed and/or costs reports filed with the government and/or any other supporting documents.

c. Davita knew as acknowledged through its own article, "Exhibit 1", that Sensipar would be included as a bundled item as of Jan. 1, 2014, which indicated an implied expectation by the government to provide for such item that is accounted for.

d. However, by failing to provide such medical necessary drug to Relator, Davita to maximize its profit, did not disclose to the government that such drug was not provided to Relator, and by concealing such material fact, naturally inducing the government to think it was not entitled to reimbursement for such item that it included in the base rate, and to also falsely make an impression on the government that it was providing a quality of care to Relator which it was not(because it did not provide the reasonable and medically necessary care), and further deceiving the government into believing that Davita rendered its care for Relator and beneficiaries in compliance with 42 CFR part 494, a precondition to payment by government.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 146

e. Davita's conduct gives rise to FCA liability under Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly – not to get money from the government, but to avoid having to pay money to the government.

f. Such false pretense and misrepresentation also gives rise to liability under ***

In addition, to Davita's liability under FCA.

3. **Renvela** is a prescription medication used to lower phosphorus levels in people with kidney disease on dialysis. Renvela belongs to a group of drugs called phosphate binders, which help the body get rid of phosphorus

- Davita's knowledge(i.e., Davita knew that as of Jan. 1, 2014, oral only drugs such as phosphate binders {Renvela, velphoro and other generic names for phosphate binders} were included in the bundled base rate under the ESRD PPS) and Davita also knew that it could not file a claim and submit them to Medicare Part D and other government organization C, for payment for  for the phosphate binders Renvela and velphoro , because Davita knew it could not file such claims and its knowledge is acknowledged through Davita's

article(Exhibit 1) that states "Aren't oral drugs, like phosphate binders and Sensipar, included in the bundle? The only oral drugs included in the bundle in 2011 are oral versions of activated Vitamin D and Levocarnitine (see Part D in Table 1)", " However, CMS clearly stated that phosphate binders, Sensipar and other ESRD medications will be added to the bundle on January 1, 2014", "Final rules on oral drugs will be issued in 2013.", Davita in its article further states:

 "There is an important caveat regarding oral medications.  CMS stated: "However, to the extent that any cardiac drug or biological (including anti-hypertensive drugs and biologicals) are furnished by an ESRD facility for ESRD-related conditions, the drug or biological would be considered a renal dialysis service and separate payment will not be made.  P. 117".

Having this knowledge, Davita knowing it was not entitled to file a claim and receive a reimbursement from Medicare, never the less filed and summited such claim to Medicare Part D(See exhibit 7) and by doing so Davita's conduct resulted in submission of several false claims from March 2014 through at least Dec. 31, 2014 for thousands of dollars of false claims money, that gives Daivta's conduct liability under FCA., as Davita's conduct

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 148

was material and Davita's conduct naturally induced the government to pay for such claims, gave liability to Davita under FCA.

- The same argument is applied to unbundling Calcitriol (as evidenced by exhibit 7)and filing false claims and submitting them to Medicare Part D and other organization C for payment or approval, gives rise to liability under FCA.

Davita's knowledge is evident by its article, Exhibit "1"  which states in pertinent parts: "On July 26, 2010, CMS released the final rules for the prospective payment of dialysis (the "bundle"), which will take effect on January 1, 2011.  These rules are final and not subject to judicial or other review", "It is important to note that there are areas where the rules are 'black and white' and precisely define the implementation of the bundle", "How much is the bundled payment and what's included in it? CMS used Medicare payments made in 2007 to establish the bundled payment amount"," Aren't oral drugs, like phosphate binders and Sensipar, included in the bundle? The only oral drugs included in the bundle in 2011 are oral versions of activated Vitamin D and Levocarnitine (see Part D in Table 1). However, CMS clearly stated that phosphate binders, Sensipar and other

ESRD medications will be added to the bundle on January 1, 2014. Final rules on oral drugs will be issued in 2013.

Davita in its article further states: "There is an important caveat regarding oral medications. CMS stated: "However, to the extent that any cardiac drug or biological (including anti-hypertensive drugs and biologicals) are furnished by an ESRD facility for ESRD-related conditions, the drug or biological would be considered a renal dialysis service and separate payment will not be made. P. 117 "

Furthermore, Davita acknowledges that it expects for oral durgs such as Renvela or phospate binders to be included in 2014 and states in its article exhibit 1, "It will be necessary to itemize all medications administered in the dialysis facility on the Medicare claim form. A special modifier will then be used to indicate which orals and biologics were administered for non-ESRD conditions. CMS expects that dialysis units will use the time before 2014 to make arrangements for the eventual inclusion of oral medications in the bundle ".

Because Davita knew in 2010, that as of Jan. 1, 2014, the drug Renvela, Velphoro and phospate binders would be bundled in the base rate, Davita

disregarding such knowledge and filing claims and submitting them for Renvela and Velphoro was false, as Davita knew it did not have a right to reimbursement for such drugs, and it knew it could not expect any payment from Medicare and government, never the less, Davita disregarded such knowledge and filed claims for Renvela and velphoro and Davita's conduct was material and was to increase its revenue, and to naturally induce the government to pay for such bundled drug, that the government otherwise would not pay for.

Therefore, Davita's conduct gives rise to liability under FCA.

Unbundled "Training" and Filed a Claim for Increase in Revenue

Supporting Facts:

Relator per Dr. Rastogi's inducement had her surgery for a catheter that was placed in Relator's abdomen, in preparation of dialysis, on Jan. 7, 2014. Relator required support after surgery for her wound care and exit site (the place catheter is connected to the Relator's abdomen), as a result of support and wound care she was treated at Davita when Relator arrived on Jan. 10, 2014 to show Davita's nurse her" exit site". Davita then filed

claims from Jan 2014 through March 2014 for dialysis training and dialysis procedures.

Argument:

    a. Davita knew per regulation, it was not entitled to receive any monty for support after surgery, because per regulation, support after surgery is included in the operation cost Medicare paid UCLA for its services on Jan. 7, 2014.

    b. Davita knew per regulation, it could not label support as a training and file a claim on that basis because to do so would result in a false claims,].

    c. Davita knew per regulation, it could not unbundle the training and file a claim and submit it to Medicare for payment or approval.

    d. Davita also knew per regulation, the first 4 months from **thef start of dialysis(which Davita's record claim** Relator started her dialysis on Jan. 10, 2014) Davita could not file a claim and expect a payment.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 152

e.  Davita knew through interaction with Relator, its own

record and Relator's record that it was Davita's nurses

who conducted the Relator's training and not a physician,

as Davita falsely uses CPT code 90993 which represents

a physician rendered the training.

Davita's knowledge is evident by its article, Exhibit "1"  which states in

pertinent parts: "On July 26, 2010, CMS released the final rules for the

prospective payment of dialysis (the "bundle"), which will take effect on

January 1, 2011.  These rules are final and not subject to judicial or other

review", "It is important to note that there are areas where the rules are

'black and white' and precisely define the implementation of the bundle",

"How much is the bundled payment and what's included in it? CMS used

Medicare payments made in 2007 to establish the bundled payment

amount" The training must be administered by a Medicare-certified training

facility • Reimbursement will be $33.44 per training session"

Davita also acknowledges its knowledge by its  article (exhibit 1)  that

states: "Will I continue to receive payments for training services for home

dialysis? Yes, there will be a home training add-on adjustment.  For

facilities that opt in 100% to the bundled payment system, training services

will be covered as follows: • The training must be administered by a Medicare-certified training facility • Reimbursement will be $33.44 per training session • The $33.44 will be multiplied by the area wage adjuster, and this amount will be reduced by 3.1% for the transition offset • <u>No training services will be paid during the first 4 months of dialysis</u> • 15 training sessions will be reimbursed for PD, 25 for home HD and CCPD"

"For facilities that choose to Phase in, training sessions will continue to be reimbursed at the current rate ($12 for PD, $20 for home HD and CCPD) for the phase in portion of the bundle".

Because Davita knew it could not file a claim for training to receive a payment from Medicare or approval, Davita's such filing gives rise to liability under FCA.  Davita's conduct was material and was to naturally induce the government to pay or approve Davita's false claims which the government otherwise would not have paid such claims.

Unbundled "Iron" Injection and Filed a Claim for Increase in Revenue

<u>Supporting Facts</u>

Relator was manipulated by Davita and Davita's staff(including Dr. Rastogi) that relator required Iron Sucrose injections beyond what would be

medically necessary, from March 2014 through Sept. 2014. Relator, was

warned and advised by a physician to refrain from allowing Davita to

administer such Iron injections and Relator was told that because she did

not require such iron injections, it would be harmful to her health if she was

given iron injections.

Argument

Davita knew that:

    a. administrating Iron Sucrose injections would not be medically

      necessary for the Relator,

      at least in August and Sept. of 2014, because through, Relator's

      laboratory results Davita knew that Relator's ferritin(blood index

      for iron level) was high and Relator's Iron and Iron binding

      capacity was at a normal level (see exhibit 6l, and it did not

      require Iron injections.

      Because Davita  knew that the administration of iron injection was

      not medically necessary, and because Davita knew that per

      regulation(as stated here in this Complaint), Medicare only pays

      for medically necessary items and services(i.e., those services

that are reasonable in treating the condition), and because Davita knew it did not have a right to be reimbursed for such iron injection based on medical necessity, and it could not expect a payment, Davita knew it could not file a claim and submit it to Medicare for payment or approval. However, to raise its revenue, Davita submitted such claims and its conduct was material in naturally inducing the government to pay for such items that the government would otherwise not pay for.

Davita through, CMS protocols and regulations its own protocol(Exhibit6 ) s, and the Relator's laboratory results had knowledge that it was not medically necessary to administer the Iron injection to the Relator, however, at the risk of harm and abuse to Relator and at a cost to the government to increase  Davita's revenue, Davita tricked, and manipulated the Relator and gave her Iron Sucrose injections.

Furthermore, Davita knew through its own acknowledgment(Exhibit 1 ) that the government only pays a certain amount for the drug "iron", yet filed a claim at a very high and inflated price, that Davita knew was not entitled to and could not expect a payment  for , but filed it for the purpose of receiving

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 156

such funds and by doing so Davita submitted a false claims under FCA, for Davit's increased revenue.

Davita's conduct gave rise to liability under FCA.

<mark>Unbundled "After Srugery Support" and Filed a Claim for Increase in Revenue</mark>

Furthermore, Davita knew through CMS regulation(See exhibit 3) that the support after surgery is bundled and covered under the physician's fee schedule and operating cost, government only pays for a the operative cost that includes the wound and support care. Despite this knowledge and regulation, Davita decided to show reckless disregard for the information and file and submit a claim that was bundled as operative support and purposeful mislabel it as "training". Davita did this to increase its revenue, it new it could not expect any reimbursement from Medicare for support for wound care after surgery. However, despite such a knowledge filed and submitted a claim and by doing so resulted a false claims to be filed and submitted, giving rise to its liability under FCA.

Furthermore, Davita knew through its own acknowledgment(Exhibit  ) that the government only pays a certain amount for the drug "After Surgery

Support for Wound and Exit Site Care", yet filed a claim at a very high and inflated price, that Davita knew was not entitled to and could not expect a payment for , but filed it for the purpose of receiving such funds and by doing so Davita submitted a false claims under FCA.

Examples of Davita's over inflated prices:

2. Davita and Davita's Rx False Claims for an outrageous and highly inflated price for Calcitriol

- CMS per regulation(as stated herein this Complaint), in consideration that it costs dialysis clinics such as Davita to provide drugs that are related to the condition of ESRD, bundles such drugs(i.e., here Calcitriol) and accounts for in the base rate(cost of drug portion) for each dialysis treatment the beneficiary receives. For example, for Calcitriol Medicare pays for in the bundle $0.12. However, despite this regulation and bundle program effective Jan. 1, 2011, Davita and Davita RX, unbundle Calcitriol and file claims and submit them to Medicare Part D and other government organization C for payment for a much higher and inflated price as indicated by Exhibit having

knowledge that Davita and Davita RX are not entitled to receive a reimbursement from Medicare Part D and other government organization C, and having full knowledge that they could not expect such payment they are not entitled to receive, never the less, Davita and Davita RX file those claims and submit them to Medicare, for payment. This conduct by Davita and Davita RX is material in naturally inducing the government to pay for such claims, and such conduct gives rise to Davita and Davita's RX liability under FCA.

- Furthermore, Davita's conduct of the false claims, although, as to the Relator the damages may not be great, however, as an aggregated amount, for Davita's 173,000 patients, makes millions of dollars in damages and cost to the government without the government's knowledge.

   2.      Davita and Davita's Rx False Claims for an outrageous and highly inflated price for Renvela and Velphoro (phosphate binders)

   CMS per regulation, in consideration of saving cost to the government's trust funds, has applied a ceiling price for those drugs, and biologicals that are paid through Medicare Part D, and

in consideration of the savings the OIG has evaluated the prices and pays for drugs based on Average Manufacturing Cost and National Drug Pricing and no longer finds the Average Price Sales and Average Wholesale Prices, as a cost incentive methods.

However, Davita and Davita RX, disregarded this regulation and filed and submitted claims to Medicare Part D and other government organization C, for payment and reimbursement of highly inflated prices, as indicated by Exhibit

Davita and Davita RX's conduct is costing the government millions of dollars every month, phosphate binders are among those drugs necessary to prevent high phosphors in ESRD beneficiaries' wholes kidneys does not illuminate excess phosphors.

In 2014, Davita had about 173,000 patients(per Davita's 2014 10K) and the number has since grown.

The aggregated cost to the government for this medication is 173,000 patients x 12 months x

The amount Davita RX submits to Medicare and receives a payment is

*****Add all the medications and the prices here as inflated=

## Davita's Submission of False Claims Based on Lack of Medical Necessity

Administration of Iron, and falsifying the administration of Epogen, Renvela, water pill,   under these circumstances was contrary to package labeling instructions, was potentially harmful to patients, was without medical necessity or patient need, and hence constituted false claims.

occurred as part of a scheme to increase revenue.  The  billings constituted false claims because they were submitted with a pattern of disregard to

medical necessity or patient need, contrary to package labeling instructions, CMS regulations, and in such amounts, as could be potentially harmful to patients.

Medical Records of DaVita's Realtor's record  Confirm that DaVita Administered Epogen with reckless Disregard for FDA Labels and CMS Guidelines

Relator was given a document called "Patients' Plan of Care"(required by Medicare), by Davita's Social Worker, Defendant Ann Hopp, Defendant Ann Hopp, knew that the Relator never received any Epogen treatment.

In trying to acquire patient's signature, Davita and its staff often manipulated the patients signature by making statements such as "sign it", "this is a requirement for Medicare in order for us to get paid", "Medicare requires this", "Medicare wants us to do it this way", and they make an impression on the patient as they did with the Relator, if the patient does not cooperates Medicare will cut off benefits, and/or Davita would terminate Relator's treatment.

reviewed for Epogen, and Iron protocols,  in order to determine whether DaVita complies with

CMS guidelines and the FDA label.  ****say what the protocols are

For each of the Medications  referenced above, CMS guidelines and FDA label

indications dictate that Epogen administration should have been reduced or held because

the target hematocrit level of 36% had been greatly exceeded. In each of these cases,

however, DaVita administered the Epogen without reductions. Without regard to medical

necessity or patient need, DaVita submitted false claims to the Federal Government for its

repeated treatment of these patients and received payment based on its fraudulent

charges

Davita's knowledge is evident that it is gained from the regulation and the proposed rule before the ESRD PPS became effective in Jan. 1, 2011. Exhibit   titled "CMS Final Rules for the Prospective Payment of Dialysis Tracy J. Mayne, Ph.D, Senior Director, DaVita Clinical Research" indicates that Davita knew the bundle regulation and what was expected of Davita, and whether Davita could expect any payment from the government if Davita decided to file a claim and bill for bundled items, that Davita knew it could not expect to be reimbursed and knew that it must not file a claim that was not eligible to receive a payment from.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 163

Furthermore, Davita knew through CMS regulation that the support after surgery is bundled and covered under the physician's fee schedule and operating cost, government only pays for a the operative cost that includes the wound and support care. Despite this knowledge and regulation, Davita decided to show reckless disregard for the information and file and submit a claim that was bundled as operative support and purposeful mislabel it as "training". Davita did this to increase its revenue, it new it could not expect any reimbursement from Medicare for support for wound care after surgery. However, despite such a knowledge filed and submitted a claim and by doing so resulted a false claims to be filed and submitted, giving rise to its liability under FCA.

==Miss use of Codes for purpose of increase in revenue==

Supporting Facts

Davita filed claims and submitted to Medicare for payment and approval, by mislabeling procedures, codes.

Argument

Davita knew that per regulation(as stated herein this Complaint ) and per regulation stated in exhibit 11, Davita knew it could not misuse codes and

had to use codes assigned and approved to it by CMS, and use such codes that truly reflect and represent and is rendered for services, items, drugs, services, procedures and treatment, that are medically necessary and reasonable to treat the condition, in such quantity and quality it is required to per regulation(coding, forms, ) and in conjunction with applicable hard copy and/or electronically forms assigned to Davita as an independent dialysis clinic as opposed to a hospital or a physician, however, Davita to increase its revenue and to conceal its scheme of filing and submission of false claims, Davita exercised reckless disregard for the knowledge of such regulations and filed and submitted false claims to the government.

For example,

      a.  Davita knew per regulation, as an independent dialysis clinic it was supposed to use HCPCS codes that are used in conjunction with form UB-04/1450 and not 1500 form that belongs to physicians to fill out and submit to Medicare for payment.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQU.}; COMMON LAW STATE CLAIMS - 165

b. Davita, knew that the Relator was conducting her own dialysis in her place of residence and she was not hospitalized for the period Davita used CPT code 90945 which represents Relator was managed and evaluated by a physician while in the hospital as an inpatient receiving dialysis and is faced to face with the physician while receiving her dialysis.

c. Davita knew that it was Davita's nurse who conducted the training and trained the Relator for home Peritoneal dialysis and Davita knew that it could not use CPT code 90993 which represents that a physician conducted the training of the Relator and the physician would attest on form 1500 and/or electronic equivalence, that such training was conducted by the physician himself.

d. Davita knew, that Dr. Rastogi, Davita's Medial Director and Relator's treating nephrologist, was per regulation receiving a monthly evaluation for Relator's home dialysis that was represented by CPT code 90966.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 166

e.  Davita also knew that per regulation, Medicare would not pay for two evaluation and management to the same physician treating the same Relator at the same time(See exhibit 11 Transmittal and CMS and Noridian's quarterly updates).

f.  Davita also knew that Dr. Rastogi received its monthly evaluation of the Relator's home dialysis through billing by UCLA/UC Regent.

g.  Davita knew it could not claim and justify that it provides a billing services for Dr. Rastogi and represent to Medicare the use of CPT code 90945 and 90993 was on behalf of Dr. Rastogi when in fact, Davita knew UCLA/UC Regent was billing for Dr. Rastogi using code 90966(for evaluation and management of Relator's home dialysis).

h.  Davita knew per regulation and agreement(as stated herein this Complaint) Davita agreed to receive the base rate and could not unbundle the items and report and file claims expecting a reimbursement from Medicare.

i. Davita knew per regulation and agreement(as stated herein this Complaint) Davita agreed to receive the base rate which was approximately $239.02 for Calendar year 2014, per dialysis treatment, and Davita knew it could not charge highly and artificially high amounts it was not entitled to receive from Medicare, to submit such high and inflated prices to Medicare for payment or approval.

j. Davita knew it could not use laboratory code "0861" which represents the Relator's blood was drawn while the Relator was admitted as an inpatient at UCLA, when Davita knew such fact were not true.

k. Davita knew that the composite payment methodology was replaced by ESRD Payment System methodology as of Jan. 1, 2011(as stated herein this Complaint) and Davita knew it could not longer submit claims to Medicare and expect payment under the old composite rate payment and methodology, however, as exhibit 8 indicates, Davita filed claims under "composite rate" and received payments.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 168

l.  Davita since 2007, knew that it was required per regulation and per line item, use codes, data that truly reflect the items and services provided by Davita on the line items.  Davita also knew that per line item accuracy requirement Davita was required to truthfully claim the dialysis modality the Relator was using to dialyze herself. For instance, Davita was required to accurately report that Relator started her dialysis on March 31, 2014 vs. inaccurate and false representation that Relator started her dialysis on Jan. 10, 2014, and the method was CCPD represented by code 0851 and refrain from use of codes such as 0841 CAPD Composite Rate and not report inaccurate coding to Medicare(as evidenced by exhibit 8).

m.  However, Davita to increase its profit conducted itself in a manner stated a through m(but not limited to such conduct) and misused the code and data the government heavily relies on its rule making, its policy making, in setting future base rates, in controlling the quality and measure of dialysis providers such as Davita's

performance, in calculating the cost per dialysis treatment, in setting aside grants and funds for research for dialysis, diseases related to dialysis and kidney, and funds for procuring kidneys.

Davita by doing a through m above, and to raise it revenue and receive more money from Medicare that it was not entitled to receive, Davita used codes that represent the Relator was treated as an inpatient. Based on information and belief Davita uses the hospitals Davita contracts with and/or in joint ventures with, to manipulate and make an impression to the government, that Relator alike has an acute condition and not an ESRD condition, is in the hospital and requires a higher pay for Davita. Davita by doing this conceals that Relator and Relator alike are ESRD patients in order to avoid receiving payment under the ESRD PPS, as evident by the exhibits in this Complaint, Davita likes to unbundles and receive highly inflated prices for each service it renders and for those services it does not render.

Despite such knowledge, Davita exercised reckless disregard for such information and filed claims using inaccurate codes, and procedures, and amounts in violation of the regulations.

Although Davita gained its knowledge through various regulations and methods (as discussed infra), never the less Davita exercised such disregard for the truth of such information, and to raise its revenue misused codes and data that did not truly reflect the amount, medical necessity, quantity, and quality of the services, items and treatments, Davita's conduct as such was material and was to naturally induce the government pay approve such items and services based on the codes, and data provided by Davita, which the government otherwise would not pay or approve of such items and services.

Davita's knowledge gained from CMS regulation, that had to adhere strictly to specific codes assigned to Davita as an independent dialysis clinic, as a routine scheme, and to raise its revenue and be able to bill for items, services, drugs, dialysis treatments that were otherwise bundled and paid a certain base rate under the ESRD PPS (effective Jan. 1, 2011), miss used, data, specific codes that were assigned to physicians, other items and services, separate category of payment, inpatient codes v. outpatient codes, and various modalities, all in order to confuse the government's computer system and induce payment for items, drugs, services, otherwise

knew was not entitled to be reimbursed, but never the less conducted itself

in order to raise revenue, manipulate policy, rule making, and data

For instance, Davita though Relator's record, interaction with Relator, and

statements made and records provided to Los Angeles Department of

Public Health(Exhibit  ), the Dept. responsible for Survey and Certificate

licensing of Davita and its staff knew that:

    a. Relator did not start maintenance dialysis treatment as of Jan. 10,

       2014, Davita also knew that it was not entitled to be reimbursement

       for dialysis treatment from Jan. 10- March 30, 2014, since Relator

       started her maintenance dialysis on March 31, 2016, when the

       dialysis machine CCPD was delivered to Relator's residence on

       March 31, 2016.

       Furthermore, Davita knew that because it was not entitled to receive

       any payment or reimbursement for the period stated above, it must

       not have filed a claim with Medicare, and Davita knew or showed

       reckless disregard for the truth of the information, and its conduct

       resulted in filing a false claim under FCA.

b. Because, Davita's nurse, trained the Relator for home Peritoneal dialysis, and because Davita knew through its own records and Relator patient's record, and statements made to the Los Angeles County of Health Dept, regarding training the Relator, and per regulation(as stated herein this Complaint) Davita knew that it could not and must not file claims and submit them to Medicare for payment that it was not entitled to receive, due to the fact as discussed herein this Complaint, and also acknowledged by Davita's article Exhibit "1", that states "Will I continue to receive payments for training services for home dialysis? Yes, there will be a home training add-on adjustment", "The training must be administered by a Medicare-certified training facility" , " No training services will be paid during the first 4 months of dialysis.

As stated in the regulation and acknowledged by Davita, the training must be administered by a Medicare-certified training facility(i.e., Davita), and Davita knew that it could not receive a payment for training during the first 4 months of dialysis(this is so because the training is factored into the base rate and is bundled under the ESRD PPS effective Jan. 1, 2011). However, to raise its revenue for

training it could not expect to receive a payment from Medicare, Davita manipulated and miss used code CPT code 90993(See Exhibit      for the month of January, February, and March 201) which represents that a physician and not Davita's nurse conducted the training of the Relator.

Since such information was false and Davita had knowledge of such information, and Davita knew it could not be entitled to reimbursement for the first 4 months of dialysis and according to Daviita's own records and documents supplied to Medicare, Relator started dialysis in Jan. 10, 2014, and Davita claimed such training was conducted for the month of January through March 2014, which is the first 4 months of dialysis, and it does not entitle Davita to any reimbursement for training, and since Davita knew this information, and used the CPT code to manipulate and distract the government thinking such training was conducted by a physician in his office vs. Davita, a dialysis clinic's nurse, was material and Davita misused such codes to manipulate and naturally induce the government into paying for training otherwise would not.

CPT code 90945

To use inpatient hospital laboratory codes to induce the government to pay for services the government otherwise would not and this is to confuse the governments computer system and manipulate, thinking the Relator was treated as an inpatient when she was not , her blood was drawn and examined while as an inpatient in the hospital when Relator was not, and to make the government think Relator was evaluated on a daily basis while being dialyzed by a physician which Relator was not, all these manipulations for Davita to increase its revenue, increase Dr. Rastogi's income, and revenue for UCLA, causing duplicate billing, otherwise Davita knew was not entitled to and government would not pay.

Manipulating the revenue code for different dialysis modalities such as CAPD for CCPD also to confuse the government and to further manipulate so Davita could charge for different modalities and training associated with different modalities.

c. Because CMS makes adjustment and concessions for the first 4 months of maintenance dialysis labeled as "onset" of dialysis, Davita to raise its revenue and take advantage of such adjustment, labeled

the start of dialysis/" onset" for Relator as of Jan. 110, 2014 instead of the truth which was March 31, 2014.

Davita, knew through regulation and its own acknowledgment (see Exhibit) that it would be entitled to a reimbursement for "onset" of dialysis and receive the most adjustment during the one time "onset" that covers the first 4 months of dialysis.

Having that knowledge and acting for raising an increase in revenue, Davita in a fraudulent scheme, back dated the "onset" of dialysis from the actual start of March 31, 2014 to Jan. 10, 2014.

C. Davita through regulation and its own acknowledgment (See Exhibit) titled under "How much is the bundled payment and what is included in it", does go into detail and describes how CMS has calculated a per treatment bases and an amount of $239.02 Approximately that includes the items and services listed on Exhibit , yet Davita having that knowledge not only unbundles the same items it knows it is not supposed to and file a claim, but also knows how much per treatment for those items and services that Davita is entitled to payment, yet files claims with Medicare for highly and over

inflated prices some times as much as high as a one thousand percent more. Not only Davita knows it is not entitled to file a claim at all due to the fact Davita is not entitled to a reimbursement for such bundled items and services, yet files those claims with highly inflated amount, to increase its revenue and naturally induce government to pay such amounts. And to further its scheme uses and manipulates various codes (i.e., revenue codes, value codes, modifiers, occurrence codes, condition codes, cpt codes, its knows it is not supposed to use) as a vehicle to induce the government to pay such false claims.

This fraudulent conduct is also evident from the inconsistent statements made by Davita to the Dept. of Public Health, and the Patient/Relator's record in possession of Davita.

In addition, a copy of such document is certified by the manager at Davita(Defendant Michel Bollock(and given to the Relator(see Exhibit 6)

d. Because CMS makes adjustment in the "base rate and outlier payment case mix adjustments" and factors such as 'onset of dialysis", "comorbid

conditions", weight of patients, BMI, blood pressure, are factored into the adjustment and higher in payment, Davita in a scheme manipulates those factors and falsifies those information to raise its revenue.

For instance, Relator did not have an "unspecified anemia", she may have been a bit anemic because of lack of nutrition and it is not uncommon for dialysis patients to be a bit anemic and anemia management is considered per regulation as a part of treating an ESRD condition. However, as Exhibit 6 will indicate, Dr. Rastogi and Davita diagnosed Relator as having 'unspecified anemia" trying to fit the Relator's characteristics as a "comorbid condition" in order to take advantage of the adjustment and increase in pay for the case mix for

e. Davita in order to take advantage of concessions for the "outlier"(as defined and stated herein this Complaint), to receive more money and raise it revenue Davita first 4 months of maintenance dialysis labeled as "onset" of dialysis, Davita to raise its revenue and take advantage of such adjustment, labeled the start of dialysis/" onset" for Relator as of Jan. 110, 2014 instead of the truth which was March 31, 2014.

Davita, knew through regulation and its own acknowledgment (see Exhibit) that it would be entitled to a reimbursement for "onset" of dialysis and receive the most adjustment during the one time "onset" that covers the first 4 months of dialysis.

Having that knowledge and acting for raising an increase in revenue, Davita in a fraudulent scheme, back dated the "onset" of dialysis from the actual start of March 31, 2014 to Jan. 10, 2014.

DaVita's —knowledge gained from Relator who notified Davita verbally and in writing(Exhibit) that Relator was unhappy about the quality of care Relator was receiving at Davita and informed Davita that she was going to go on strike and stop her dialysis(i.e., 3 days), in addition, because the nurse made a notation in the Relator/Patient's record in possession of Davita, Davita had the knowledge that because Relator had not conducted her dialysis for those 3 days, Davita, per CMS regulation, could not file a claim and expect a reimbursement that it was not entitled to. However, due to financial incentives, Davita to generate its revenue, disregarded such knowledge and filed and submitted a claim for the month of May 2014, for the said three days.

In fact, Davita, went as far as forging documents (i.e., a print out from Baxter the supplier co.) to show that Relator continuously conducted her dialysis including the 3 day she missed her dialysis. DaVita's careful tracking and falsifying the documents(i.e., Relator's record and the Baxter dialysis  print out to show continuity of the dialysis care and dialysis treatment combined with the financial incentives to falsify documents and file claims for services that are not rendered, indicates Davita's calculated and misuse of governments funds in order to maximize its profit and as it relates to filing false claims under FCA.

 The Federal Government did not foresee that outpatient dialysis facilities would attempt to submit claims for services not rendered.

Davita's Other Examples of Submission of False Claims to Medicare

(1) Purpose of Exaggerating the Quantity of Phosprose Binder for Increased Revenue

 General guidelines for Medication(i.e., Renvela)  labeled on the bottle is 270 pills(see exhibit 7).  Although, Davita RX supplied Relator with a bottle of Renvela consisting of 270 pills, Defendant Dr. Anjay Rastogi and Davita,

wrote the prescription (see Exhibit 7) for 300 pills, over utilizing the quantity of the phosphate binders in order to maximize Davita's revenue.

Because Davita, Davita RX and Dr. Rastogi and Davita's staff knew such information was false, their conduct was material and was to naturally induce payment or approval by the government otherwise would not have paid or approved.

Davita's knowledge is gained through regulation(as stated herein), the label on the bottle and its quantity, Relator's record and Davita's own record.

However, Davita showed a reckless disregard for such information and knowledge and filed and sumbited its claims to Medicare, as a formulary exception to maximize its profit, to take advantage of the outlier adjustment for a higher pay, and to artificially effect its cost report as a higher expense for drugs and dialysis treatment and also Relator believes to confuse and conceal the Medicare system to falsely pretend that in compliance with the bundle rule it is providing the phosphate binder to Relator when in actuality it files claims with Medicare Part D and receives a payment it should not receive.

Davita's conduct gives rise to liability under FCA.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 181

**(2) Purpose of Exaggerating the Quantity for Calcitrol for Increased Revenue**

Althoug, Dr. Rastogi prescribed the quantity of Calcitrol 3 times per week, totaling a monthly supply of 12, and instructed the Relator to take the medication, every other day(See Exhibit 7), and Davita RX supplied the Relator, with a monthly 12 pills in quantity of Calcitrol, however, in order to maximize the revenue for Davita, Dr. Rastogi, wrote the prescription for 100 pills in quantity for Calcitrol(See Exhibit it) and over utilized the quantity of the calcium in order to maximize Davita's revenue and profit.

Such condcut by Davita was material and was to raise revenue and naturally induce the government for the payment or approval of extra Calcitriol in the Medicare's formulary exception.

Davita knew per regulation(as stated herein) it could not misrepresent such facts, however, Davita exercised such reckless disregard for such knowledge and information, and falsified such documents and submitted them to Medicare, for payment or approval.

**(3) Purpose of Exaggerating the Quantity of Dialysis Treatment for Increased Revenue**

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 182

ESRD Prospective Payment System (ESRD PPS) – Section 153(b) of Pub. L. 110-275, the Medicare Improvements for Patients and Providers Act of 2008 (MIPPA) amended section 1881(b) of the Social Security Act to require the implementation of an ESRD bundled payment system effective January 1, 2011. Under MIPPA, the ESRD PPS replaced the previous basic case-mix adjusted composite payment system and the methodologies for the reimbursement of separately billable outpatient ESRD-related items and services. The ESRD PPS provides a case-mix adjusted single payment to ESRD facilities for renal dialysis services provided in an ESRD facility or in a beneficiary's home.

Renal dialysis services are all items and services used to furnish outpatient maintenance dialysis in the ESRD facility or in a patient's home.

**Per Treatment Basis**

Under the ESRD PPS payment is made on a per treatment basis. The ESRD PPS base rate is the per treatment unit of payment that applies to both adult and pediatric patients.  **ESRD facilities furnishing dialysis treatments in-facility and in a patient's home, regardless of**

**modality, are paid for up to 3 treatments per week, unless there is medical justification for more than 3 weekly treatments.  Meaning, ESRD facilities furnishing dialysis in-facility or in a patient's home, regardless of modality, are paid for a maximum of 13 treatments during a 30 day month and 14 treatments during a 31 day month unless there is medical justification for additional treatments.**

Although, Davita knew that per regulation effective Jan. 1, 2011, regardless of the type of dialysis Relator was dialyzing under, Davita was entitled to up to 3 treatments per week, however, as indicated by Exhibit 8  Davita for the periods from Feb. 2014 through Dec. 31, 2014 filed several hundreds of false claims for dialysis procedues, using CPT codes 90945, dislysis procedure including one evaluation for the amount of $2,033.00 per dialysis treatment for as many as 31 dialysis treatment per month when Davita knew it was only entitled per regulation(as stated herein) to file and submit claims for 12 dialysis treatment per month.

Davita's conduct was to increase its revenue.

Davita knew it was not entitled to be reimbursement for Relator's dialysis for more than 3 times per week, yet having that information, disregarded it

and filed claims and submitted them for reimbursement for funds it knew it was not entitled to receive.

Davita's claims and submission of for such excess dialysis services it was not entitled to receive a payment for were false. However, it filed those claims that were material and naturally I induced the government to pay such payments or approval of such services

Davita's acknowledgment of such regulation is evident by its article "Exhibit 1", which states: "What else do I need to know? The CMS final rules are 932 pages long, with many more details than can be covered in this brief synopsis. Other key issues include: 1. In center & home hemodialysis (peritoneal, nocturnal, etc.) will be reimbursed at the same rate", since Davita knew that per regulation, Medicare only pays for 3 dialysis treatment (hemodialysis equivalence) in its clinic per week, it also knew that the home Peritoneal dialysis Relator was dialyzing under, would also be reimbursed for the same quantity(up to 3 dialysis per week) and same rate as evidenced by Davita's own acknowledgment , "Exhibit 1".

Davita's conduct was material and it was made to naturally induce government to pay or approve such payments that the government would otherwise not pay or approve of.

Davita's conduct gives rise to FCA liability.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 185

**(4) Purpose of over utilizing drugs and causing abuse and waste**

Consistent with Sections 1833(e), 1842(a)(2)(B), and 1862(a)(1) of the Social Security Act, the Centers for Medicare & Medicaid Services (CMS) is required to protect the Medicare Trust Fund against inappropriate payments that pose the greatest risk to the Trust Fund and take corrective actions; Medical review is the collection of information and clinical review of medical records by Medicare Contractors to ensure **that payment is made only for services that meet all Medicare coverage, coding, and medical necessity requirements.**

While a patient at Davita in 2014, Relator witnessed waste and abuse of products and over utilization of drugs at the expense of the government and risk of harm to beneficiaries such as the Relator

For example:

**a.Dialysis Solutions Waste**

Davita's nurse(Defendant Prissy) had ordered supplies of dialysis solutions the Relator did not need and did not have a space for.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 186

When the Relator Complained, the Defendant(Prissy) advised the Relator to "waste them" and through them away.  This is contrary to government's policy as CMS is authorized to prevent waste and abuse and to protect the government's trust fund.

b.Iron Sucrose Waste

Relator witnessed Davita's nurse opened two vials of iron and only removed a little of the solution Relator that it needed to be mixed with the solution otherwise would be dangerous and  wasted the second bottle when there was no need.  Latter Relator learned that Davita to increase its revenue claimed that it had used more iron through an iron infusion which requires more iron(iron infusion is a bag of iron on an IV pool, that takes a long time to be administered into the patient's veins vs. iron push injection, a small syringe that is administered to the patient's vein in a few minutes and requires much less iron than the iron infusion).

In addition, as discussed herein this Complaint, Davita used and administered Iron that was not medically necessary, the Relator was told by a physician that her ferritin level was too high and her Iron was adequate

and Relator was further advised to not allow Davita inject her with more Iron and Relator was advised that it was dangerous to her health.

However, to increase its revenue, Davita routinely manipulated Relator and Relator alike to undergo Iron therapy, without regards to Relator's health and the abuse and risk of harm and without regard to the amount it cost the government.

c.Disinfectant Alcavis Waste

Alcavis a cleaning solution(disinfectant) that costs $25 but could reasonably be replaced by alcohol swabs that do the same disinfecting, reducing the need for Alcavis bottles, however, when Relator asked why she could not use alcohol swabs to disinfect her hands the Defendant, Davita's nurse, Prissy, said to Relator "we do not use alcohol", "we only recommend Alcavis", because you can catch an infection with alcohol. This sort of manipulation of patients were common by Davita, intimidating and frightening patients to do what Davita wanted.

Latter, Relator asked a physician regarding whether Alcohol swabs disinfect and after she learned that they did, she started using the alcohol

swabs to save the government money and to prevent risk of harm(i.e.,

allergy to Alcavis as a chemical)

Presently, and after Relator learned that Davita was misrepresenting facts

about alcohol as a disinfectant, Relator has been using alcohol swabs, and

has experienced that its use does prevent infections, and the cost to the

government is nominal compared to Alcavis.

d.Dialysis Solution Bag's Waste

Because the dialysis solutions were heavy and the Relator had difficulty

carrying them and because Relator's dislysis prescription did not require as

much sollution as the big dialysis bags offered and after the dialysis

treatment ended, every day, the Relator had to empty out the reminder,

Relator, Complained to Davita and asked for a smaller solution bags, and

Davita and its staff refused and misrepresented facts to Relator and told

her that the dialysis solutions did not come in smaller bags and quantity,

and Relator was advised to waste the solutions on a daily basis as

instructed.

The Relator, continued wasting, until she learned that Davita and its staff

had misrepresented the facts to Relator to artificially increase its cost of

supplies and therefore, cause adjustment and a higher pay in the base rate.

Davita's knowledge is gained by signing an express and implied agreement with Medicare to maintain its enrolment and condition of payments, in form 855B as applicable to Davita as a clinic, which states in its certification statment

"By signing, the supplier is attesting to having read the requirements and understanding them. By his/her signature(s), the authorized official(s) named below and the delegated official(s) named in Section 16 agree to adhere to the following requirements stated in this Certification Statement: 2. I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application form, may be punished by criminal, civil, or administrative penalties including, but not limited to, the denial or revocation of Medicare billing privileges, and/or the imposition of fines, civil damages, and/or imprisonment. 3. I agree to abide by the Medicare laws, regulations and

program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback **statute and the Stark law), and on the supplier's compliance with all** applicable conditions of participation in Medicare. 5. I agree that any existing or future overpayment made to the supplier by the Medicare program may be recouped by Medicare through the withholding of future payments. 6. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity

Form 855B(Exhibit 2) and(its electronic equivalence),  is a clinic provider or supplier enrollment and registration agreement with Medicare and express precondition terms for payment, and  dialysis clinics(i.e., Davita) and suppliers are required to sign and agree with its terms in order to maintain their enrolment with the government program(i.e., Medicare) and in order to

file a claim and receive a payment(an express and implied precondition to payment).

Davita's knowledge also is gained through, an express and implied agreement to the terms and laws stated in form 855B and/or electronic equivalence, which conditions the payment for services, that in part 3 of Section 14, "Certification Statement", Davita attests:  **"I agree to abide by** the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the **supplier's compliance with all applicable conditions of part**icipation in Medicare.

Furthermore, Davita in the form 855 B and/or electronic signed agreement also agreed and attested to in section 15, part 6 " I will not knowingly present or cause to be presented a false or fraudulent claim for

payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

Here, Davita knew that CMS per Sections 1833(e), 1842(a)(2)(B), and 1862(a)(1) of the Social Security Act,      had an  obligation to protect the governments trust funds and by mandating laws to prevent waste and abuse and items that are Medically and reasonably necessary to treat conditions, yet Davita and its staff knowing that per regulation, they were not allowed to waste and abuse the items, supplies and services they provided to Relator and other patients, yet, advised the Relator to waste dialysis solutions that knew it would cost the government, Davita opening two vials of Iron Sucrose and using just a little bit of each bottle and wasting the other one, also is considered waste and abuse, manipulating, intimidating, misrepresenting material facts to the Relator making her believe that alcohol swabs were not a viable alternative and advising only to use Alcavis a more expensive product, is exactly the type of conduct the government considers in its laws and regulations as abuse and waste.

Davita's conduct is considered waste and abuse of government's trust funds, because Davita by supplying bigger dialysis solution bags, when there were more reasonable and cheaper alternatives available, were

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 193

deliberately causing abuse and waste, and by reporting in its cost report to Medicare for its expenses in providing dialysis treatment, Davita artificially raising the price of dialysis. In addition, by encouraging waste and abuse, Davita could manipulate and file claims and submit them to Medicare for higher prices as it is evident by the exhibits when Davita's bill for dialysis is over $2,000 per treatment when in fact it has been stablished and agreed upon that Davita should receive about $239.02 per treatment. Dialysis solution bags were not available to increase its cost for a higher pay that resulted in waste and abuse of product and a greater cost to the government which is inconsistent with CMS responsibility to protect the government's trust fund.

In addition, Davita's conduct for opening two vials of Iron Sucrose when non was needed or only one needed, causes a waste and abuse and Davita did this so it could falsify and claim that it administered to the patient Iron infusion vs. Iron injection which varies greatly in quantity and cost.

Davita did this so it could file a claim for over $3000 to Medicare. Also Davita waste and abuse supplies, drugs, to increase its profit and take advantage of an outlier beyond the threshold amount. Furthermore, Davita knew through form 855 B and/or electronic equivalence that it had signed

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 194

and attested to not knowingly falsify information, here, Davita knew through

Relator's records and own records that Relator's prescription only required

certain amount of dialysis solutions that a smaller dialysis solution bags

would have provided, however, having that knowledge, Davita decided to

disregard it and misrepresent to the Relator that a smaller with Sections

1833(e), 1842(a)(2)(B), and 1862(a)(1) of the Social Security Act, the

Centers for Medicare & Medicaid Services (CMS) is required to protect the

Medicare Trust Fund against inappropriate payments that pose the greatest

risk to the Trust Fund and take corrective actions, however, Davita

exercised such reckless disregard for such knowledge and information, and

filed various files claims that also consisted of waste and abuse.

(5) Compliance to 42 CFR Part 494, a precondition to payment and

continued Medicare enrollment;

CMS through CFR 42 part 494, controls the quality of care for the dialysis

beneficiaries, and because CMS conditions the payment and continued

Medicare enrollment to dialysis providers such as Davita to full compliance

with the standards set in CFR 42 part 494, Davita has financial incentives

to falsely show its compliance with such standards.

There are several standards of care that is addressed by CFR 42 part 494 and set by CMS and Davita must adhere to all of its terms as a precondition to payment and Davita's continued enrollment.

Furthermore, CMS through CFR 42 part 494, controls the quality of care for the dialysis beneficiaries, and because CMS conditions the payment and continued Medicare enrollment to dialysis providers such as Davita to full compliance with the standards set in CFR 42 part 494, Davita has financial incentives to falsely show its compliance with such standards.

Because Davita had express knowledge and knew (an implied knowledge) that receiving payment and continued enrollment was preconditioned to satisfying the requirement stated in 42 CFR part 494, stated below and all other regulations stated herein, and because, Davita expressly agreed to be bound by form 855B or electronic equivalence(as stated herein and provided in exhibit) 2, and because Davita failed to adhere to the requirement of the 42 CFR part 494 and compliance thereof, and because Davita failed to adhere to the requirement of form 855B, maintaining enrollment agreement and condition of payment(exhibit 2) were all a precondition to payment, and Davita failed such conditions, Davita knew it did not have a right of reimbursement and payment or approval of services,

items drugs, treatments, and because Davita knew it could not expect any payment from the government for such failed express and implied conditions, Davita was not entitled to file a claim, submit it to Medicare and be entitled to payment.

Because Davita knew it had failed to Comply with many of the conditions(stated herein and below), and through, its knowledge of the Los Angeles Dept. of Health citing Davita for some of the fail conditions and violations, and through its own records, and through the Relator's record, Davita knew it must not file a claim to receive a reimbursement from Medicare.  However, Davita exercised reckless disregard for such knowledge and information, filed and submitted claims to Medicare for payment that it knew could not receive due to the failed conditions. Davita's conduct was material in naturally inducing the government to pay Davita for items, services, drugs, treatment, that the government otherwise would not pay for.

Furthermore, Davita certified the records as true when in fact they were not(as stated herein this Complaint).

Davita's conduct gives rise liability under FCA, for failing to comply with the following conditions as a precondition to payment:

**Davita violated 42 CFR part 494, Subpart C-Patient Care:**

- § 494.70 — Condition: Patients' rights.

- Davita violated Relator's Patients' rights by:

- 494.70 Condition: Patients' rights.

- (1) failing to Respect, dignity, and recognition of his or her individuality and personal needs, and sensitivity to his or her psychological needs and ability to cope with ESRD;

This condition was violated, the Relator Complained(as evident by letters sent to Davita, exhibit 6) that she was retaliated against, when Relator complained of fatigue, she was told in a demining way that she was the only patient who complained rather than trying to address what was causing **Relator's** tiredness.

When Relator who was being treated by her physician and the nurses, requested her

Privacy and asked the manager and a male administrator to **respect her privacy, Relator's reasonable request was not** addressed instead her privacy was intruded and despite several attempts made by Relator advising the manager (Defendant Michel Bollock) that her presence was giving Relator anxiety, Defendant **Michel Bollock, Davita's manger refused to respect Relator's** wishes and sat herself down and directed Dr. Rastogi, to induce **Relator to change its dialysis equipment to Davita's joint venture** company.

- (2) Receive all information in a way that he or she can understand;

  This condition was violated by Davita, Davita manipulated the Relator, concealed information from Relator, Misrepresented many facts to Relator, often rushed Relator to sign blank forms, or prefilled forms not giving the Relator to understand and/or exercise her rights.

- (3) Privacy and confidentiality in all aspects of treatment;

- **This was violated, Relator's file was given the an pharmaceutical** company, and Davita refused to disclose the identity of the sales

**person, also failed to protect Relator's HIPPA and confidential**

**records, further as mentioned above, Relator's request to** have

privacy while treated by her physician was refused by Defendant

Michel Bollock(the manager for Davita), when Relator requested

**for the dietician(Davita's employee), Defendant Monica to leave**

Relator alone, the dietician refused and followed Relator around

and harassed her causing palpitation of the heart and a trip to

UCLA ER and admission as a result of such stress, and at a cost

**to the government for such services. In addition, Davita's nurse**

**in violation of Relator's HiPPA and CMS regulation as stat**ed

herein, talked about the Relator to other dialysis facilities telling

them Relator was trouble and should be refused admission for

dialysis.

- (4) Privacy and confidentiality in personal medical records;

- This also was violated please refer to part 3 above, also Relator

  was not allowed to have access to her original file and view it.

  Furthermore, after several months of long delay when Davita

  **finally released some of the Relator's records, many of the**

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 200

records were falsified, altered and materially were misrepresented.

- (5) Be informed about and participate, if desired, in all aspects of his or her care, and be informed of the right to refuse treatment, to discontinue treatment, and to refuse to participate in experimental research;

   This also was violated, Relator was often manipulated and intimidated to give consent, to sign documents, to go along with **what Davita requested.  Without Relator's consent, she had** become subject of research.

- (7) Be informed about all treatment modalities and settings, including but not limited to, transplantation, home dialysis modalities (home hemodialysis, intermittent peritoneal dialysis, continuous ambulatory peritoneal dialysis, continuous cycling peritoneal dialysis),and in-facility hemodialysis. The patient has the right to receive resource information for dialysis modalities not offered by the facility, including information about alternative scheduling options for working patients;

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 201

- This was also violated, Relator was discouraged and facts were misrepresented to her by Defendant Ann Hopp who advised Relator not to put her name on the list for transplant and Relator was told registering was not a requirement, however, latter Relator learned that such representation by Defendant Ann Hopp, **Davita's social worker was not true and a material** misrepresentation.

- Further, when Relator initially applied to UCLA transplant team and had a volunteer donor who was willing to donate his kidney to Relator, UCLA transplant team and Dr. Rastogi made a lame **excuse and rejected Relator's candidacy in violation of** regulation(as stated herein this Complaint), instead Dr. Rastogi, **Davita's Medical Director who was placed at UCLA to refers** patients to Davita for dialysis, induced Relator by misrepresenting material facts to her and by manipulating her to **do dialysis at Davita.  Without Relator's knowledge and consen**t **Dr. Rastogi had faxed Relator's information to Davita on Jan. 9,** 2014.

- (8) Be informed of facility policies regarding patient care, including, but not limited to, isolation of patients;

- Violated, Davita did not adhere to CMS regulations and protocols, and has its own protocols as a sham and it does not adhere to its own protocols either

- (10) Be informed by the physician, nurse practitioner, clinical nurse specialist, or physician's assistant treating the patient for ESRD of his or her own medical status as documented in the patient's medical record, unless the medical record contains a documented contraindication;

- This was violated and the Relator was not informed

- (11) Be informed of services available in the facility and charges for services not covered under Medicare;

- Was violated and not informed

- (12) Receive the necessary services outlined in the patient plan of care described in § 494.90;

- Was violated and such services was not provided to Relator

(14) Be informed of the facility's internal grievance process;

This was violated, **Relator's concerns were not addressed** instead more material misrepresentation and more manipulations.

- (15) Be informed of external grievance mechanisms and processes, including how to contact the ESRD Network and the State survey agency;

- This was also violated and the Relator found out on her own, but because ESRD Network 18 and Los Angeles Dept. of Public **Health show bias in favor of Davita, Relator's concerns and other patients' concerns do not get addressed**

- (16) Be informed of his or her right to file internal grievances or external grievances or both without reprisal or denial of services; and

- This was violated, after Relator Complained of failure to provide **accommodations and the Davita's over charges to Medicare,** Davita retaliated and discharged Relator against the CMS regulation stated herein 42 CFR part 494, and abandoned Relator from care, and caused risk of harm to Relator(i.e., death)

- (17) Be informed that he or she may file internal or external grievances, personally, anonymously or through a representative of the patient's choosing.

   Violated and not informed.

- (b) Standard: Right to be informed regarding the facility's discharge and transfer policies. The patient has the right to –

- This was violated and CMS considers it as such a strong violation, please see Exhibit 4, Los Angeles, County of Dept. Of Health, citing Davita for such violation and other violations

- (1) Be informed of the facility's policies for transfer, routine or involuntary discharge, and discontinuation of services to patients; and

- This was violated, This was violated and CMS considers it as such a strong violation, please see Exhibit 4, Los Angeles, County of Dept. Of Health, citing Davita for such violation and other violations

- (2) Receive written notice 30 days in advance of an involuntary discharge, after the facility follows the involuntary discharge procedures described in § 494.180(f)(4). In the case of immediate

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 205

threats to the health and safety of others, an abbreviated discharge procedure may be allowed.

- This was violated, This was violated and CMS considers it as such a strong violation, please see Exhibit 4, Los Angeles, County of Dept. Of Health, citing Davita for such violation and other violations

- (c) Standard: Posting of rights. The dialysis facility must prominently display a copy of the patient's rights in the facility, including the current State agency and ESRD network mailing addresses and telephone complaint numbers, where it can be easily seen and read by patients.

- 

- § 494.80 — Condition: Patient assessment.

- This was violated, see please see Exhibit 4, Los Angeles, County of Dept. Of Health, citing Davita for such violation and other violations

- § 494.90 — Condition: Patient plan of care.

- This was violated, many of the information that Defendant Ann Hopp the Social worker(Davita's employee) induced Relator to sign were

false, Relator was manipulated to sign the Patient's plan of care, and told Relator she had to sign it "it is a Medicare requirement for us to get paid, sign it", this is in response noticing that Davita was claiming that Relator was receiving Epogen injections when such facts were not true and when she brought it to the attention of the social worker, Relator was ordered to sign it.  When Relator also noticed many of the goals stated in the patient's plan of care were checked marked as met and positive and contrary to true facts, Relator was told by Defendant Ann Hopp, to sign it anyways, because it was printed a few months before. Medicare pays for the salary of the social worker and expects her to advance and promote the interest of the Relator and Relator alike, however, in violation of the regulation, the Defendant Ann Hopp advances and advocates Davita's interests and fraudulent claims and documentation.

- § 494.100 — Condition: Care at home.

- § 494.100 Condition: Care at home.

- A dialysis facility that is certified to provide services to home patients must ensure through its interdisciplinary team, that home dialysis

services are at least equivalent to those provided to in-facility patients and meet all applicable conditions of this part.

- (a) Standard: Training. The interdisciplinary team must oversee training of the home dialysis patient, the designated caregiver, or self-dialysis patient before the initiation of home dialysis or self-dialysis (as defined in § 494.10) and when the home dialysis caregiver or home dialysis modality changes. The training must -

- (1) Be provided by a dialysis facility that is approved to provide home dialysis services;

- (2) Be conducted by a registered nurse who meets the requirements of § 494.140(b)(2); and

- This **was violated because per Defendant's own acknowledgment(Davita's nurse Prissy) she only had almost a** year of nursing experience while per regulation she was required to have 18 months of clinical experience.

- (3) Be conducted for each home dialysis patient and address the specific needs of the patient, in the following areas:

- (i) The nature and management of ESRD.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 208

- (ii) The full range of techniques associated with the treatment modality selected, including effective use of dialysis supplies and equipment in achieving and delivering the physician's prescription of Kt/V or URR, and effective administration of erythropoiesis-stimulating agent(s) (if prescribed) to achieve and maintain a target level hemoglobin or hematocrit as written in patient's plan of care.

- (iii) How to detect, report, and manage potential dialysis complications, including water treatment problems.

- (iv) Availability of support resources and how to access and use resources.

- Violated often support was refuesed

- (vi) How to handle medical and non-medical emergencies.

- Violated and was directed to go to UCLA ER for very thing

- (vii) Infection control precautions.

- Violated, at the risk of harm to Relator she was advised to put antibiotic on her exit site causing low resistance to repeated antibiotic application

- (viii) Proper waste storage and disposal procedures.

- Violated was told to waste things

- (b) Standard: Home dialysis monitoring. The dialysis facility must -

- (1) Document in the medical record that the patient, the caregiver, or both received and demonstrated adequate comprehension of the training;

- Violated please see exhibit 4, the Los Angeles, Dept. of Health Report and citing Davita for violations

- (2) Retrieve and review complete self-monitoring data and other information from self-care patients or their designated caregiver(s) at least every 2 months; and

- Violated no such review was conducted

- (3) Maintain this information in the patient's medical record.

- (c) Standard: Support services.

- (1) A home dialysis facility must furnish (either directly, under agreement, or by arrangement with another ESRD facility) home dialysis support services regardless of whether dialysis supplies are

provided by the dialysis facility or a durable medical equipment

company. Services include, but are not limited to, the following:

- Violated and refused to give support and refuse to make such arrangement with Baxter the supplier of dialysis solutions, who did not perform its obligation and caused a lot of anxiety to Relator in delivery of its services

- (i) Periodic monitoring of the patient's home adaptation, including visits to the patient's home by facility personnel in accordance with the patient's plan of care.

- Violated and refused to monitor and said we do not do home visits

- (ii) Coordination of the home patient's care by a member of the dialysis facility's interdisciplinary team.

- Violated, yet falsified records that such coordination took place

- (iii) Development and periodic review of the patient's individualized comprehensive plan of care that specifies the services necessary to address the patient's needs and meets the measurable and expected outcomes as specified in § 494.90 of this part.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 211

- Violated and failed please see exhibit 4, Los Angeles Dept of Public Health citing Davita for violations

- (iv) Patient consultation with members of the interdisciplinary team, as needed.

- Violated only manipulated patient into signing documents that were not true and/or services not medically necessary

- (vii) Identifying a plan and arranging for emergency back-up dialysis services when needed.

- Violated there was no such a plan

- (2) The dialysis facility must maintain a recordkeeping system that ensures continuity of care and patient privacy. This includes items and services furnished by durable medical equipment (DME) suppliers referred to in § 414.330(a)(2) of this chapter.

- Violated there was no continuity of care, only falsified documents to show such continuity of care, also please see see exhibit 4, Los Angeles Dept of Public Health citing Davita for violations

-

- 

- § 494.110 — Condition: Quality assessment and performance improvement.

- members of the interdisciplinary team. The program must reflect the complexity of the dialysis facility's organization and services (including those services provided under arrangement), and must focus on indicators related to improved health outcomes and the prevention and reduction of medical errors. The dialysis facility must maintain and demonstrate evidence of its quality improvement and performance improvement program for review by CMS.

- Violated, no such quality only a sham

- (a) **Standard: Program scope.**

- (1) The program must include, but not be limited to, an ongoing program that achieves measurable improvement in health outcomes and reduction of medical errors by using indicators or performance measures associated with improved health outcomes and with the identification and reduction of medical errors.

- Only a sham and violated

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 213

- (2) The dialysis facility must measure, analyze, and track quality indicators or other aspects of performance that the facility adopts or develops that reflect processes of care and facility operations. These performance components must influence or relate to the desired outcomes or be the outcomes themselves. The program must include, but not be limited to, the following:

- (i) Adequacy of dialysis.

- Violated this, by purposefully recording the amount of urine output produced by Relator, to show less of here kidney function.

- (ii) Nutritional status.

- **Violated, failed to address Relator's nutritional concerns,** dietician always told Relator she did not know she had to google, she was told Relator she did not have clinical experience and only had corporate experience, she also told Relator she did not have time, Davita only wanted the Dietician to come to Davita once a week, all of these information are in violation of CMS regulation and compliance with condition of payment.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729
ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW
STATE CLAIMS - 214

- (iii) Mineral metabolism and renal bone disease.

- **Violated this and did not address Relator's concern, and  did not** provide a medically necessary drug called Sensipar, that Medicare accounts for in the base rate.

- (iv) Anemia management.

- Violated this, gave too much iron injection to Relator against medical advice.

- (viii) Patient satisfaction and grievances.

- Violated this, for reasons stated herein this Complaint

- (ix) Infection control; with respect to this component the facility must -

- (A) Analyze and document the incidence of infection to identify trends and establish baseline information on infection incidence;

- (B) Develop recommendations and action plans to minimize infection transmission, promote immunization; and

- (C) Take actions to reduce future incidents.

- **Violated all of the above re infection control, Davita's staff who** was in close contact with Relator and had TB touched Relator

**and drew Relator's blood without wearing a mask or gloves,** creating an immediate risk of contamination to Relator. Davita and Dr. Rastogi knew of such TB infection in April 2014, however, concealed it from Relator until late Sept. 2014, and the Los Angeles, Dept. Of Public Health also in showing favoritism and bias in fa**vor of Davita, violated Relator's Hippa and defamed Relator by contacting Relator's primary physician's secretary and telling her that Relator had TB.  This conduct by the Dept.'s** employee is influenced by Davita and when the Relator **confronted the Dept.'s** employee and objected to her conduct and lack of following procedures, the employee said that she had friends at Davita, she likes Davita that is why she did not follow procedures and defamed the Relator by violating her HIPPA.

- (b) Standard: Monitoring performance improvement. The dialysis facility must continuously monitor its performance, take actions that result in performance improvements, and track performance to ensure that improvements are sustained over time.

- Violation and a sham

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 216

- (c) Standard: Prioritizing improvement activities. The dialysis facility must set priorities for performance improvement, considering prevalence and severity of identified problems and giving priority to improvement activities that affect clinical outcomes or patient safety. The facility must immediately correct any identified problems that threaten the health and safety of patients.

- Violation and a sham

42 CFR part 494, Subpart D-Administration

- § 494.140 — Condition: Personnel qualifications.

- Violated, the nurses do not have the necessary training(i.e., nurse required to have 18 months of clinical training but did not, Defendant Davita's nurse(Prissy) told Relator that she almost had a year of experience, other nurses, also acknowledged they did not have the required experience, and/or Relator witnessed that they did not, and/or when she brought it to the attention of upper manager Defendant Darshny, it was confirmed that the nurses who put relator at the risk of harm did not have the necessary and required training per regulation requirement.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 217

- § 494.150 — Condition: Responsibilities of the medical director.

- This was violated, see exhibit 4 the Los Angeles Dept of Public Health's finding and citing

-  Davita for such violation, in addition, in violation of the regulation(conflict of interest) the medical director and the Relator's treating physician were the same Dr. Anjay Rastogi, something that Dr. Rastogi and Davita tried to conceal by falsifying documents and misrepresenting facts.  In addition, Defendant Mr. Eric Stone responsible for Davit's survey and certification, in showing favoritism towards Davita ignored his responsibility to enforce violation for conflict of interest and when the Relator informed him that Dr. Rastogi was both the medical director for Davita and Relator's treating nephrologist, Mr. Stone decided to side with Davita and ignore the violation, while he had a responsibility to investigate such important violation.

- § 494.170 — Condition: Medical records.

- This was violated Relator was not permitted to have access and see her own records, an incomplete, redundant, inconsistent, forged, falsified copies were given to Relator after months of delay and many

attempts made by Relator, in addition, Relato's HIPPA was violated as discussed herein.

- § 494.180 — Condition: Governance.
- This was violated, see exhibit 4 the Los Angeles Dept of Public Health's finding and citing

    (6)    Davita's False Claims For certification of records

        Relator incorporates facts by reference stated herein this Complaint.

        For all the items and services Davita filed a claim and submitted to Medicare for payment or Approval, because Davita knew it was not entitled to be reimbursed or because Davita knew Such items, services, drugs, treatment were not rendered to Relator, and/or because Davita nKnew they were not medically necessary, or because Davita knew it could not unbundl Them and file a claim for a separate payment from Medicare and/or because Davita knew it

        Could not charge highly inflated prices, and/or because it knew it was not compliant with The regulation, or standard of care set in 42

CFR part 494 and/or because of a failed Condition, and/or because Davita knew it could not miss use codes cpt 90945, 90966, and

90993 and other codes and revenue codes such as 0841 for 0851,

CAPD for CCPD, Composite rate payment for ESRD payment, Form 1500 for 1450/ub-04 or electronic Equivalence, certification of such false records or any    statement as  true, gives rise to liability Under FCA.

(7)    Davit's False Claims based on Section 3729(a)(1)(G)

Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly – not to get money from the government, but to avoid having to pay money to the government

When as a result of Relator notifying Medicare and the Dept. of Justice of Davita's fraudulent billing practices, Davita's claims were cancelled, denied and Davita had to return the over payment charges of the false claims back to Medicare.

However, because Davita did not wish to return the false claims funds back to the government, in resubmitting its claim, Davita still managed, to commit false claims, to avoid having to pay money to the government it owned.

For example for the month of March 201, Davita filed and resubmitted its claims 26 times, and Davita knew it was not entitled to recive such payment fom the government the first time or the 26 times, however, because Davita was interested in acting improperly and avoiding to give the money it owed back to the government, Davita still filed series of file cliams.

As indicated by exhibit 10, confirms that Davita recived over $13,173.00 in government funds for the month of January 2014, that Davita knew was not entitled to any amount. After Relator notified Medicare and Davita's claim was denied and canceled and Davita had to resubmit its claim for January 2014, and return the false claims funds to Medicare, in its resubmission for the month of January 2014, Davita received/kept and did not have to pay back to

the government an amount of $964.02 Medicare and Medical's portion(See exhibit 8).

Because Davita knew it could not bill for support after surgery(as stated herein this Complaint), because Davita knew it could not label support for training and bill Medicare, and because Davita knew it was not entitled to unbundle training and receive a payment, and because Davita knew, it was not providing any dialysis treatment, and because Davita knew that Medicare did not pay for the first 4 months of start of dialysis(as Davita claimed it to be Jan. 10, 2014), Davita's resubmission and claiming any amount Davita knew was not entitled to receive and to keep the funds and refraining from refunding it to the government gives rise to FCA liability under Section 3729(a)(1)(G).

Furthermore, Davita's conduct was material and was to improperly withhold the funds that Davita owed to the government(i.e. $964.02).

The same argument is true for the month of February 2014, Davita initially received over $28,000 of false claims, it was not entitled to keep any.

Same argument for the month of March 1 through March 30, 2014 it was not entitled to keep any of the funds.

Same argument for the month of April 2014 through Dec. 31, 2014, where Davita exaggerated the quantity of dialysis treatment and caused a total amount to be higher than it would be if the base rate applied to the allowed quantity(i.e. 12 dialysis per month vs. 18 or 31).

Same argument is true for all the duration of Jan. 10, 2014 through Dec. 31, 2014, for non compliance to adhere standards set in 42 CFR part 494, a precondition to payment as discussed herein this Complaint.

(8)    Davita's liability under other laws, statutes and regulations

In its enrollment and registration agreement with Medicare, Davita's representative has bind

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 223

Davita to the terms, laws, statutes, and regulations of the Federal government some of which

Are indicated in exhibit 2, form 855B or electronic equivalence, and the following sections:

**Section 14 of Form 855B Provider's Medicare's enrollment and Registration agreement states in pertinent parts:**

3. Section 1128A(a)(1) of the Social Security Act imposes civil liability, in part, on any person (including an organization, agency or other entity) that knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency…a claim…that the Secretary determines is for a medical or other item or service that the person knows or should know: a) was not provided as claimed; and/or b) the claim is false or fraudulent. This provision authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs. 5. 18 U.S.C. 1035 authorizes criminal penalties against

individuals in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact; or makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items or services. The individual shall be fined or imprisoned up to 5 years or both. 6. 18 U.S.C. 1347 authorizes criminal penalties against individuals who knowing and willfully execute, or attempt, to executive a scheme or artifice to defraud any health care benefit program, or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the control of any, health care benefit program in connection with the delivery of or payment for health care benefits, items, or services. Individuals shall be fined or imprisoned up to 10 years or both. If the violation results in serious bodily injury, an individual will be fined or imprisoned up to 20 years, or both. If the violation results in death, the individual shall be fined or imprisoned for any term of years or for life, or both. 7. The

government may assert common law claims such as "common law fraud," "money paid by mistake," and "unjust enrichment." Remedies include compensatory and punitive damages, restitution, and recovery of the amount of the unjust profit.

Here, because as discussed herein this Complaint Davita knowingly presented or caused to be presented that Davita knew it filed  a claim for services not rendered and/or knew the claims was false and fraudulent(as discussed herein this Complaint) and violated Section 1128S(a)(1) of the Social Security Act, subjects Davita and the Defendants to authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs.

Furthermore, the conduct of Davita giving rise to FCA also satisfies the requirement in 28 U.S.C. 1035, 18 U.S.C. 1347, and such penalties the Statutes authorize; Common law fraud, and unjust enrichment including compensatory, punitive damages, restitution, and recovery of the amount of the unjust profit.

CMS-855B (07/11) 29

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 226

## SeCtion 15:  of the Certification Statement in pertinent parts state: CertifiCation StateMent

By his/her signature(s), an authorized official binds the supplier to all of the requirements listed in the Certification Statement and acknowledges that the supplier may be denied entry to or revoked from the Medicare program if any requirements are not met. All signatures must be original and in ink. Faxed, photocopied, or stamped signatures will not be accepted.

1.  I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. **I understand that payment of a claim by Medicare is conditioned upon the claimed the underlying transaction complying with such laws, regulations, and program instructions(including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.**

2.  I agree that any existing or future overpayment made to the supplier by the Medicare program maybe recouped by Medicare through the withholding of future payments.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQU.}; COMMON LAW STATE CLAIMS - 227

3.  I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

Count I False Claims Act 31 U.S.C. §§3729(a)(1)(A)-(C)

Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for dialysis services and dialysis-related items and services to the United States Government for payment or approval.

By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to a false or fraudulent claims for dialysis services and dialysis-related items and services.

By virtue of the acts described above, Defendants knowingly and improperly in violation of Section 3729(a)(1)(G) avoided payment to the government.

By virtue of the acts described above, Defendants have conspired among themselves and with the other persons and entities identified in this Complaint, especially the physician, Dr. Anjay Rastogi, UCLA/UC Regent Hospital, the UCLA's transplant team, Network 18, and the hospitals Davita does business with and in joint ventures with, and those entities Davita is in joint venture with.to whom they sold and from whom they bought dialysis supplies and equipment  . Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented by numerous separate entities, across the United States. Relator has no control over or dealings with such entities and has no access to the records in their possession.

The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in substantial amount to be determined at trial. Additionally, the

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 229

United States is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## Count II California False Claims Act Cal Govt Code §12651(a)(1)-(3)

Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

This is a claim for treble damages and penalties under the California False Claims Act.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for dialysis services and dialysis-related items and services to the State for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims.

By virtue of the acts described above, Defendants have conspired among themselves and with the other persons and entities identified in this Complaint, especially the physician, Dr. Anjay Rastogi, UCLA/UC Regent Hospital, the UCLA's transplant team, Network 18, and the hospitals Davita does

business with and in joint ventures with, and those entities Davita is in joint venture with and to whom they sold and from whom they bought dialysis supplies and equipment.  Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false or fraudulent claims were presented by hundreds, if not thousands, of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession. The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants 'illegal conduct.

By reason of Defendants' acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial. Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

Count III violation of Section 1128A(a)(1) of the Social Security Act imposes civil liability

Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

This is a claim for liability, in part, on any person (including an organization, agency or other entity) that knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency…a claim…that the Secretary determines is for a medical or other item or service that the person knows or should know: a) was not provided as claimed; and/or b) the claim is false or fraudulent. This provision authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for dialysis services and dialysis-related items and services to the federal government and its agent for payment or approval.

By virtue of the acts described above, Defendants knowingly did not provide services as claimed, and/ or knew or should have known such claims were false and fraudulent. made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

Count V. violation of  28 U.S.C. 1035, 18 U.S.C. 1347,

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 232

Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

This is a claim for liability, the statute authorizes, and such Common law fraud, and unjust enrichment  for compensatory, punitive damages, restitution, and recovery of the amount of the unjust profit.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for dialysis services and dialysis-related items and services to the federal government and its agent for payment or approval.

By virtue of the acts described above, Defendants knowingly miss presented, omitted material fact to induce the government to approve and pay such false and fraudulent claims.

By virtue of the acts described above Defendants breached their contract.

By virtue of the acts described above Defendants were unjustly enriched.

### Count VI Breach of Contract

Relator realleges and incorporates by reference the allegations contained in paragraph 1 through above as though fully set forth herein.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 233

- Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

  - This claim is for liability based on breach of contract(written and oral), and the breach was material on the part of all Defendants, as a result of the Defendants(specifically UCLA and Davita

conduct Relator sustain damages .

- By virtue of the acts described above Defendants materially breached their contract.

  As a result of the material breach Relator was damaged.

Count VII Specific Performance

- Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

  - This claim is for enforcement of a specific of performance of a contract (written and oral), and the breach was material on the part of all Defendants, as a result of the Defendants

(specifically Dr. Rastogi, UCLA and Davita ), as a result Relator was damaged, and there is inadequacy of remedy at law, and Relator seeks specific performance of the contract(to accept Relator's transplant candidacy and give Relator a healthy kidney).

- By virtue of the acts described above Defendants materially breached their contract.

As a result of the material breach Relator was damaged.

This claim is to order Defendants specifically UCLA or the transplant team to accept Relator as a candidate for transplant and give her a healthy kidney from a healthy donor and make Relator whole and put her in a position she was in before the UCLA transplant breached the contract(Material Breach) and refused to accept Relator's candidacy and perform Relator's donor's kidney operation, money damages are an inadequate remedy at law, performance can be rendered and does not require supervision, and irreparable injury will be prevented.

Count VIII

Torts

a. Fraud and misrepresentation of material fact

- Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through  above as though fully set forth herein.

- This is a claim for liability, under Common law Torts(Fraud and misrepresentation of material fact, Intentional Infliction of Emotional Distress, and professional negligence and common law damages(actual, pain and suffering, exemplary and punitive damages) .

- By virtue of the acts described above, Defendants knowingly presented or omitted material fact that Relator relied on and Defendants knew or should have known Relator would rely on such misrepresentation to her detriment.

- By virtue of the acts described above, Defendants knowingly miss presented, omitted material fact to induce the Relator to change position in reliance to such material omission.

- By virtue of the acts described above Defendants had reason to know their outrageous conduct would result in severe emotional distress of the Relator.

- By Virtue of the acts described above Defendants knew they had a duty to Relator and failed the standard of care to Relator that was proximately caused the damages to Relator.

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 236

Relator was manipulated, intimidated, material facts were presented to her by Dr. Rastogi, UCLA, Transplant team, Davita, and she was pushed to do dialysis against her will, Relator was misdiagnosed, and such material misrepresentation diagnosing relator on purpose as ESRD in order to refer her to Davita's dialysis.  Relator relied on such misrepresentation to her detriment. And as a result sustained damages.

Relator is seeking actual, consequential, exemplary and punitive damages

a.  Intentional Infliction of Emotional Distress

The Defendants conduct incorporated by reference from 1 though and relator realleges that Defendants continued retaliation, misdiagnosis, abandonment from care, was outrageous and caused a severe emotional distress to the Relator.

b.  Professional Negligence:

Relator was under the care of Defendants Dr. Rastogi, UCLA Transplant team and Davita who had a duty to force able care, their conduct as stated and incorporated from 1 through failed below the applicable standard of care of professional community, as a

FIRST AMENDED COMPLAINT FOR VIOLATION FO FEDERAL FALSE CLAIMS ACT{ 31 U.S.C. &&3729 ET SEQU.}; CALIFORNIA FALSE CALIMS ACT {CAL.GOVT. CODE &&12650 ET SEQ.}; COMMON LAW STATE CLAIMS - 237

proximate result of Defendants conduct Relator sustained

damages(actual, punitive, pain and suffering.

Nov. 10, 2016

Submitted by Nasrin Morrowatti

Relator's attorney