Nasrin Morrowatti(BAR NO. 276407
426 S. Sepulveda Blvd. Unit 116
Los Angeles, CA 90049
iliveforjustice@gmail.com
(310) 739-6906

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF America AND THE STATE OF CALIFORNIA; EX REL NASRIN YOUSEFMORROWATTI,<br><br>            Plaintiff,<br><br>vs.DAVITA    HEALTH    CARE<br><br>PARTNERS; TOTAL  RENAL  CARE;<br><br>DAVITA  RX;  ALL  DEFENDANTS<br><br>LISTED  AS  EMPLOYEE  OF  DAVITA<br><br>IN THIS COMPLIANT, DR. RASTOGI,<br><br>ANN  HOPP,  UCLA  TRANSPLANT<br><br>TEAM,      DR.      DANOWITCH,<br><br>PRISEPHORNE  CAMARA,  JOE  DOE,<br><br>MONICA        RESSEL,MITCHELE | Case No.: cv 15-5225(SJWx)<br><br>SECOND AMENDED COMPAINT INCLUSING EXHIBITS |

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 1

BOLLOC, DARSHNI, NETWORK 18
AND ITS EMPLOYEES HARRIET
EDWARDS AND EYLIN DOE AS
INDIIDUALS AND AS NETWORK 18;
SAINT JHON'S HOSPITAL; SHERLY
SINGELTON;    ERIC    STONE;
ANTHONY    CHAPMAN    AS
INDIVIDUAL DEFENDANTS AND AS
COLLECTIVELY,    JOINTLY    AND
SEVERALY
[DEFENDANT'S NAME],
      Defendants

JURY TRIAL DEMANDED

Second Amended Complaint

1. This is the First Amended Complaint and it relates back to June 10, 15, the

original pleading Fed. Rule of Civ. Pro 15(C). Plaintiff-Relator Nasrin

Yousefmorrowatti("Relator"), through her attorney Nasrin Morrowatti, on

behalf of the United States of America, the States of California (collectively "the Plaintiff States") for her Complaint against Defendants DaVita, Inc. , aka Health Care Partners, Total Renal Care, Inc., Davita RX a subsidiary of Davita, Davita's coconspirators, joint ventures, employees, staff, executives, directors, Davita's Medical Director, Dr. Anjay Rastogi , Davita's nurse Persephone Camari aka Prissy, Ann Hopp(Davita's Social Worker), Joe Doe(Davita's nurse), Defendants Does 1-100, Monica (Davita's dietician), Darshni(Davita's FA upper manager), Mitchel Bollock(Davita's manager) Anthony Chapman (Davita's administrator), Noridian MACS,  Network 18 and their employees, UCLA transplant team(i.e., Dr. Danovitch, Dr. Rastogi) Saint John's Hospital (collectively referred to as "Davita", unless a specific example requires to state the name of the individual Defendant)

a. Defendant Network 18 organization and its employees collectively and individually.

b. Defendant Saint John's Health Center is a nonprofit organization doing business in California and is in Providence Saint John's Health Center, 2121 Santa Monica Blvd. Santa Monica, CA 90404).

c. Defendants UCLA aka UC Regent, and transplant team is located in 200 Westwood, CA.

d. This FCA is also filed against Shirley Singleton, and Eric Stone at the Los Angeles, Dept. of Public Health responsible for licensing and survey of Davita, its staff, and Compliance as individuals and in their official capacity, located in California.

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 3

    e.  Defendants mentioned herein, and all Defendants are collectively, individually, jointly and severally are liable to Plaintiff.

    f.  Relator or Plaintiff are referred to in this Complaint interchangeably.

    g.  Medicare, Medical and government are referred to in this Complaint interchangeably.

    h.  At all times Davita's corporate office and executives were aware of the false claims, facts and exhibits stated herein this Complaint, and directed Davita's staff, and Davita's joint ventures to conduct in the manner stated in this Complaint.

    i.  It is also stated that the government did not have knowledge of such false claims.

## 2.  NATURE OF THIS ACTION

    i.  This is an action is to recover damages and civil penalties on behalf of the United States of America and the Plaintiff States arising from false and/or fraudulent submission, statements, records, certification and claims that are material made and caused to be made by defendants and/or their agents, employees and co-conspirators in violation of the federal False Claims Act, 31 U.S.C. §§3729(A-C)-373 et seq. (the "Act" or "FCA"), and the false claims acts of the Plaintiff States(California) and other laws and statutes stated herein this Complaint.

    ii.  In so doing, Defendants have caused each such false claims they submitted/presented  ( the law was amended, a simple request for payment or approval constitutes false claims as of Calendar year 2015 under authority of Office Of Inspector's General and the amended FCA") to the government for payment or approval to be materially false and substantially inflated, resulting in significant damages to the United States.

    iii.  This Complaint is also filed based on 18 U.S.C &101; &3571; ;&3571(d );.1128(B)(a)(1) of the Social Security Act); 18 U.S.C. 1035; 18 U.S.C. 1347;  31 U.S.C. 3729; Section 1128A(a)(1) of the Social Security Act imposes civil liability; and "Common Law Fraud", Mistake, and unjust enrichment action (See Exhibit  2  Form 855B, section 14); and "Certification Statement" Section 15; 15(A)(3); and 15(A)(6);

and State Common law claims(i.e., Torts{Fraud and
Misrepresentation; Intentional Infliction of Emotional Distress;
Professional Negligence; Breach of Contract and Specific
Performance).

b. DaVita has violated the False Claims Act("FCA"), , 31 U.S.C.
§§3729(A-C)-373 et seq. by submitting false claims, false statements,
false records, false certification to Medicare and Medicaid.

c. Any claims submitted either by DaVita and the Defendants (stated
herein this Complaint) and coconspirators are tainted because they are
in false with knowledge of falsity.

d. In addition, the false claims were submitted or caused to be submitted
by Davita to the government are ineligible under FCA for
reimbursement by Medicare, Medicaid (Medical in State of CA) or
other federal or stated-funded health care programs..

e. Defendants have submitted, or caused others to submit, such illegal
false claims with knowledge of falsity, . As a consequence, the United
States and the Plaintiff States have been damaged in significant
amount.

f. Defendants' conduct alleged herein violates the federal False Claims
Act and False Claims Acts of the Plaintiff States. The federal False
Claims Act was originally enacted during the Civil War. Congress
substantially amended the Act in 1986 – and, again, in May 2009 – to
enhance the ability of the United States Government to recover losses
sustained as a result of fraud against it. The Act was amended after
Congress found that fraud in federal programs was pervasive and that
the Act, which Congress characterized as the primary tool for
combating government fraud, was in need of modernization. Congress
intended that the amendments would create incentives for individuals
with knowledge of fraud against the Government to disclose the
information without fear of reprisals or Government inaction, and to
encourage the private bar to commit legal resources to prosecuting
fraud on the Government's behalf.

g. The FCA prohibits: (a) knowingly presenting (or causing to be
presented) to the federal government a false or fraudulent claim for
payment or approval; (b) knowingly making  or using, or causing to
be made or used, a false or fraudulent record or statement material to a

false or fraudulent claim; and (c) conspiring to violate any of these provisions. 31 U.S.C. §§3729(a)(1)(A)-(C). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each violation, plus three times the amount of the damages sustained by the United States.

h. U.S.C. §3729(a)(1). The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery. The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

i. As set forth below, Defendants' actions alleged in this Complaint also violate the California False Claims Act, Cal. Govt. Code §§12650 et seq.

j. Based on these provisions, qui tam plaintiff and relator Nasrin Yousefmorrowatti seeks to recover all available damages, civil penalties, and other relief for federal and state-law violations alleged herein.

## I.    PLIMINARY STATEMENT

2.    DaVita is a Certified ESRD (End Stage Renal Disease) dialysis company presently headquartered in Denver, Colorado. Starting on approximately March 1, 2005, through February 1, 2014, Davita also known as "Health Care Partners", "Total Renal Care", and "Davita Century City". Relator a patient at Davit from Jan. 10, 2014 received wound care post-operative surgery in preparation for a Catheter placed in the Relator's abdomen, at UCLA.

Although, UCLA and Davita may have entered an agreement, for the purpose of Medicare payments and regulations stated herein this Complaint, they are not considered a part of each other and Davita and UCLA each have been given their own unique ID, neither UCLA, Saint John's hospitals, or

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 6

Davita are permitted to submit bills to Medicare for each other regardless of joint venture and

contract arrangement. 42 CFR 410.27 (a) (1).

 Furthermore, because Medicare requires an End Stage Renal Dialysis (hereon "ESRD") company to

be ESRD Medicare certified, Davita had to go through the process of certification by a Medicare

enrollment registration agreement process and be bound by the laws and regulations stated in form

855A (enrollment agreement) and be bound to an express condition as a prerequisite to payment and

continued enrollment  and to adhere to all the laws and regulations set by CMS and standard of care

and Compliance of such specially, compliance with 42 CFRT part 494 (patient's standard of care).

DaVita illegally in violation of the regulation (CMS, ESRD PPS{will discuss infra} and other status

and laws stated herein this Complaint), raised its revenue through a practice of filing false claims,

and records, that consisted of unbundling and billing bundled drugs, dialysis related services, billing

the government i.e., Medicare and Medicaid and other government agencies)for services that it did

not render and/or medically unnecessary , unreasonable Social Security Act &1862(a)(1) and

uneconomically in violation of  42 U.S.C. &1320 c-5(a), unskilled services causing millions and

billions of dollars of damages to the United States expanded its dialysis business through a practice

of filing false claims, statement and records.  Conspiring with physicians (i.e., Dr. Anjay Rastogi), its

staff (consisting of upper management, Social worker, Defendant Ann Hopp, dietitian Defendant

Monica Ressell, Nurses, Defendant Persephone Camara (hereon "Prissy"), Defendant Joe Do

Davita's nurse, Defendant upper management Darshni Doe, Defendant Michele Bollock manager at

Davita century city, and other coconspirators stated herein this Complaint and those whose identity is

not known to the Relator.

The Relator will seek leave of Court to amend this Complaint once it learns the identity of those

coconspirators.

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 7

The Relator witnessed Davita's fraudulent practices, in California at the Century City Location, and

based on information and belief Relator alleges that Davita's conduct and scheme is throughout the

United States.

in order to bill the Medicare program for payment, Davita, knew by agreeing to the certification

process and express condition (a prerequisite to payment) of the followings

Davita agreed to abide by the Medicare laws, regulations and program instructions that apply to this

provider. The Medicare laws, regulations, and program instructions are available through the

Medicare contractor. Davita attested through its  representative binding Davita to  attested "**I**

**understand that payment of a claim by Medicare is conditioned upon the claim and the**

**underlying transaction complying with such laws, regulations, and program instructions**

**(including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the**

**provider's compliance with all applicable conditions of participation in Medicare".; Davita**

**further agreed** that any existing or future overpayment made to the provider by the Medicare

program may be recouped by Medicare through the withholding of future payments.


Even though Davita stated "I will not knowingly present or cause to be presented a false or

fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or

reckless disregard of their truth or falsity", Davita continuously and routinely submitted false claims

to the government specially Medicare in order to raise it revenue to billions of dollars.

In fact, when Relator reported Davita's fraud to Medicare and government, Davita had to resubmit its

claims and refund some money, when Davita resubmitted its claims some times for a given month

more than 26 times, Davita managed to each single time, file a false claim, in order to not return the

monthly the funds that belonged to the government.

An example is:

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 8

Davita unbundled training and billed it separately when it knew per regulation (ESRD PPS payment discuss infra) it could not unbundle and claim those items and services, for extra pay, however, Davita charged over $4,000 of training per session, and induced Medicare payment for thousands of dollars, and when Relator contacted Medicare, and those claims already paid to Davita from Jan. through March for dialysis training were denied, and adjustments had to be made and Davita was required to resubmit the claims, and when Davita resubmitted, it caused other false claims and caused the Medicare contractor pay Davita over $251 that Davita was not entitled to.

Because, the training is bundled under the ESRD PPS with dialysis, and included in the base rate (will discuss infra), Davita was not entitled to receive any additional pay for training.

Furthermore, Davita falsified the start date of dialysis to Jan. 10, 2014 to improperly and inaccurately, cause the Medicare Computer to think Relator was receiving dialysis treatment when she was not (the actual date Relator started the dialysis was after the training was over and when the dialysis machine cycler CCPD was delivered to Relator's residence on March 31, 2014).

In addition, to manipulate the Medicare computer system, to pay outside the ESRD PPS, and pay for training as a separate item, or services, Davita knew, the physician's fee does not bundle the training into the physician's monthly fee schedule called Monthly Capitation Payment (hereon MPC) for evaluation of the Relator, if Davita falsely made a statement that it was the physician (i.e. Dr. Rastogi) conducted the training, when in fact it was Davita's nurse who conducted the training and under the ESRD PPS, the government has accounted for the nurse's time  for training, and for Jan. 2014, the training was raised to$33 per training session.

Having knowledge of such amount for training, Davita billed Medicare for over $4,000 per training session and outrageous amount, and the Medicare  contractor Noridian paid that amount.

Because the training may be unbundled if a physician conducts it, the physician's code 90993 was used to bill Medicare even though no physician had trained Relator, and in order to manipulate the

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 9

Medicare computer system to bypass the ESRD PPS bundle rate of one single payment (i.e., $239.02 per dialysis treatment included the training and all other related items and services). Davita knew it could count on Dr. Rastogi making an attestation that he conducted the training.

Although, Davita also knew through the patient's records (i.e., Relator) that the training was conducted by no other than the Davita's nurses (i.e, Persephone Camara).

DaVita knew improper use of forms, data, and codes submitted to Medicare for payment would cause an over payment for dialysis and/or overpayment for drugs, services, unreasonable, and Medicaly unneceassry, , uneconomically consisting of highly inflated claims to Medicare for payment and inducing such payemnts in violation of the regulation (i.e., ESRD PPS will discuss infra, unbundling bundled itmes and billing them for separate items, using outdated pre Jan. 2011 Composit rate payment system to file its claims, using hospital inpatient codes improperlhy wenn patient such as Relator was not an "inpatient" admitted into the hospital, billing for inpatient laboratory codes when such codes were improper because the Relator did not have an "inpatient" hospital status, mix and match dialysis revenue codes improperly used that did not matfh the proper revenue codes associated with the dialysis modality used by the Relator (i.e, Relator used a CCPD authomatic machine and to accurately represent this method through a revenue code that the Mediare Comuter relies on processing data for payment and approval of services, is CCPD 0851 but instead Davita reports a CAPD which is a man ual dialysis mode with its djesignated code 0841, this is an important factor, because if Davita accurately reported revenue code 0851, and

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 10

other codes, then the Meciae compute would get flagged that this is a ESRD patient and charges must be bundled and would not allow unbudeling and and extra payment.

Furthermore, Davita's prohibited conduct consisted of billing for services not rendered, and/or billing for highly inflated prices and not economically suitable, and/or filing claims based on false pretenses to any government agency, and/or filing false claims violation of regulations (i.e., ESRD PPS and other regualtions stated in this Complaint) in order to bill the Medicare program, and recived payemtn Davita was not entitled to.

Davita's prohibited conduct also included inducing patients to go along and sign for services that were not provided, and/or not medically necessary and even harmful to patients (i.e., Relator). At all relevant times, DaVita had knowledge of and failed to abide by significant government guidance that warned against the exact false claims improper coding, over charging, and over payment, and schemes associated to create and produce those over charges behavior in which DaVita engaged.

Billing Federal health care programs for unbundling ESRD dialysis related services provided, using improper codes (i.e. CPT code 90945, 90966, 90933, 0831 (inpatient laboratory code) , use of outdated Composite payment system that the ESRD PPS replaced effective Jan. 1., 2011, and use of other codes to achieve filing false claims) as they relate to the treatment of the ESRD condition and the ESRD Prospective Payment System (will discuss infra) and as they relate to each other and/or as they relate to inpatient ESRD dialysis (i.e., UCLA, Saint John's and other hospitals) and/or as they relate to outpatient ESRD facility (i.e., Davita) and outpatient hospital Acute kidney care and dialysis (will discuss infra) with an inappropriate financial interest for Davita, and its connection with its coconspirators, Dr. Rastogi, UCLA, Saint John's hospital and other joint ventures of Davita and/or

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 11

those with financial agreement and Contract with Davita, and/or those who receive a windfall due to Davita's false claims (i.e., Network 18), all violate the CMS regulation and other laws stated herein this Complaint. As a result, DaVita also violated the FCA every time it submitted such claims to a federal health care program for payment or approval of its services.

## II.     THE PARTIES

## III.     JURISDICTION AND VENUE

### IV.     BACKGROUND ON DIALYSIS

Chronic kidney disease is a progressive disease, which ultimately destroys the kidney's ability to process and clean blood. The loss of kidney function is normally irreversible. End Stage Renal Disease ("ESRD") is the stage of advanced kidney impairment that requires either continued dialysis treatments or a kidney transplant to sustain life. Dialysis treatment is the removal of toxins, fluids and salt from the blood of ESRD patients by artificial means. According to the United States Renal Data System, there were approximately 415,000 ESRD dialysis patients in the United States at the end of 2010.

Patients suffering from ESRD generally require dialysis at least three times per week for the rest of their lives. Because each dialysis session lasts for several hours, and is required several times a week, dialysis patients usually seek treatment at centers geographically near where they live (as Relator went to UCLA and she was induced and referred to dialysis at Davita).

In fact, Relator had a healthy donor, however, Dr. Rastogi, the transplant team at UCLA with the supervision of Dr. Danowithch, refused Relator's candidacy for a keidny traspant in violation of Medicare regulation specified in 42 CFR 482.1 through 482.57.

Defendnats employees of Network 18, Eileyn Boytes and the Director of Network 18, charged with the responsibility to  monitor and improve the quality of care given to people with End-Stage Renal Disease

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 12

(ESRD), and can help  with Relator's complaints about  her dialysis facility or transplant center. Refused to address Complaint against UCLA and UCLA's transplant team, and also showed favaritisim towsrds Daivita and its non complinaces to the Patient's standard of care per CMS 42 CFR Part 494.  And closed Relator's complaint and misrepresented that relator requested her Complaint to be closed.  Relator's Comlaint consisted of Davita's poor quality of care, invasion of Relator's privacy, and Davita's staff disrespecting Relator, retaliating and disrespectful conduct causing harm to Relator, etc.  When the Relator addressed her Complaints to the Director of Network 18, she disregarded the Relator and talked to her in a demaining way.

The same facts are true for the Los Angeles County of Health Dept., with supervision of Defendant Erick Stone, and Sherly Singelton.  When Relator contacted Sherly Singleton, in about May through June 2014, Ms. Singleton did not retrun Relator's call and when Relator inquired Ms. Singlton said "we do not call the public back" and hung up, and when Relator called again, Ms. Singelton refused to take Relator's Complaint in violation of the regulation (the federal governemnt funds the Los Angles County of Public Health to conduct survey and certificate of the dialysis clincis (i.e., Davita, and hospitls), the UCLA matter in regards to the transplant wa not addressed at all, Mr. Stone did not return many of the Relator's calls even though he promised he was going to do so, and when finaly Relator spoke to Mr. Stone, he seemed to justify every prohibited Davita's conduct (i.e., its non compliances in respect with CMS regulations set in 42 CFR part 494), and showed a lot of favaritizim towards Davita, until Relator contacted CMS and they said "he should have addreseed my Complaint" and only when he received heat from CMS and also when Realator informed him that she was going to contact the OIG, is when Mr. Stone was willing to kind of take Relator's Complaint, but still he managed to sugar code Davita's prohibited conduct even though on the surfice it look like he was citing Davita.  Neither Mr. Stone, Nor MS. Singelton adhere to the responsibilities the regualtions mandates for them to do, they are requied to follow the statute and see if dialysis compnies and hospitals who provide services to the ESRD patients are Complaint with CMS and standard of care, however, Mr. Stone and Ms. Singleton who do not have authority to enaact laws they do, and when they are supposed to exercise their enforcement powers over Davita, dialysi clinics, and hospitals (i.e., UCLA) they refuse.

 Since 1972, the federal government has provided universal payment coverage for dialysis treatments under the Medicare ESRD program, regardless of age or financial circumstances. Under this system, Congress establishes Medicare rates for dialysis treatments, related supplies, lab tests and

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 13

medications. Other Government-funded health care programs and private insurance plans also

routinely provide coverage for dialysis, either separately or in combination with a patient's Medicare

coverage.

Medicare Part A pays for inpatient hospital, and Medicare Part B pays for home and outpatient

dialysis, inclusing inpatient dialysis and physician's fees.

 As of December 31, 2013, DaVita owned, operated and/or provided administrative services through

2,074 outpatient dialysis centers located in 44 states and the District of Columbia, serving

approximately 163,000 patients, which is roughly more than a third of the entire ESRD population of

the United States. The number grew in 2014, to 173,000 per Davita's 10K.

For the year ended December 31, 2012, approximately 90% of DaVita's dialysis patients were under

government-based programs, with approximately 79% of its dialysis patients under Medicare and

Medicare-assigned plans.

## V.    THE FEDERAL HEALTH CARE PROGRAMS

**A.Medicare**

As stated, Mediare is a federaly funded program from Part A (inpatient), Part B (inpatient and

outpaitnt ESRD dialysis and fee for service schedule for physicians), Part C (Medicare Advantage) ,

and Part D (prescription drugs unrelated to the treatment of ESRD, with a few minor exceptions will

discuss infra).

**B. Medicaid**

Medicaid was also created in 1965 under Title XIX of the Social Security Act. Medicaid is a joint

federal-state program that provides health care benefits for certain groups, primarily the poor and

disabled. Each state administers a state Medicaid program and receives funding from the federal

government, known as federal financial participation, based upon a formula set forth in the federal

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 14

Medicaid statute. Thus, under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* federal money is distributed to the states, which in turn provide certain medical services to the poor. Before the beginning of each quarter, each state submits to CMS an estimate of its Medicaid funding needs for the quarter. CMS reviews and adjusts the quarterly estimate as necessary, and determines the amount of federal funding the state will be permitted to draw down as the state actually incurs expenditures during the quarter (for example, as provider claims are presented for payment). After the end of each quarter, the state submits to CMS a final expenditure report, which provides the basis for adjustment to quarterly federal funding.

**C. TRICARE**

 TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

 Collectively these programs referred to in Section V will be referred to in this complaint as the "Federal health care programs."

# A. The ESRD PPS AND THE FALSE CLAIMS ACT

The False Claims Act ("FCA") establishes liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A) ; or "knowingly makes, uses or causes to be made or used, a false record or a statement material to a false or a fraudulent claim 31 U.S.C. 3729 (a) (1)(B); Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly  to avoid having to pay money to the government.        ,

 "knowingly" is defined to include not just actual knowledge but also reckless disregard and deliberate ignorance 31 U.S.C. 3729 (b) (1).  No proof of specific intent to defraud is required.

Davita's certification of the false records also gives rise to liability udnder FCA (will discuss infra)

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 15

Davita's noncompliance and failure to satisfy the conditons of standards of care specially set in 42 CFR part 494, constitutes knowledge on Davita's part, having knowledge that it was not entitle to receive a payment, filed files claims in violation of the regulations (i.e., ESRD and those stated herein this Complaint), Davita's conduct constituted false calims and records and causing a false claims to be paid.

End Stage Renal Disease (ESRD) and "Acute Kidney Condition and Dialysis:

    A.  End-Stage Renal Disease (hereon "ESRD") is a medical condition in which a person's kidneys cease functioning on a permanent basis leading to the need for a regular course of long-term dialysis or a kidney transplant to maintain life. Beneficiaries may become entitled to Medicare based on ESRD.

    B.  "Acute Kidney Condition and Dialysis: Medicare defines acute dialysis as dialysis that is unrelated to a diagnosis of End Stage Renal Disease (ESRD) and therefore is not covered under the ESRD prospective payment system (PPS). Medicare pays for acute dialysis under the hospital outpatient prospective payment system (OPPS) when it is furnished to a hospital outpatient with ESRD in non-routine circumstances (as defined in the Medicare Claims Processing Manual (Pub. 100-04), Chapter 4, section 200.2), or when it is furnished to non-ESRD hospital outpatients.

Medicare's Payment System for ESRD dialysis, prior to Jan. 1, 2011, the implementation of the ESRD Prospective Payment System:

Prior to the implementation of the ESRD Prospective System(will discuss infra), Medicare paid for ESRD related condition and services through a payment methodology called "Composite rate". In the Composite rate payemmnt system prior to Jan. 1, 2011, Medicare paid a set fee for dialysis and allowed dailysis clincics (i.e., Davita) to bill for certain items and services separately and receive a payemnt. As such those items and services were billed to Medicare Part B and Medicare paid for these items and services on the basis of "separately billable Part B", and dislysis clincics (i.e., Davita) received payments for those services and items they billed Medicare as "separate items and servies. Prior to Jan. 1, 2011, dialysis clincis (i.e., Davita) could request exceptions and receive extra payements for their services.

However, when the ESRD Prospective Patyment System(hereon ESRD PPS) was implemented effective Jan. 1, 2014, per MIPPA, after giving notice to the dialysis industry including Davita, no more exception was allowed, and the ESRD PPS, was based on a rate, called "the base rate", that was set by Congress and in

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 16

reliance on the cost report that Davita (form 265 with its terms that Davita agreed with as condiiton of payment and participation)  and other dialysis clinics provided to the government for the cost providing dialysi to ESRD beneficiaries including all the related items and services (i.e., drugs, laboratory, support, training, supplies, dialysis equipment, injectable drugs) under one single consolidated payemnt that dialylsis clincics (i.e., Davita) would receive if they provided the ESRD treatment to beneficiaries in complinaced set by CMS, quality of standard of care specialy those set in 42 CFR Part 494.100-494.800, as a condition of payment and continued enrollment in Medicare, and also those conditions set in Form 866A Provider Medicare Enrollment Registration as an express conditon of payment.

Depending on the statute and allowable adjustments by CMS, the base rate was adjusted to account for an increase or decreae in pay, per ESRD dialysis treatment.  Then a final base rate was rendered to dialysis companies.

For example, the base rate per ESRD dialysis treatmetn (requires ESRD conditon, for the payemnt to be processed under an ESRD PPS) , ranges from $238 to $242 per dialysis treatment.  In 2014, the base rate after the alloted adjustments was $239.02 per dialysis treatment.  To receive certain adjustments to be added to the base rate (will discuss infra) dialysis clincis (i.e., Davita) through statements, data, and record had to demonstrate that they qualify for those adjustments.

<u>Because the ESRD PPS, payemtn system is very complicated and is code, data, form specific as it is assigned to chathagory of dialysis providers (i.e, dialysis clinic vs. a hospital, ESRD dialysis vs. Acute dialysis, physician's fee for evaluation and management of a patient as a  home dialysis vs. inpatient dialysis) and Relator alleges that Davita and its coconspirators (stated herein this Complaint and those unknown to Relatror and Relator will seek leave of Court to add their name when their true identity and participation is known to Relator) have improperly used a combination of improper codes and data to circumvent their scheme and in submission of their false claims, false records a furher explanation of the details may be warranted which as follows:</u>

## Implementation of ESRD Prospective Payment System, Effective Jan. 1, 2011:

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 17

Section 153(b) of the Medicare Improvements for Patients and Providers Act (MIPPA) requires the implementation of a bundled ESRD PPS effective for Medicare outpatient maintenance dialysis services furnished on or after January 1, 2011. The ESRD PPS combines payments for the composite rate and separately billable renal dialysis items and services into a single base rate. Therefore, no more "Composite Rate" billing is allowed, however, having knowledge of such regulation Davita continuously, routinely as an scheme has been unbundling the bundled items in violation fo this regulation and submitting claims to Medciare for payment and approval of its services, causing millions and billions of dollars of damages to the United States (at least as of Jan. 1, 2011, specially Jan. 1, 2014 through Dec. 31, 2014, and based on information and belief, Relator alleges that Davita's prohibited conduct of unbundeling dialysis related items and services for payment to Medciare still and presently continues.

## Transition Period

Davita had to inform CMS, whether it was willing to receive payment for the services that it rendered and were medically necessary under the ESRD PPS, effective Jan. 1, 2011, or whether it chose to receive a partial of the payment for its services from Medciare which included partialy the "Composite Rate, and partialy the ESRD bundled.  The transition period was from Jan. 1, 2011 through Dec. 31, 2013.  However, as of Jan. 1, 2014, per regulation (i.e. ESRD PPS), Davita and all ESRD facilities would only receive a base rate under the ESRD PPS (i,e, one single consolidated payment that covered all of the items, drugs, sevices, dialysis equipment, support, training, supplies, etc.) in one single payment, per treatment (i.e., $239.02 per dialysis treatment, per patient).

## Onset of Adjustment (i.e, extra or higher pay in addition to the base rate), if Davita qualified:

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 18

1    The first 120 Medicare-eligible days after a patient starts chronic renal dialysis,

2    automaticaly qualifies an ESRD dialysis clinic (i.e., Davita) to extra pay and adjustment which is called

3    "an onset of dialysis".  All that is required for Davita to do is to make a statement (i.e., start date of

4    dialysis) on documents sent to Medicare (i.e, form 2728 {"A Patient's Regestration Evidentiary Form,

5    Qualifying the patient/beneficiary to Medicare entitlement for payment for ESRD, attested by Davita and

6    physician/Dr. Rastogi}; Patient's Plan Of Care {attested by the Defendnats : Dr. Rastogi, Ann Hopp Social

7    Worker, Presephorn Camara, Monica Ressel the dietician})

8    An onset of dialysis adjustment starts for the patient's first 120 Medicare-eligible days

9    after the start of chronic renal dialysis. **The onset adjustment will not be applied when the chronic**

10   **and acute comorbid adjustments and the training adjustments are applied.** However, in violation of

11   regulation (i.e, certification agreemeent to tell the truth, in form 855A Enrolment Agrement Registration

12   with Medicare as Stated herein this Complaint) Davita and its coconspirators back dated the start of

13   Relator's dialysis from March 31, 2014 when Davita's nurses delivered the dialysis machine (CCPD) to

14   Relator's residence to falsely state the start dialysis dialysis onset to  Jan. 10, 2014, and manipulated

15   Medciare to receive a higher payemtn.

16   Furthermore, having knowledge of the regulation, that if the training was conducted

17   during the first 120 days (i.e., onset of dialysis that Davita falsely stated was Jan. 10, 2014), Davita billed

18   for training that was not entitled to recive because 1) Davita qualified itself for onset of dialysis as of

19   Jan.2014, and billed for Jan., Feb., and March for training which illustrates Davita's several false claims

20   from Jan. 10 through March 2014; b) Davita knew it could not unbundle training under the ESRD PPS

21   and file a cliam and recive money from Medicare, however, Davita by using inappropriate codes (i.e., CPT

22   code 90993), falsely reported to the govnermnt that a physician conducted the training, and manipulated

23   the Medciare system to bypass the ESRD bundle payment for training and pay it under a physician's

24   code that is allowed to be paid outside the ESRD PPS for physcan's fee provided if the physician

25   personaly conducted the trainng of the Relator and attests to it., however, because Davita knew such

26   training was not conducted by the physician (i.e., Dr. Rastogi), and because Davita knew it could not

27   unbundle the training under the ESRD PPS and have it be paid by a different payment system without

28

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 19

violating the regulation, and falsifying statemnets and records, Davita's conduct is an example of giving rise to liability under FCA.

### Facility-Level Adjustments

An adjustment for facilities that furnish a low volume of dialysis treatments. To receive the low-volume adjustment, dialysis clinic (i.e., Davita)  must submit an attestation to the Medicare Administrative Contractor (MAC) to receive the adjustment to the base rate.  However, given the large size of Davita and its large patient papulation, Davita would not be entitled to a facility level adjustment. In addition, if Davita bought a small low level dialysis (very few patients), Davita still would not be eleigable to receive the facility adjustment.  Because once Davita merges with the small dialysis company, Davita's size of patients' pupulaiton does not justify such adjustment and to receive one, constitutes a false claims.

## Payment Rates for Adult Patients

For calendar year (CY) 2014, the base rate for adult patients is $239.02, which is determined by drug utilization adjustment, adjustment for ESRD dialysis clincics (i.e., Davita's  wages for the nurses, dietician, social worker) plus home dialysis traing add on adjustment(it was increased to $33 for the nurse's time per training session, included in the base rate {i.e., $239.02).  In addition, ther are adjustments made to the base rate for adault ESRD patients and those adjustments consists of Patient-level adjustments for case-mix( i.e., patient's age, wight of the patient, if patient has comorbidity condtion that may require more mediation and services justifying adjustments for conditons such as (Chronic comorbid conditions – Hereditary hemolytic, including sickle cell anemia, monoclonal gammopathy, and myelodysplastic syndrome); Facility-level adjustments(discussed above);

A training add-on (if applicable, meaning for a home dialysi patient who chooses to do her dialysis at home, and has a clean environment and space to conduct her dialysis); and

An outlier adjustment: is those type of adjustment for Dialysis clincis who provide statements and documentations, that demonstrates that some of their patietns rquire unsusually high

resource (i.e., more drugs, more dialysis related sercices) beyond the treshhold that the governemtn accounted for and compensates the dialysi clincis (i.e., Davita) in the base rate.

These are the bundled items that were medically necessary (reasonable to treat the condition)  to treat the ESRD patient's condition but excedded the threshold.  Because government does not wish for dialysis clinics to lose money it provides this adjustment in addition to the base rate if the dialysis clinic qualifies.  Furthermore, those items that are paid as separate items and services are not qualified to receive an outlier adjustment.

As it relates to the Relator, Relator's condition is not as such that it would warrant qualification for outlier adjustment (i.e., she is not so overwight that requires more medication, or not so anemic that requires more Iron or Epogen).

**Home Dialysis**

**Prior to the implementation of the ESRD PPS, ESRD patients had an option to directly deal with the supplier of the dialysis equipment and supplies, and Medicare would reimburse for such equipment and supplies, this option was called "Method II, however,**

Effective January 1, 2011, home dialysis items and services previously reimbursed under Method II, regardless of home treatment modality, are included in the ESRD PPS payment rate (i.e., bundled). Dialysis clinics (i.e., Davita) must submit all home dialysis claims with dates of service on or after January 1, 2011, and they will be processed as Method I claims.

Although, Method II is no longer part of the regulation, because of the ESRD bundled payment which includes dialysis machine, equipment and dialysis supplies all included in one base rate, Davita through trickery and manipulations, and induces patient's to sign for CMS Form 382 indicating Method II option of payment, when in fact Davita has had knowledge since prior to 2011 "All home dialysis equipment, supplies, and other medically necessary items for home dialysis ordered by a physician were included in the composite rate and are therefore included under the ESRD PPS.  The ESRD facility with which the patient is associated assumes responsibility for providing all home dialysis equipment, supplies, and support services either directly or under arrangements to all of its home dialysis patients.section 20.4 Medicare Benefit Policy Manual Chapter 11 - End Stage Renal Disease (ESRD)Home Dialysis Equipment and Supplies .

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 21

**Laboratory services Drugs and Biologicals:**

Under ESRD PPS MIPPA (as stated herein) Effective January 1, 2011, ESRD-related laboratory services and drugs and biologicals previously separately billable under Medicare Part B (i.e., under the Composite rate payment prior to Jan. 1, 2011) are included in the ESRD PPS. Drugs and biologicals that are used as a substitute for any of these items, or are used to accomplish the same effect, are also included in the ESRD PPS.

Davita had knnowledg of this regulation, however, in violation of regulation, unbundled the routine laboratory work related to the treatment of ESRD, and billed Medciare for paymengt.  To accomplish its prohibited conduct under the regulation, Davita in a scheme used improper "inpaitnet" hospital code (i.e., 0831), in order to misguide the Mediafre Computer's system, to pay a higher amount and deviate from payment under the bundled ESRD PPS.  And pay in amounts much higher than the base rate (i.e., $239.02 per ESRD dialysis treatment). Please refer to the list of some of the items and services that are "always ESRD-related" and, therefore, are not separately payable to facilities located at http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/ESRDpayment/Consolidated_ Billing.html on

However, Laboratories, other suppliers, and physicians who furnish services otherwise included in the payment bundle that **are not related to the patient's ESRD may bill separately for these services using the AY modifier. You should not use the AY modifier to bill for services that are included in the ESRD PPS, however, because Davita was providing ESRD services for the Relatort, Davita's services and items for Relator and many other patients were related to treatment of ESRD, thereofe, Davita' reciing extra pay based on modifiers, are false and illegal justificatiosn udner the FCA.**

**Drug Utilization Adjustment Transition**

Section 632(a) of the American Taxpayer Relief Act of 2012 (ATRA) added Section 1881(b)(14)(I) to the Social Security Act (the Act) to require the Secretary of the United States Department of Health and Human Services to make reductions to the ESRD PPS base rate to reflect the Secretary's estimate of the change in the utilization of

ESRD-related drugs and biologicals by comparing per patient utilization data from 2007 with

such data from 2012. CMS finalized the methodology for calculating the amount of the drug

utilization reduction and computed a $29.93 reduction amount. This reduction will be phased in

beginning in CY 2014. The drug utilization reduction to the ESRD PPS base rate in CY 2014 is

$8.16. However, per TARA, the implementation of "oral only durgs" (i.e., phosphate binders

such as Renvela, Velphoro, and parathyroid durgs such as Sensipar were exluded from the

bundle and Davita was allowed to bill for these items Medicare Part D, however, Davita by

manipulating and causing Medicare Part D and Medciare section 8 (C) for the indigent to pay

thousands of dollars from approximately March 2014 through at least Dec. 31, 2014, in violation

of the regulation (i.e, required to charge reasonablen prices at almost what cost Davita to aquire

such drugs).

TARA required a reduction of $29.93 per dialysi treatment, yet it would not warrant Davita
charge for the drugs that the govnerment was unbundling temporarily (until it was bundled again
under ESRD PPS Jan. 1, 2014 through Oct. 2015), therefore it would not be reasonable for
government to pay over a $1000 for medication that the govnermnt decided not to pay $29.93 to
meet is objective of saving money.
Davita, Davita RX, and Dr. Rastogi by falsifying the quantity, and by falsifying the formulary
exception request by making a false statement that such drug was not a part of its formulary,
Davita's conduct induced payment from the Medciare, and this conduct by Davita constitutes a
filing of false claims and records.

## Patient Deductible and coinsurance

The patient is responsible for any unmet deductible and coinsurance amounts. The

patient's coinsurance is based on the ESRD PPS base rate and all applicable adjustments.

## End-Stage Renal Disease Quality Incentive Program (ESRD

## QIP)

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 23

Per regulation (authorized by Section{ 1881(h) of the Act}, which was added by Section {153(c) of MIPPA} the ESRD}QIP adjusts dialysis clinic's (i.e., Davita) Medicare payments based on how well the ESRD  meet or exceed performance standards for quality measures. The maximum payment reduction is 2 percent.

For the purpose of ESRD QIP adjustments, Medicare lists 6 quality measures that the dialysis clinic (i.e., Davita) must report for the period Jan. 1, 2014 through Dec. 31, 2014, for payment year (PY) 2016. (i.e, anemia management hemoglobin above 12, low phosphorse and bone mnineral , ptient's experience, Address effective bone mineral metabolism management, Evaluate dialysis adequacy.

ESRD PPS Payment for Home Dialysis:

Medicare allows for ESRD patients to self dialyze in the comfort of their own home, provided they have the space and they are trained in compliance with 42 CFR part 494.100 (i.e., satisfactory patient training must be issued and a copy sent to Medicare and a copy kept in the patient's file) as a precondition to payment and continued Medicare enrollment in conjuctions with express condition accepted by Davita per agreement form 866A (hard copy, Medcicare certification enrollment and registration) and/or computer equivelance form.

Under ESRD effective Jan. 1, 2011, Medicare pays for


**Renal dialysis services include all items and services given Outpatient maintenance in the facility or patient's home.  Payment is**

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 24

**made on per treatment <u>basis3 treatments per week</u>, unless there is**

**medical justification for more than 3 weekly treatments.**<mark>Noridian</mark>

<mark>contractor; cms.gov/Medicare/Medicare-Fee-For-Service-</mark>

<mark>Payment/ESRDpayment/Consolidated_Billing.html</mark>

ESRD Payments Based on Chategory of ESRD Provider:

Althogh, effective Calendar 2009, there is no distinction in

payment for ESRD treatment and related dialysis treatment between

Medicare payment to dialysis clincics (i.e., Davita) and hospitals (i.e, UCLA,

Saint Jhon's or other hospitals), however, regulation makes a distinction as

to the entity's qualification to provide ESRD dialysis including related ESRD

treatments and Acute(temporary) dialysis.

Per regulation, and ESRD dialysis provider must be ESRD

certified by Medciafre, be bound by terms of the agreement stated in form

866A certification Medicare Enrollment Registration Agreeemnt and is

given a unique ID number.

<mark>Per regulation, the dialysis clinic (i.e., Davita) is not permited to</mark>

<mark>treat and provide "Acute" dialysis to hospital's patients (i.e., UCLA, Saint</mark>

<mark>Jhon's  or other hospitals) in Davita's outpatient clincis or as home based</mark>

<mark>patients.</mark>

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 25

For the same reason, the hospitals (i.e., UCLA, Saint Jhon's ) who do not have an "Acute" outpatient, or home patient dialysis, to either sent their patients to Davita's outpatient clinics for dialysis, and the hospitals (i.e., UCLA and Saint Jhon's must not in violation of the regulation, bill for the services Davita and its staff provides the outpatient or home patient dialysis.

Hospital-based ESRD facilitiesHospital-based or independent

Not considered part of the hospitalDo not qualify as provider-based departments

Located on a hospital campus

May share certain cost and functions with the hospital

Have separate provider numbers

ESRD Provider type 2

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 26

Independent facility Fails to qualify as a hospital-based

Termed: Renal Dialysis Center or Renal Dialysis Facility orUnder ESRD

Prospective Payment System (PPS) CMS calls these ESRD facilities (i.e.,

Davita)

ESRD Provider type 3:

Home Dialysis Training and Support ESRD FacilityMedicare

certified ESRD facility(i.e., Davita)

**What is ESRD Consolidated Billing**

Single payment made for renal dialysis services includessupplies

and equipment used to administer dialysis, drugs, biologicals, laboratory

tests, and support services.https://www.cms.gov/Medicare/Medicare-Fee-

for-Service-Payment/ESRDpayment/Consolidated_Billing.html

Section 1886(d) of the Social Security Act (the Act) sets forth a system of payment for the

operating costs of acute care hospital inpatient stays under Medicare Part A (Hospital Insurance) based on

prospectively set rates. This payment system is referred to as the inpatient prospective payment system

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 27

1    (IPPS). Under the IPPS, each case is categorized into a diagnosis-related group (DRG). Each DRG has a

2    payment weight assigned to it, based on the average resources used to treat Medicare patients in that DRG.

3

4            **The use of modifier as an exception to**

5

6    **ESRD Payment system:**

7            **Dialysis clinics use a "AY" modigier, if**

8

9    **hey attest the services or the items are not related**

10   **to the treatment of ESRD and they recive a**

11

12   **payment in addition to the base rate, however, to**

13   **abuse a modifier when the dialysis clinic does not**

14   **qualify to recive such payment constitutes a false**

15

16   **claims under FCA.**

17           **KX modifier is used when on line item**

18

19   **the physician and Davita attest that extra dialysis**

20   **session is needed and document it I the patient's**

21   **file.**

22

23                   **ESRD Use of KX Modifier**

24           **Properly used when for extra sessionsAscertained by a**

25   **licensed healthcare professional within scope of practice**

26

27   **Physician's order for the added session(s)**

28

SECOND AMENDED COMPAINT INCLUSING EXHIBITS - 28

Documented diagnosis of medical necessity in patient's medical record

Append KX on the line item in excess of the maximum treatments

Modifiers:Modifiers cause separate payment in addition to base rate under ESRD PPS

Modifiers provide additional information to the payers to ensure the claim is processed correctly for services rendered.

ESRD Mediacare Payment and its Relation to Proper and Correct Coding: